UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR BALLAST, LUIS SIMONE and
MARQUIS RICHARDSON, *Individually
and On Behalf of All Others Similarly
Situated,*

                              Plaintiffs,

            – against –

WORKFORCE7 INC., CONSOLIDATED
EDISON COMPANY OF NEW YORK,
INC., VALI INDUSTRIES, INC., AND
RONALD HILTON, *Jointly and
Severally,*

                              Defendants.

**OPINION & ORDER**

20 Civ. 3812 (ER)

Ramos, D.J.:

        Victor Ballast, Luis Simone, and Marquis Richardson bring this putative

collective and class action on behalf of all similarly situated construction site flaggers

against Workforce7 Inc. ("Workforce7"), Consolidated Edison Company of New York,

Inc. ("Con Ed"), Vali Industries, Inc. ("Vali"), and individual defendant Ronald Hilton,

alleging failure to pay minimum wage and overtime in violation of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 206-07, and various provisions of New York

Labor Law ("NYLL").  Doc. 69.[1]  Before the Court is Plaintiffs' motion for:  (1)

conditional certification of a FLSA collective action composed of non-union construction

flaggers who worked for Workforce7, Inc. between May 15, 2017 and the present; (2)

approval of Plaintiffs' proposed notice and consent forms notifying potential opt-in

plaintiffs of the pendency of the action and plan for distribution of the same; (3)

production by Defendants of contact information for potential plaintiffs; and (4) approval

---

[1] Unless otherwise indicated, citations to ¶ _ refer to the amended complaint. Doc. 69.

of Plaintiffs' proposed deadline reminder notice.  Doc. 94.  For the reasons set forth below, Plaintiffs' motion is GRANTED subject to the conditions set out below.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Ballast, Simone, and Richardson worked as construction flaggers[2] for Defendants for various months in 2019:  Ballast and Simone from approximately February 2019 through April 2019, and Richardson from approximately February 2019 through November 2019.  ¶¶ 106, 120, 132.  Workforce7 is a New York corporation with offices in the Bronx and Yonkers that employs construction flaggers and that contracts with companies requiring flaggers.  ¶¶ 16–17, 53–54.  Hilton has served as the chief executive officer ("CEO") of Workforce7 since 2012 and at all relevant times was responsible for approving employees' paychecks and for day-to-day operations including setting office policies, hiring, discipline, and managing the business.  ¶¶ 55–58.  At the relevant times, Workforce7 contracted with Con Ed, a public utilities provider, and with Vali, a construction contracting business that has performed excavation work on Con Ed job sites, to provide flaggers for work sites on streets, roads, and sidewalks throughout New York City and elsewhere in the state.  ¶¶ 59–60, 65.  Workforce7 also contracted with other entities.  ¶ 54.  Plaintiffs allege that Workforce7, Con Ed, and Vali are their joint employers, and that CEO Hilton set the relevant payroll policies.  ¶¶ 23, 18, 20.

Plaintiffs further allege that, throughout their employment, Defendants subjected them to various unlawful practices that deprived them of wages and of required overtime pay.  Per Hilton's instructions, they were required to travel to the Workforce7 office in the Bronx at 6:00 am or earlier in order to sign in indicating their availability to work in order to receive a job assignment, as work was typically assigned on a first-come, first-serve basis.  ¶¶ 145–46.  Plaintiffs frequently waited one or more hours at the Bronx

---

[2] As construction flaggers, Plaintiffs were responsible for safety at and near construction sites, including directing pedestrian and vehicle traffic around the sites; setting up signs, cones, and barriers; ensuring that pedestrians were not near construction vehicles; closing street intersections; etc.  ¶¶ 75, 162.

office for a job assignment, which might be for a site in the Bronx, Manhattan, Brooklyn, Queens, or Westchester County.  ¶¶ 108–09, 121–24, 139, 146.  Plaintiffs allege that some flaggers would wait the entire day, until as late as 3:00 pm, without being assigned any work.  ¶ 148.  Flaggers were not paid for the time they spent waiting for job assignments.  *Id.*

Once they were assigned a job by Workforce7, Plaintiffs were given a timesheet to be signed by the Con Ed or Vali supervisor and returned to the Workforce7 office at the end of the day.  ¶¶ 87–89, 140, 146.  Plaintiffs understood that Workforce7 used the completed timesheets to invoice Con Ed and Vali for flagging services.  ¶ 152.  Flaggers who did not return their completed timesheets to the office were subject to being reprimanded or penalized by no longer being assigned jobs:  in April 2019, Ballast was written up for not returning his timesheets promptly.  ¶¶ 151, 153.  On multiple occasions, Plaintiffs were required to bring traffic cones, signs, and other equipment with them to the work sites.  ¶ 146.  Plaintiffs also allege that Defendants routinely deducted thirty minutes or more for a lunch break from certain flaggers' payments, even though flaggers were not always allowed to take that break.  ¶ 154.  Plaintiffs allege that they were not paid for the time spent waiting for job assignments, picking up and returning timesheets and equipment, and traveling between the Workforce7 office and various work sites.  ¶ 155.  None of the Plaintiffs received benefits of any kind.  ¶¶ 119, 131, 144.

Plaintiffs contend that Con Ed and Vali Industries acted as their joint employers and supervised, directed, and controlled their work while on site.  ¶ 77.  Con Ed or Vali supervisors or foremen instructed them on where to stand and where to put up signage; disciplined them; controlled whether and when they could take meal or bathroom breaks; signed their timesheets; and frequently required them to travel to other Con Ed or Vali work sites, for which travel they were not compensated.  ¶¶ 81–86; 93–98; 108–110; 123–24; 136–38.  In addition, on approximately fifteen occasions, Workforce7 instructed Richardson to report to Con Ed yards in the Bronx and in Fishkill, New York, to wait to

be assigned to a crew by a Con Ed employee.  ¶ 139.  Ballast and Richardson estimate
that they worked between forty to sixty hours per week on work sites, not including time
spent traveling back and forth to the Workforce7 office, while Simone estimates he
generally worked between forty to fifty-two hours per week, not including travel.  ¶¶ 113,
125, 135.  Plaintiffs were paid fifteen dollars per hour for all regular hours and twenty-
two dollars and fifty cents for all overtime hours, but they did not receive any wages for
time spent waiting for job assignments, picking up and returning timesheets and
equipment, and job-related travel.  ¶¶ 117, 129, 141, 143.

　　　　Ballast and Simone filed suit on May 15, 2020 against Workforce7, Con Ed,
Ronald Hilton, Safeway Construction Enterprises, LLC, M.J. Electric, LLC, and John
Doe Corp. #1.[3]  Doc. 1.  On August 16, 2020, Workforce7 and Hilton answered.  Doc. 36.
On October 15, 2020, Con Ed moved to dismiss.  Doc. 56.[4]  On December 9, 2020,
pursuant to a stipulation executed by the remaining parties, Doc. 67, Con Ed notified the
Court of its intention to withdraw its motion to dismiss, and Plaintiffs filed their amended
complaint.  Docs. 68, 69.  The amended complaint added Richardson as a plaintiff and
Vali Industries, Inc., as a defendant.  On August 9, 2021, Plaintiffs moved for conditional
certification of a FLSA collective.  Doc. 94.

## II.   LEGAL STANDARD

　　　　Pursuant to the FLSA, an individual may file suit against an employer on behalf
of himself and "other employees similarly situated" who give "consent in writing" to be-
come party plaintiffs.  29 U.S.C. § 216.  "District courts have discretion to facilitate this
collective action mechanism by authorizing that notice be sent to potential plaintiffs

---

[3] The amended complaint also alleges FLSA violations in connection with work on M.J. Electric work sites,
¶¶ 166-181, but concedes that these projects were not overseen by Con Ed personnel and Con Ed is not
liable for any wage damages incurred in connection with Plaintiffs' work performed for M.J. Electric.
¶ 167.

[4] On August 28 and October 16, 2020, Plaintiffs filed stipulations dismissing their claims against Safeway
Construction Enterprises and M.J. Electric LLC, respectively.  *See* Docs. 41, 59.

informing them of 'the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'" *Mark v. Gawker Media LLC,* No. 13 Civ. 4347 (AJN), 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) (quoting *Myers v. Hertz Corp.,* 624 F.3d 537, 554 (2d Cir. 2010)).

The Second Circuit Court of Appeals has endorsed a two-step framework for determining whether the court should certify a case as a collective action under § 216(b). *See Myers,* 624 F.3d at 554–55. This process entails analysis of whether prospective plaintiffs are "similarly situated" at two different stages: first, at an early "notice stage" and second, after discovery is fundamentally complete. *See McGlone v. Contract Callers, Inc.,* 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (citing *Bifulco v. Mortgage Zone, Inc.,* 262 F.R.D. 209, 212 (E.D.N.Y.2009)). At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers,* 624 F.3d at 555. At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* If the court concludes that they are not, the action may be de-certified. *See Mark,* 2014 WL 4058417, at *2 (citing *Myers,* 624 F.3d at 555).

Here, Plaintiffs seek an initial determination of the propriety of notice to putative plaintiffs. "Because minimal evidence is available" at this early stage of the proceedings, and because the court "retain[s] the ability to reevaluate whether the plaintiffs are similarly situated," Plaintiffs face a "relatively lenient evidentiary standard." *McGlone,* 867 F. Supp. 2d at 442 (quoting *Mentor v. Imperial Parking Sys., Inc.,* 246 F.R.D. 178, 181 (S.D.N.Y. 2007)). They need only "make a modest factual showing that [they] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the [FLSA]." *Romero v. ABCZ Corp.,* No. 14 Civ. 3653 (AT), 2015 WL 2069870, at *1

(S.D.N.Y. Apr. 28, 2015) (citing *Myers,* 624 F.3d at 555).  That said, "certification is not automatic." *Romero v. H.B. Auto. Grp., Inc.,* No. 11 Civ. 386 (CM), 2012 WL 1514810, at \*10 (S.D.N.Y. May 1, 2012).  Plaintiffs' burden of proof is low, but "it is not non-existent." *Sanchez v. JMP Ventures, L.L.C.,* No. 13 Civ. 7264 (KBF), 2014 WL 465542, at \*1 (S.D.N.Y. Jan. 27, 2014).  The "modest factual showing" required for conditional certification "cannot be satisfied simply by unsupported assertions." *Myers,* 624 F.3d at 555 (citation omitted).  Plaintiffs must offer "actual evidence of a factual nexus" between their own experience and the experiences of those they claims as "similarly situated," rather than "mere conclusory allegations." *Qing Gu v. T.C. Chikurin, Inc.,* No. 13 Civ. 2322 (SJ) (MDG), 2014 WL 1515877, at \*3 (E.D.N.Y. Apr. 17, 2014) (citing *Flores v. Osaka Health SPA, Inc.,* No. 05 Civ. 962 (VM) (KNF), 2006 WL 695675, at \*2 (S.D.N.Y. Mar. 16, 2006)).

In considering Plaintiffs' motion, "the [C]ourt does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Cunningham v. Elec. Data Sys. Corp.,* 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (quoting *Lynch v. United Services Auto. Ass'n.,* 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007)).  It merely "examines the pleadings and affidavits to determine whether the named plaintiffs and putative [collective] members are similarly situated." *McGlone,* 867 F. Supp. 2d at 442 (citation omitted).  If the Court finds that they are, it will conditionally certify the collective and order that notice be sent to members of the collective, who will have the opportunity to opt in as party plaintiffs. *See Cunningham,* 754 F. Supp. 2d at 644.

## III.   DISCUSSION

### A.  Conditional Certification

"The threshold issue in deciding whether to authorize . . . notice in an FLSA action is whether plaintiffs have demonstrated" that they are "similarly situated" to other

members of the collective.  *Realite v. Ark Rest. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y.
1998) (citing 29 U.S.C. § 216(b)).  Where plaintiffs bring claims against multiple defend-
ants, they must demonstrate a common policy by all defendants.  *Moses v. Griffin Indus.,
LLC*, No. 18 Civ. 1200 (ALC) (OTW), 2020 WL 5813737, at *3 (S.D.N.Y. Sept. 30,
2020) (citing *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 3d 545, 557–59
(S.D.N.Y. 2013)).  Although Plaintiffs' evidentiary burden at this stage is low, where, as
here, some discovery has occurred, the Court considers the evidence obtained in discov-
ery and submitted by the parties.  *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475,
481–82 (S.D.N.Y. 2016) (citing *Cunningham*, 754 F. Supp. 2d at 647).

Plaintiffs ask the Court to conditionally certify a collective action on behalf of all
persons employed by Workforce7 who worked as non-union flaggers at any time between
May 15, 2017 and the present.  *See* Doc. 95 at 9; ¶ 28.  Plaintiffs contend that putative
collective members are similarly situated because they worked similar schedules, often
including over forty hours per week at work sites; had similar duties, including required
attendance at the Workforce7 office in order to be assigned a job and required travel be-
tween work sites; and were paid according to common timekeeping practices, including
not reporting hours worked outside of job sites.   Doc. 95 at 11.  These policies resulted
in Plaintiffs and purported collective members being denied overtime pay for many hours
worked per week and receiving effective hourly rates that fell below the minimum wage.
*Id.* at 11.  Plaintiffs write that variations between putative collective members' job duties
or wage rates do not alter the fact that they were all subject to Defendants' policies of
failing to pay minimum wage and overtime.  *Id.* at 12.

Workforce7, Con Ed, and Vali oppose the motion for conditional certification, ar-
guing variously that they did not jointly set flaggers' terms or conditions of employment;
that Plaintiffs have not provided evidence of a "common policy" to violate the law; that
Plaintiffs' deposition testimony is inconsistent with their earlier declarations and does not
indicate that they were similarly situated to each other, much less establish the existence

of a collective of similarly situated flaggers; that Plaintiffs' submissions are conclusory; that Plaintiffs, who worked for Defendants only in 2019, cannot establish that they are similarly situated to flaggers who worked from 2017–present, as they do not have personal knowledge of Defendants' practices before or after their employment; and that the proposed collective is overbroad. *See generally* Docs. 104, 108, 110. In reply, Plaintiffs assert that most of these objections are fact-based arguments going to the merits of the case or to liability, and that the Court does not resolve such factual disputes at this stage. Doc. 116 at 8–11.

The Court agrees that, at this stage, Plaintiffs have met their modest burden for certification of a collective of Workforce7 flaggers who worked on Con Ed and Vali work sites from May 15, 2017 to the present for Plaintiffs' FLSA unpaid wage and unpaid overtime claims.

### 1. Similarly Situated

Plaintiffs' burden at this stage is low because "the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Hernandez v. NHR Hum. Res., LLC*, No. 20 Civ. 3109 (PGG) (DF), 2021 WL 2535534, at *5 (S.D.N.Y. June 18, 2021) (citing *Myers*, 624 F.3d at 555). "[T]o be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 516 (2d Cir. 2020) (citation omitted). Plaintiffs "are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims," and as long as "named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment." *Id.* (citation omitted).

Moreover, in evaluating the sufficiency of evidence proffered as to the existence of a collective, "courts in this circuit have routinely granted conditional collective

certification based solely on the personal observations of one plaintiff's affidavit." *Hernandez v. Bare Burger Dio Inc.,* No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases); *see also Ramos v. Platt,* No. 13 Civ. 8957 (GHW), 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014). "However, conclusory allegations and 'unsupported assertions' are not sufficient to support a motion for conditional collective action certification." *Hickmon v. Fun & Fit LLC*, No. 20 Civ. 10270 (RA) (JLC), 2021 WL 3578296, at *5 (S.D.N.Y. Aug. 13, 2021) (citing *Myers*, 624 F.3d at 555). Plaintiffs "must offer something of evidentiary value to demonstrate that similarly situated employees exist and, where plaintiffs fail to meet this minimal requirement, their motion for conditional collective action certification will be denied." *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481 (S.D.N.Y. 2016) (internal quotation marks and citations omitted). Thus, courts have denied collective certification where "plaintiffs fail[ed] to provide sufficient details about other potentially similarly situated employees, such as the names of other employees, when any conversations with those employees took place, and information regarding the hours those employees worked or how they were paid," *Hickmon*, 2021 WL 3578296, at *6, or where a plaintiff's submission "'does not . . . provide *any* detail as to a *single* . . . observation or conversation' informing his decision to bring a collective action." *Mata v. Foodbridge LLC*, No. 14 Civ. 8754 (ER), 2015 WL 3457293, at *4 (S.D.N.Y. June 1, 2015) (quoting *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014)); *see also Ikikhueme v. CulinArt, Inc.,* No. 13 Civ. 293 (JMF), 2013 WL 2395020, at *2–3 (S.D.N.Y. June 3, 2013) (denying conditional certification motion premised only on a plaintiff's personal declaration containing "unsupported assertions" regarding other employees). However, a plaintiff need not "offer[] direct quotations from the other identified [proposed members of the collective], or pinpoint the specific calendar days on which he and they spoke with management[.]" *NHR Hum. Res.,* 2021 WL 2535534, at *9 (S.D.N.Y. June 18, 2021).

Here, Plaintiffs have each submitted a declaration, and both Con Ed and Vali have submitted excerpts of Plaintiffs' deposition testimony. *See* Docs. 96-2, 96-3, 96-4, 106-4, 106-5, 106-6, 109-1, 109-2, 109-3. Defendants object to Plaintiffs' declarations as conclusory and as "largely carbon copies of each other, with only minimal differences." Doc. 108 at 3; *see also* Doc. 104 at 19, Doc. 110 at 3. However, similarities between Plaintiffs' declarations may in fact underscore the similarities in their experiences: "[T]he mere fact that there are similarities between the affidavits submitted by [p]laintiff and the opt-in plaintiffs further indicates that they are 'similarly situated.'" *Vecchio v. Quest Diagnostics Inc.*, No. 16 Civ. 05165 (ER), 2018 WL 2021615, at *5 (S.D.N.Y. Apr. 30, 2018) (internal quotation marks and citation omitted).

Vali and Con Ed also argue that Plaintiffs' deposition testimony is inconsistent with their declarations and undercuts the existence of a collective with similarly situated members, as Plaintiffs' submissions indicate that employees may have had different experiences as to waiting time for job assignments, missed meal break compensation, and uncompensated travel time. *See* Doc. 104 at 15–18; Doc. 108 at 4. For example, Con Ed writes that Plaintiffs' testimony fails to establish a common waiting time requirement: Simone and Richardson testified at their depositions that they were not generally required to wait for assignments, as Simone often partnered with Ballast on jobs and therefore did not have to wait at the Workforce7 office, and Richardson eventually worked out an understanding with a Workforce7 dispatcher who would assign him jobs by telephone. Doc. 104 at 15–16. Furthermore, Plaintiffs' testimony as to whether they were compensated for missed meal breaks differed. Simone testified that he did not know whether he was paid for the missed meal breaks he reported; Richardson testified that if he reported a missed meal and was not compensated for it, he could bring the issue to the attention of Workforce7 management; and Ballast testified that he did not inform Workforce7 of his missed meal breaks. *Id.* at 17. Con Ed and Vali argue that Plaintiffs' deposition testimony revealed similar differences as to whether they were compensated for travel time

10

between job sites and whether they were always required to return to the Workforce7 office to submit timesheets. *Id.* at 17–18; Doc. 108 at 8. Con Ed further submits copies of several text message exchanges between Ballast, Simone, and Richardson and Workforce7 management or dispatchers, indicating that at least some of the time Plaintiffs were able to receive jobs and turn in their timesheets via text message. Doc. 104 at 18; Doc. 108 at 5–6; Doc. 106-7. Finally, Con Ed argues that Named Plaintiffs' submissions do not allege the existence of "similarly situated" individuals with the required specificity, in that Plaintiffs only identify a few fellow co-workers by name, including Kevin, Angel Lopez, Yomaira Vasquez, and "other . . . coworkers whose names they cannot recall[.]" Doc. 104 at 19. Plaintiffs reply that "[t]he fact that . . . Plaintiffs have had individual experiences of Defendants' practices resulting in more or less unpaid time is irrelevant at this stage," and "'the relevant issue is . . . whether [collective members] all allegedly were subjected to a common employment policy that violated the FLSA.'" Doc. 116 at 6 (quoting *Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445 (S.D.N.Y. 2013).

The Court agrees with Plaintiffs. At most, Plaintiffs' testimony about their somewhat different experiences shows that they may have responded differently to Defendants' allegedly unlawful practices. For example, Richardson's testimony shows at most that he, unlike Ballast, advocated for himself and thereby sometimes received compensation for his missed meal breaks. Richardson Dep. Tr., Doc. 106-6 at 76: 3–25. Moreover, the fact that Plaintiffs were sometimes able to return their timesheets via text message and did not always return them in person, Doc. 106-7, does not mean that Con Ed, Vali, and/or Workforce7 did *not* have unlawful practices that required flaggers to travel for work without compensation, including to return timesheets, or to work through their meal breaks.

Moreover, in their declarations and depositions Plaintiffs do identify other construction flaggers who were similarly situated, including referring to some by name.

Plaintiffs refer not only to each other, but also to Yomaira Vasquez, Angel Lopez, and Roland Richardson, as well as other flaggers whose names they do not remember. *See* Doc. 96-2 ¶ 45; Doc. 96-3 ¶¶ 44–45; Doc. 96-4 ¶¶ 35, 38, 46. In their deposition testimony, Plaintiffs described interactions and conversations with other flaggers about their work, including about uncompensated meal and wait times. *See, e.g.*, Doc. 106-4, Ballast Dep. Tr., 63:3–65:25 (describing working with "10 or 15 flaggers I observed personally at Workforce7 and Con Ed jobs," and describing speaking "a couple of times" with other flaggers, and stating "we met at the office and I would tell them that we don't get paid for the time that we come in at 6, that we don't get paid for the 15 minutes that Con Ed requires a flagger to be at the job site before they get there. [ . . . ] we would all talk and I would explain to them that we were not getting paid for none of those times."); Doc. 106-5, Simone Dep. Tr., 148:18–23 ("In the office I'll hear people outside talking about stuff like that. I hear people saying, Oh, you know, I didn't [get] paid for lunch or whatever. [ . . .] I had to work through my lunch, or whatever."); Doc. 106-6, Richardson Dep. Tr., 77:7–24 ( "I'm pretty sure I spoke to a lot of other young men that worked for the company, but I don't remember their names[.]") Taken together, Plaintiffs' submissions meet their burden to establish that other Workforce7 flaggers who worked on Con Ed and Vali sites were similarly situated.

Finally, Defendants object to the proposed collective as overbroad. Plaintiffs seek to certify a collective of all Workforce7's current and former non-union flaggers from May 2017 to the present, Doc. 95 at 1, none of whom worked exclusively for Con Edison, according to Workforce7's responses to Con Ed's requests to admit. Doc. 104 at 4; Doc. 106-1 at 4. Con Ed argues that this would "over-populate the collective with Workforce 7 employees whose claims are based in whole or in part on work they performed on non-Con Edison projects, and for which Con Edison bears no liability even under Plaintiffs' joint employment theory[.]" Doc. 104 at 22. The Court agrees with Con Ed that such a collective is overbroad and does not match Plaintiffs' Amended Complaint,

moving papers, and other submissions, all of which allege a joint employer theory and certain policies and experiences common to flaggers who worked on Con Ed and/or Vali sites.  Thus, the Court will limit the collective to those flaggers who worked on Con Ed and/or Vali sites.

     2.  *Common Policy or Plan*

     Con Ed and Vali dispute that they were Plaintiffs' employers and that they set any of the allegedly unlawful policies.  Con Ed writes that it did not set Workforce7's terms or conditions of employment, including hiring, discipline, setting working conditions including uncompensated waiting time, travel time, and meal break time, determining work assignments, processing timesheets, and issuing pay.  Doc. 104 at 6–9.  Con Ed and Vali therefore argue that they are not joint employers, and that Plaintiffs have not provided "'evidence of a common policy to violate the law'—in other words, a policy commonly involving all, and not just some, of the defendants."  Doc. 104 at 11 (citing *Korenblum*, 195 F. Supp. 3d at 487 (S.D.N.Y. 2016)); *see also* Doc 108 at 2–3.  They point out that Plaintiffs testified in deposition that Workforce7 assigned their jobs, set hours, and collected timesheets, and that Richardson testified that he was an employee only of Workforce7.  *See* Doc. 108 at 2.   However, Plaintiffs reply that they have "specifically alleged the participation of each Defendant in practices that determined their wages, including timekeeping, scheduling, ordering travel and wait time at jobsites and other locations, and calculation of compensation."  Doc. 116 at 3.  Moreover, the contract materials that Con Ed has produced and attached to its opposition—specifically, Con Ed's "Field Support Services Termsheet," Doc. 106-8—support Plaintiffs' position that Con Ed required flaggers to arrive fifteen minutes early and placed restrictions on when flaggers could take breaks or eat.  Per the termsheet, Con Ed required flaggers to avoid distractions, including the use of cellphones or other devices; not to eat while flagging; to arrive to the site fifteen minutes before the start of the assignment; and to have a vehicle and travel to

other locations "as deemed necessary by Con Edison."  Doc. 106-8 at 12–13.  The sub-

missions before the Court indicate that, at least in part, Con Ed's policies may have

played a role in shaping the practices that Plaintiffs allege violate the FLSA.

Thus, Plaintiffs are correct that whether or not Workforce7, Con Ed, and Vali are

joint employers "is a highly fact-specific inquiry" that is not properly before the Court at

this time.  Doc. 116 at 8 (citing *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, No. 09 Civ.

6831 (RJH) (MHD), 2010 WL 1778794, at *5 (S.D.N.Y. Apr. 29, 2010)); *see also Zheng*

*v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71–72 (2d Cir. 2003) (articulating factors to

consider in assessing whether a joint employer relationship exists and instructing the

court to "consider any other factors it deems relevant to its assessment of the economic

realities.").  Whether an employment relationship exists "should be grounded in eco-

nomic reality rather than technical concepts."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104

(2d Cir. 2013) (internal quotation marks and citation omitted).  The definition of an em-

ployee under the FLSA is "any individual employed by an employer," and the definition

of employment is similarly broad, "in accordance with the remedial purpose of the

FLSA."  *Zheng*, 355 F.3d at 66 (citing 29 U.S.C. § 203(e), (g)); *see also Moses*, 2020 WL

5813737, at *3 ("FLSA actions have a functional definition of employer, and the FLSA

broadly defines the employer-employee relationship.").

While Plaintiffs may ultimately be unable to prove at the second stage of certifi-

cation that Workforce7, Con Ed, and Vali are joint employers, they have, at this juncture,

sufficiently alleged the existence of a common policy to underpay construction flaggers

hired by Workforce7 and assigned to work at Con Ed and Vali work sites.  *See Moses*,

2020 WL 5813737, at *3; *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d

605, 610 (S.D.N.Y. 2016) (certifying collective of flagmen and other construction em-

ployees); *see also Uraga v. Amici 519 LLC*, No. 17 Civ. 3547 (ALC), 2018 WL 3579850,

at *4 (S.D.N.Y. July 25, 2018) ("Whether or not Defendants operated as a single enter-

prise is a complicated and fact-specific inquiry, which is not properly determined at the

collective action certification stage." (internal quotation marks and citation omitted)).
Workforce7 also argues that Plaintiffs cannot show a common policy through the present,
as it changed its sign-in processes in early 2020 and no longer required flaggers to sign in
at the office.  Doc. 110 at 4.  However, the common policy Plaintiffs must show is that
Defendants had policies to underpay them, not that there was one exact manner in which
potential collective members may have had to sign in to be assigned jobs.  For the same
reason, Defendants' argument that Plaintiffs fail to demonstrate the existence of a com-
mon policy or plan before or after the months that they worked in 2019—which may
have merit at the second stage of certification—is a fact issue that the Court will not ad-
dress at this time.

### B.  Scope of Notice and Notice Period

Plaintiffs seek to certify a collective of flaggers who worked at any time between
May 15, 2017 and the present, while Defendants seek to limit the temporal scope of the
collective.  Vali writes that any conditional certification should be granted only for the
time period that Ballast and Simone worked for Workforce7, that is, from February to
April of 2019.  Doc. 108 at 8.  Con Ed writes that "no collective against Con Edison can
date back to May 15, 2017, given that Con Edison only began using Workforce 7's flag-
ging services on July 1, 2018."  Doc. 104 at 23.  Workforce7 writes that the notice period
should be three years preceding the issuance of notice, and that the certification should be
limited to flaggers employed by Workforce7 prior to January 2020, as flaggers who
worked with Workforce7 after that date were no longer assigned by the sign-in system
but rather by a different system of distributing assignments via text communication.[5]
Doc. 110 at 4–5.  Plaintiffs reply that the Court should provide notice to potential

---

[5] Workforce7 proposes that the certification be limited to flaggers who were employed by Workforce7 prior to January 1, 2020, but writes that it stopped using the sign-in system by "March/April of 2020."  Doc. 110 at 4.

plaintiffs for the period from May 15, 2017, three years before the complaint was filed, to the present.  Doc. 116 at 12.

In general, "[a]ny notice period . . . shall be measured from the date of the Court's order granting plaintiffs' motion for conditional certification, not from the filing of the complaint."  *Hernandez v. Immortal Rise, Inc.*, No. 11 Civ. 4360 (RRM) (LB), 2012 WL 4369746, at *7 (E.D.N.Y. Sept. 24, 2012); *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).  However, "courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'"  *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) (quoting *Whitehorn*, 767 F. Supp. 2d at 451); see also *Racey v. Jay-Jay Cabaret, Inc.*, No. 15 Civ. 8228 (KPF), 2016 WL 3020933, at *8 (S.D.N.Y. May 23, 2016).  Con Ed's position that any collective action against it may not be maintained for any date before it began contracting with Workforce7 is likely to have merit at a later stage.  However, for purposes of the instant certification, and given that the date Vali began contracting with Workforce7 is not before the Court, the Court grants Plaintiffs' motion for certification of a collective of non-union Workforce7 flaggers who worked on Con Ed and/or Vali sites, with the date running from May 15, 2017, three years prior to the filing of the complaint.

### C.  Form and Method of Plaintiffs' Proposed Notice

"Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains broad discretion over the form and content of the notice."  *Contrera v. Langer*, 278 F. Supp. 3d 702, 721 (S.D.N.Y. 2017) (internal quotation marks and citations omitted); *see also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006) ("[T]he Supreme Court has noted that the 'details' of notice should be left to the broad discretion of the trial court.").  "The overarching policies of the FLSA's collective

suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" *Whitehorn*, 767 F. Supp. 2d at 450 (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y.2007)).

Plaintiffs have submitted a proposed notice form, along with a proposed consent to become a party plaintiff form and a proposed reminder form to be sent prior to the close of the opt-in period. Docs. 96-5, 96-6, 96-7. The proposed notice form indicates, "If you were employed by Workforce7, Inc. in New York State at any time on or after May 15, 2017, you may be eligible to participate in a lawsuit against the defendants for allegedly underpaying you while you were employed as a flagger by Workforce7." Doc. 96-5 at 1. The notice includes Plaintiffs' allegations, notice of the collective action, how to opt in to the suit, that individuals who do opt in may be required to participate in discovery and to give testimony, that individuals who are eligible to opt in but choose not to may bring their own claims, and contact information for Plaintiffs' counsel and for Defendants' counsel. *See* Doc. 96-5. Plaintiffs have included the relevant information that courts generally deem appropriate for inclusion in a notice of collective action. *See Slamna v. API Restaurant Corp.*, No. 12 Civ. 757 (RWS), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013) (citations omitted); *see also Moses*, 2020 WL 5813737, at *4. The notice also clearly indicates that opt-in plaintiffs may choose to be represented by Plaintiffs' counsel, the law firm Pelton Graham, or that they may seek their own counsel or proceed *pro* se. Doc. 96-5 at 4; *see Whitehorn*, 767 F. Supp. 2d at 450-51. The opt-in consent form indicates that opt-in plaintiffs may return the executed consent form to Pelton Graham if they wish to be represented by the firm, or that they may return the form to the Clerk of Court if they wish to be represented by other counsel or *pro se*. Doc. 96-6. Plaintiffs seek to distribute notice to potential opt-in plaintiffs through posting "in a conspicuous location at the Workforce7 office where it can be easily seen by potential

17

Collective Action Members"; through first-class mail and email to plaintiffs' last known addresses; and through a deadline reminder letter.  Doc. 95 at 14–15.

Vali opposes the motion for certification, but does not object to the proposed notice, while Workforce7 and Con Ed make a few specific objections.  *See* Docs. 104, 108, 110.  Workforce7 writes that "[i]t is inappropriate to require opt-in plaintiffs to send their consent forms to Plaintiff's counsel," and that if the Court were to authorize notice, it should direct the parties to confer as to a mutually acceptable notice.  Doc. 110 at 5–6.  It does not specifically oppose posting the notice form at a location in the Workforce7 office.  Con Ed objects to several aspects of Plaintiffs' proposed notice forms and method of dissemination, including that the proposed notice form "impermissibly seeks to have opt-in plaintiffs authorize the Plaintiffs to represent them in an agency capacity," Doc. 104 at 23, and objects to Plaintiffs' proposed reminder notice.  *Id.* at 24.[6]  Con Ed further writes that, should the Court grant conditional certification, the parties should meet and confer regarding the form and content of the notice.  *Id.*

The Court finds the proposed notice and opt-in forms to be, on the whole, fair and accurate.  Moreover, Plaintiffs submitted their proposed notice materials together with their motion, and Defendants have had ample opportunity to oppose them.  The Court disagrees with Workforce7 that the notice forms indicate that opt-in plaintiffs would be required to send their consent forms to Plaintiffs' counsel.  Rather, the consent forms indicate that opt-in plaintiffs *may* submit the consent forms to Plaintiffs' counsel if they wish to be represented by them, and clearly states that attorneys' fees will be deducted from any settlement or judgment.  In the alternative, opt-in plaintiffs may submit the consent forms to the Clerk of Court if they wish to proceed *pro se* or to be represented by their own counsel.  *See* Doc. 96-6.  The forms clearly indicate opt-in plaintiffs' right to

---

[6] Con Ed also objects to the scope of the collective delineated in the proposed notice form and to the fact that the proposed notice ties the notice period to three years prior to the filing of the complaint, rather than to the date of the order authorizing collective action.  Doc. 104 at 23.  The Court has already addressed these objections.

separate counsel.  *See Islam v. LX Ave. Bagels, Inc.*, No. 18 Civ. 04895 (RA) (RWL), 2019 WL 5198667, at *10 (S.D.N.Y. Sept. 30, 2019).  The Court does not agree that the proposed notice implicates Plaintiffs' counsel in any impermissible agency capacity.  Furthermore, the Court sees no reason not to allow opt-in plaintiffs to submit their executed consent forms to current counsel if they wish to be represented by them, as courts routinely allow such methods for opting in to a collective action.  *See Aguilo v. Vails Gate Cleaners Inc.*, No. 18 Civ. 8850 (PMH) (JCM), 2020 WL 3545558, at *8 (S.D.N.Y. June 30, 2020) (finding that the majority approach in this Circuit is to direct opt-in plaintiffs to mail the consent form to plaintiffs' counsel); *Martin v. Sprint/united Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *18 (S.D.N.Y. Jan. 4, 2016) ("The majority of courts . . . have directed opt-in plaintiffs to mail the consent form to plaintiffs' counsel." (collecting cases)).  The Court does, however, direct Plaintiffs' counsel to remove the "Questions" footer from the notice form, as courts in this Circuit have already ordered counsel to do in several similar cases.  *See Aguilo*, 2020 WL 3545558, at *7 (discussing similar footers).

Furthermore, the Court agrees that posting the notice in a public place at the Workforce7 office and sending the reminder notices are appropriate.  "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."  *Whitehorn*, 767 F. Supp. 2d at 449 (citations omitted); *see also Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *9 (S.D.N.Y. Sept. 13, 2013).  While Workforce7 writes that its practices in assigning work have changed as of early 2020 such that employees are no longer required to come to the office to receive an assignment, Doc. 110 at 4, it is possible that there are current Workforce7 employees who may have worked for Defendants in 2019 and earlier.  Similarly, "reminder notices are appropriate '[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in[.]'"  *Williams v. Movage, Inc.*, No. 17 Civ.

2628 (KPF), 2018 WL 1940435, at *9 (S.D.N.Y. Apr. 24, 2018) (quoting *Chhab v. Darden Restaurants, Inc.,* No 11 Civ. 8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013).  Courts in this district have routinely authorized such reminder notices. *Id.* at *9–10 (collecting cases).  The Court will do so here.

Plaintiffs seek an opt-in period of sixty days after receipt of notice for potential opt-in plaintiffs to file their consents.  Doc. 95 at 15.  The Court agrees that this is a reasonable period of time, *see Whitehorn*, 767 F. Supp. 2d at 451–52; however, because the dates collective members may receive the notice form by mail are likely to vary, the Court directs the parties to meet and confer as to a schedule for dissemination of notice, including a deadline by which consent forms must be filed.

### D.  Contact Information for Potential Plaintiffs

Plaintiffs seek a mailing list from Defendants for potential opt-in plaintiffs on an expedited basis, consisting of "names, addresses, phone numbers and email addresses" of members of the collective.  Doc. 95 at 16.  Con Ed opposes the production of such information as unduly burdensome, or even impossible, because it "simply does not have a list of all of Workforce 7's current and former traffic control flaggers, let alone their physical addresses, telephone numbers and email addresses."  Doc. 104 at 25; *see also* Doc. 105.  According to the declaration of Steven Sebastopoli submitted with Con Ed's motion, Con Ed maintains only copies of the invoices and supporting timesheets for Workforce7 flaggers who worked at Con Ed sites, and compiling these invoices "would be a burdensome effort, as those invoices and supporting timesheets are stored in various locations in various forms, and evaluating [them] would involve sifting through thousands of documents."  Doc. 105 ¶ 9.  However, Workforce7, which presumably did maintain contact information for its employees, has not indicated that it does not have that information.  *See* Doc. 110.

Defendants are therefore directed to turn over the relevant contact information in their possession.  The parties are directed to meet and confer as to a schedule for Defendants to produce such contact information.

## IV.  MOTION TO DISMISS RICHARDSON

On November 5, 2021, Con Ed requested a pre-motion conference seeking leave to file a motion to dismiss Richardson from this action for failure to respond to discovery and apparent failure to communicate with counsel.  Doc. 118.  Plaintiffs opposed the request as premature, as Richardson appeared for his deposition as recently as August 24, 2021.  Doc. 119.  For the reasons set forth below, the Court hereby deems Con Ed's motion made and denies it without prejudice.

 Con Ed seeks to dismiss Richardson as a party to this action on the grounds that he failed to respond to discovery, in that he has not responded to Con Ed's interrogatories and discovery requests sent on July 29, 2021.  Doc. 118 at 2.  In the alternative, it asks that the Court issue an Order directing Richardson to comply with Con Ed's discovery requests on an expedited basis.  *Id.* at 3.  Con Ed argues that, in light of the parties' pressing discovery deadlines and expedited discovery schedule in this matter, Richardson's failure to timely respond "has prejudiced Con Edison's ability to defend against his claims[,]" and given Richardson's apparent loss of contact with his own counsel, lesser sanctions would not be effective.  *Id.*  Moreover, Con Ed writes that courts in this district "routinely apply Rule 41(b) to dismiss plaintiffs in FLSA collective action cases who fail to respond to discovery."  Doc. 118 at 2.

Plaintiffs counter that Richardson's discovery conduct does not meet the standards articulated by the Second Circuit for sanctions or dismissal under Rules 37(b) and 41(b) of the Federal Rules of Civil Procedure.  Moreover, Plaintiffs argue that Con Ed has not shown that it has been prejudiced by Richardson's discovery conduct, particularly since Richardson appeared for a four-hour deposition and responded to questioning on the

same subjects included in Con Ed's written requests.  Doc. 119 at 2.  Plaintiffs further argue that Defendants did not submit or rely on any other party's written responses to discovery requests in their opposition to the pending motion, and therefore cannot show that they were prejudiced by not having Richardson's written responses.  *Id.*  The parties are still actively engaged in discovery, and discovery from defendant Vali and from potential opt-in plaintiffs remains outstanding.  *Id.* at 3.

Plaintiffs also write that dismissal of Richardson's claims would be improper at this stage, as Richardson had indicated to his counsel that he was ill before he stopped communicating with counsel.  Doc. 119 at 1.  Richardson has incurred only approximately two months of delay in responding to discovery requests, not including the parties' mutually agreed upon extensions, and Richardson has not received any notice that failure to respond to discovery might result in dismissal.  *Id.* at 3.

In deciding whether sanctions are warranted under Rule 37, the Court must consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance."  *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302–03 (2d Cir. 2009) (citations omitted).  "[D]ismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault by the non-compliant litigant."  *Id* (internal quotation marks and citation omitted)*.*  The Court agrees with Plaintiffs that dismissal at this point is premature and declines to impose that extreme sanction, as there is no indication that Richardson has been notified that failure to respond to written discovery requests would result in dismissal, and even if he had been so warned, Con Ed has not made any showing that Defendants have been prejudiced by his delay.  Moreover, there is no indication of willfulness or bad faith on Richardson's part, where counsel's letter represents that he was responsive and communicative before falling ill.  Doc. 119 at 1, 3; *see, e.g., Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9077

(RMB), 2007 WL 646326, at *13 (S.D.N.Y. Feb. 27, 2007) (declining to dismiss opt-in plaintiffs who had failed to appear for depositions where there was no evidence that they had been notified that failure to appear would result in dismissal with prejudice, and there was no evidence that defendants were unfairly prejudiced).  The cases Con Ed cites in its letter, Doc. 118 at 2 n.1, are inapposite, as all involve delays or lack of response by plaintiffs for nearly a year or more, and/or plaintiffs had received explicit notice that failure to respond to discovery could result in dismissal.[7]

While the Court does not condone Richardson's delays or lack of responsiveness, the Court agrees with Plaintiffs that dismissal in this instance is unwarranted.  Doc. 119 at 3.  The Court therefore denies Con Ed's motion for dismissal of Richardson's claims. The Court does now warn Richardson that failure to respond to discovery requests and to abide by Court orders, including scheduling orders, may result in dismissal of his claims pursuant to Fed. R. Civ. P. 37(b) or 41(b).

---

[7] *See Shi Min Chen v. Hunan Manor Enter., Inc.*, No. 17 Civ. 802 (GBD) (GWG), 2020 WL 4932777, at *3-5 (S.D.N.Y. Aug. 24, 2020) (dismissing claims of absent plaintiffs who had, among other violations, missed three dates for depositions and had been noncompliant for at least eight months at the time defendants' motion for sanctions was filed); *In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14 Civ. 7990, 2018 WL 1353261, at *1 (S.D.N.Y. Mar. 15, 2018) (granting defendant's motion to dismiss two opt-in plaintiffs' individual claims, where plaintiffs had a "history of ignoring Court orders and deadlines and refusing to even communicate with their own counsel," and where plaintiffs had failed to respond to defendant's interrogatories even after the court had compelled them to do so and had warned that future unresponsiveness or noncompliance could lead to dismissal with prejudice); *Roach v. T.L. Cannon Corp.*, No. 3:10-CV-0591 TJM/DEP, 2012 WL 2178924, at *4 (N.D.N.Y. May 15, 2012), *report and recommendation adopted*, No. 10-CV-0591, 2012 WL 2178919 (N.D.N.Y. June 13, 2012) (dismissing claims of certain opt-in plaintiffs who failed to appear for a scheduled deposition, failed to cooperate in scheduling depositions, and failed to respond to written discovery, after the court issued an order directing them to do so and warning that failure to comply would result in a recommendation of dismissal); *Martinez v. E&C Painting, Inc.*, No. 06 Civ. 05321 (RJH), 2008 WL 482869, at *5 (S.D.N.Y. Feb. 21, 2008) (granting dismissal of certain plaintiffs' claims where plaintiffs had failed to communicate with their counsel in over a year and had been warned of the consequences of failure to comply with discovery obligations and court orders); *Savage v. Unite Here*, No. 05 Civ. 10812 (LTS) (DCF), 2007 WL 1584206, at *1 (S.D.N.Y. May 31, 2007) (granting dismissal of plaintiffs' claims where plaintiffs had not complied with discovery orders since the beginning of the case and had received notice that they would be required to participate in the proceedings).

## V.     CONCLUSION

For the reasons set forth above, Plaintiffs' motion for conditional certification is GRANTED for a collective of Workforce7 employees who worked on Con Ed and/or Vali work sites from May 15, 2017 to the date of this Order.  The proposed notice and consent forms, subject to the changes described above, may be distributed by first-class mail and email, by posting at the Workforce7 office, and by sending deadline reminder notices.  Con Ed's motion to dismiss Richardson's claims is DENIED without prejudice. However, Richardson is hereby warned that failure to comply with discovery deadlines may result in dismissal of his claims pursuant to Fed. R. Civ. P. 37(b) or 41(b).  Parties are directed to meet and confer and to submit an amended scheduling order, including an amended deadline for Richardson's responses, and a status report with the parties' consent schedule for production of potential opt-in plaintiffs' contact information and for dissemination of notice, by January 7, 2022.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 94.

It is SO ORDERED.

Dated:  December 20, 2021
           New York, New York

_____
           Edgardo Ramos, U.S.D.J.