UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR BALLAST, LUIS SIMONE, *and* MARQUIS RICHARDSON, *Individually and On Behalf of All Others Similarly Situated*

       Plaintiffs,

– *against* –

WORKFORCE7 INC., CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., VALI INDUSTRIES, INC., *and* RONALD HILTON, *Jointly and Severally*

       Defendants.

**OPINION & ORDER**

20-cv-3812 (ER)

RAMOS, D.J.:

  Victor Ballast and Luis Simone (together, "Plaintiffs") bring this collective and class action on behalf of all similarly situated construction site flaggers against Workforce7 Inc. ("Workforce7"), Consolidated Edison Company of New York, Inc. ("Con Ed"), Vali Industries, Inc. ("Vali"), and individual defendant Ronald Hilton (with Workforce7, Con Ed, and Vali, collectively, "Defendants"). Plaintiffs allege Defendants failed to pay minimum wage and overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-07, and various provisions of New York Labor Law ("NYLL"). Doc. 69 (Amended Complaint, "Am. Compl.").

  Before the Court is Plaintiffs' motion to join parties and to further amend the Amended Complaint. Doc. 264. Plaintiffs seek to join Richard Walker and Orlando Obret as named plaintiffs and remove Marquis Richardson, who was terminated from the action on May 4, 2022 (Doc. 246). In addition, Plaintiffs move to amend the operative Amended Complaint to: (1) remove Richardson's allegations; (2) add allegations on behalf of Walker and Obret; (3) add certain factual allegations concerning Plaintiffs' preexisting FLSA and NYLL claims; (4) "clarif[y]" that Plaintiffs seek liquidated

damages on a preexisting claim; (5) "conform[] Plaintiffs' collective definition to that certified by the court;" and (6) modify the definition of a proposed subclass that Plaintiffs have not yet moved to certify.  Doc. 265 at 5–6; *see also* Doc. 265-3 (Plaintiff's Proposed Second Amended Complaint, "PSAC").  For the reasons set forth below, Plaintiffs' motion is GRANTED.

I. BACKGROUND

A. Factual Background

Ballast and Simone worked as construction flaggers[1] for Defendants from approximately February 2019 through April 2019.  Am. Compl. ¶¶ 106, 120.  Walker and Obret likewise worked as construction flaggers for Defendants—Obret from approximately August 2017 to April 2021, and Walker as a flagger from approximately June 2017 to July 2018 and thereafter as a supervisor until approximately February 2021.  PSAC ¶¶ 141, 151.

Workforce7 is a New York corporation with offices in the Bronx and Yonkers that employs construction flaggers and that contracts with companies requiring flaggers.  Am. Compl. ¶¶ 16–17, 53–54.  Hilton has served as the chief executive officer of Workforce7 since 2012 and at all relevant times was responsible for approving employees' paychecks and for day-to-day operations including setting office policies, hiring, discipline, and managing the business.  *Id.* ¶¶ 55–58.  At all relevant times, Workforce7 contracted with Con Ed, a public utilities provider, and with Vali, a construction contracting business that has performed excavation work on Con Ed job sites, to provide flaggers for work sites on streets, roads, and sidewalks throughout New York City and elsewhere in the state.  *Id.* ¶¶ 59–60, 65.  Plaintiffs allege that Workforce7, Con Ed, and Vali are their joint employers and that Hilton set the relevant payroll policies.  *Id.* ¶¶ 18, 20, 23.

---

[1] As construction flaggers, Plaintiffs were responsible for safety at and near construction sites, including directing pedestrian and vehicle traffic around the sites; setting up signs, cones, and barriers; ensuring that pedestrians were not near construction vehicles; closing street intersections; etc.  Am. Compl. ¶¶ 75, 162.

2

Plaintiffs further allege that, throughout their employment, Defendants subjected them to various unlawful practices that deprived them of wages and of required overtime pay. Per Hilton's instructions, they were required to travel to the Workforce7 office in the Bronx at 6:00 am or earlier in order to sign in, indicating their availability to work in order to receive a job assignment, as work was typically assigned on a first-come, first-served basis. *Id.* ¶¶ 145–46. Plaintiffs frequently waited one or more hours at the Bronx office for a job assignment, which might be for a site in the Bronx, Manhattan, Brooklyn, Queens, or Westchester County. *Id.* ¶¶ 108–09, 122–24, 139, 146. Plaintiffs allege that some flaggers would wait the entire day, until as late as 3:00 pm, without being assigned any work. *Id.* ¶ 148. Flaggers were not paid for the time they spent waiting for job assignments. *Id.*

Once they were assigned a job by Workforce7, Plaintiffs were given a timesheet to be signed by the Con Ed or Vali supervisor and returned to the Workforce7 office at the end of the day. *Id.* ¶¶ 87–89, 140, 146. Plaintiffs understood that Workforce7 used the completed timesheets to invoice Con Ed and Vali for flagging services. *Id.* ¶ 152. Flaggers who did not return their completed timesheets to the office were subject to being reprimanded or penalized by no longer being assigned jobs: in April 2019, Ballast was written up for not returning his timesheets promptly. *Id.* ¶¶ 151, 153. On multiple occasions, Plaintiffs were required to bring traffic cones, signs, and other equipment with them to the work sites. *Id.* ¶ 146. Plaintiffs also allege that Defendants routinely deducted thirty minutes or more for a lunch break from certain flaggers' payments, even though flaggers were not always allowed to take that break. *Id.* ¶ 154. Plaintiffs allege that they were not paid for the time spent waiting for job assignments, picking up and returning timesheets and equipment, and traveling between the Workforce7 office and various work sites. *Id.* ¶ 155. Plaintiffs were paid biweekly. PSAC ¶ 2. None of the Plaintiffs received benefits of any kind. Am. Compl. ¶¶ 119, 131; PSAC ¶¶ 150, 157.

Plaintiffs contend that Con Ed and Vali supervised, directed, and controlled their work while on site. Am. Compl. ¶ 77. Con Ed or Vali supervisors or foremen instructed them on where to stand and where to put up signage; disciplined them; controlled whether and when they could take meal or bathroom breaks; signed their timesheets; and frequently required them to travel to other Con Ed or Vali work sites, for which travel they were not compensated. *Id.* ¶¶ 81–86, 93–98, 108–10, 123–24. Ballast estimates that he worked between forty to sixty hours per week on work sites, not including time spent traveling back and forth to the Workforce7 office, while Simone estimates he generally worked between forty to fifty-two hours per week, not including travel. *Id.* ¶¶ 113, 125. Similarly, Walker estimates that he worked between forty to seventy hours per week, and Obret between forty to fifty, during at least one week of each pay period, though Plaintiffs allege that Defendants would cut flaggers' hours during the second week of the pay period to keep the total biweekly amount under eighty hours to avoid paying overtime premiums. PSAC ¶¶ 146, 154. Ballast and Simone were paid fifteen dollars per hour for all regular hours and twenty-two dollars and fifty cents for all overtime hours, but they did not receive any wages for time spent waiting for job assignments, picking up and returning timesheets and equipment, and job-related travel. *Id.* ¶¶ 117, 129. Walker was paid twelve dollars per hour from June to December 2017, thirteen dollars from January to July 2018, fourteen in July 2018, and sixteen from July 2018 to February 2021. PSAC ¶ 148. Obret was paid eleven dollars per hour from August 2017 to December 2017, thirteen dollars from January to July 2018, fourteen in July 2018, and fifteen from July 2018 to April 2021. *Id.* ¶ 156.

B.  **Procedural Background**

Ballast and Simone filed suit on May 15, 2020 against Workforce7, Con Ed, Ronald Hilton, Safeway Construction Enterprises, LLC, M.J. Electric, LLC, and John

4

Doe Corp. #1.[2]  Doc. 1.  Workforce7 and Hilton ("the Workforce7 Defendants") answered on August 16, 2020.  Doc. 36.  Con Ed moved to dismiss on October 15, 2020.  Doc. 56.  Plaintiffs stipulated to dismiss without prejudice their claims against Safeway Construction Enterprises and M.J. Electric LLC on August 28 and October 16, 2020, respectively.  *See* Docs. 41, 59.  Pursuant to a stipulation executed by the remaining parties on December 3, 2020 (Doc. 67), Con Ed notified the Court of its intention to withdraw its motion to dismiss (Doc. 68), and Plaintiffs filed their Amended Complaint on December 9, 2020 (Am. Compl.).  The Amended Complaint added Richardson as a plaintiff and Vali as a defendant (in place of John Doe Corp. #1).  Con Ed and Vali answered the Amended Complaint on January 29, 2021 and May 18, 2021, respectively.  Docs. 76, 83.  To date, the Workforce7 Defendants have not responded to the Amended Complaint.

The Court first entered a discovery plan and scheduling order on July 9, 2021.  Doc. 93.  Plaintiffs exchanged interrogatories and document requests with Defendants on or about July 30, 2021.  Doc. 265 ¶ 14.  The Workforce7 Defendants produced documents on August 25, 2020, which included "onboarding documents, tax forms, paystubs and timesheets for Plaintiffs Ballast and Simone."  *Id.* ¶ 15.  Con Ed produced documents on September 4 and 17, 2020 and on February 15, 2022.  *Id.* ¶ 16.  Con Ed's September 17, 2020 production included "certain spreadsheets containing information regarding flagger request, requisitions, contractor oversight reports and payments made to Workforce7 for flagging services."  *Id.*  The Workforce7 Defendants further produced employee files for the opt-in plaintiffs (including Walker and Obret) on August 1, 2022 and produced charts showing jobsites, hours, timeslips, and payroll records for the opt-in plaintiffs on September 2, 2022.  *Id.* ¶ 19.  Vali produced documents for the first time on August 2,

---

[2] The Amended Complaint also alleges FLSA violations in connection with work on M.J. Electric work sites, Am. Compl., ¶¶ 166-81, but concedes that these projects were not overseen by Con Ed personnel and Con Ed is not liable for any wage damages incurred in connection with Plaintiffs' work performed for M.J. Electric.  *Id.* ¶ 167.

5

2022, which included "a series of charts documenting the Workforce7 flagger who worked on a particular Vali Industries jobsite location each day for the years 2018 through 2021, the total number of hours the individual worked, and the total amount to pay to Workforce7." *Id.* ¶ 18.

Plaintiffs moved for conditional certification of a FLSA collective on August 9, 2021. Doc. 94. On November 5, 2021, Con Ed requested a pre-motion conference seeking leave to file a motion to dismiss Richardson from this action for failure to respond to discovery and apparent failure to communicate with counsel. Doc. 118. The Court granted Plaintiffs' motion for conditional certification and denied without prejudice Con Ed's motion to dismiss on Dec. 20, 2021. Doc. 124. Plaintiffs aver that approximately 118 people have filed Consent to Become a Party Plaintiff forms to opt in to the instant litigation. Doc. 266 at 8.

On April 20, 2022, Con Ed renewed its motion to dismiss Richardson for his continued failure to respond to discovery and communicate with counsel. Doc. 240. The Court granted Con Ed's motion on May 4, 2022, dismissing Richardson's claims with prejudice. Doc. 246.

Shortly thereafter, Plaintiffs informed the Court that they intended to "amend[] their complaint to add certain additional named plaintiffs and intend[ed] to share a draft complaint with Defendants shortly in an effort to avoid motion practice regarding the proposed amendments." Doc. 251 at 2. Plaintiffs filed the instant motion to join and amend on November 7, 2022. Doc. 264 ("Mot."). Con Ed opposed on December 22, 2022 (Doc. 272, "Opp."); and Vali, Hilton, and Workforce7 joined Con Ed's opposition (Docs. 273, 274). Defendants do not oppose the addition of Walker and Obret but do oppose Plaintiffs' other proposed substantive revisions to their pending complaint. Opp. at 3.

6

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a liberal standard, as the Federal Rules "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits" of the case. *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Accordingly, "a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016); *see also Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 369 (S.D.N.Y. 2020) ("The Second Circuit has stated that a court should allow leave to amend a pleading unless the non-moving party can establish prejudice or bad faith.").

## III. DISCUSSION

### A. Joinder of Walker and Obret

Defendants do not oppose joining Walker and Obret in place of Richardson. Opp. at 3–4. Thus, Plaintiffs' motion to join Walker and Obret, amend the caption, and remove Richardson's allegations is granted.

### B. Further Amendment of Complaint

Defendants argue, however, that Plaintiffs' motion "belated[ly]" seeks "other, more far-reaching requests, made near to the close of fact discovery," and oppose such further amendments. Opp. at 3–4. These additional amendments:

- (1) "add allegations regarding Plaintiffs' lack of overtime premium pay due to Defendants' practices of paying flaggers on a biweekly basis, Defendants' failure to pay wages of any kind for time spent participating in mandatory meetings, Plaintiffs' job duties and entitlement to prevailing wages, Defendants' joint employer status, Con Edison and Vali Industries' involvement in determining certain of Workforce7's payroll policies and day-to-day operations, including hiring, firing and disciplining employees, and a 'transportation' line item that appears on flaggers' paystubs starting in or around early 2019, which Plaintiffs allege would entitle them to a higher overtime rate;"

> (2) "clarif[y] that Plaintiffs' preexisting NYLL § 191 unpaid wages claim includes liquidated damages resulting from untimely wage compensation;"
>
> (3) "conform[] Plaintiffs' collective definition to that certified by the Court;" and
>
> (4) "modif[y] Plaintiffs' proposed prevailing wage subclass definition to narrow the geographic scope to New York City projects and include all non-union flaggers on Con Edison jobsites, whether they worked directly with Con Edison or through a subcontractor."

Mot. at 5–6; *see also* Opp. at 2–3 (adopting Plaintiffs' characterization of the proposed amendments). Defendants argue leave to amend should be denied because Plaintiffs unduly delayed and the amendments would unfairly prejudice Defendants. *Id.* at 3. Specifically, Defendants argue that undue prejudice would arise here because the amendments would require new discovery and are "proposed on the eve of deadlines that will have to be extended and [would] 'significantly delay the resolution of the dispute.'" *Id.* at 4 (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). Defendants do not argue either bad faith or futility.

As a preliminary matter, the Court notes that Defendants are correct that Plaintiffs' PSAC entails significantly more substantive amendments than what was previously represented to the Court. In requesting to amend the civil discovery plan and scheduling order to allow Plaintiffs time to file a second amended complaint, Plaintiffs stated only that they sought to add additional named plaintiffs to replace Richardson. Docs. 251, 256, 258. But, as Plaintiffs' description of their proposed amendments acknowledges, the PSAC also amends allegations unrelated to the joinder of Walker and Obret. *See* Mot. at 5–6. Notwithstanding Plaintiffs' more extensive and substantive amendments, however, the Court finds that Defendants have not met their burden to establish that Plaintiffs unduly delayed the amendments, nor that the PSAC will unfairly prejudice Defendants.

1. *Undue Delay*

Defendants' primary argument that Plaintiffs have unduly delayed proposing amendments is that—to the extent Plaintiffs' amendments respond to time and payroll

8

records from Workforce7 received in September 2022—"Plaintiffs have been in possession of their own payroll records since the inception of this litigation in May 2020, and they have also had the records of other flaggers long before September 2022." Opp. at 4.

In this Circuit, "absent a showing of bad faith or undue prejudice, [delay] does not provide a basis for the district court to deny the right to amend." *Ruotolo*, 514 F.3d at 191 (citation omitted). Defendants bear the burden of showing that the delay occurred because of dilatory motive or bad faith. *Contrera v. Langer*, 314 F. Supp. 3d 562, 567 (S.D.N.Y. 2018). Merely asserting that Plaintiffs could have uncovered information concerning the new allegations sooner and could have brought these allegations before the instant motion is insufficient. *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 313 (S.D.N.Y. 2021). Indeed, "[c]ourts in this Circuit routinely reject either basis for a finding of bad faith, even when several years have passed since the complaint was originally filed." *Id.* (citing *Bodum Holding AG v. Starbucks Corp.*, No. 19 Civ. 4280 (ER), 2020 U.S. Dist. LEXIS 192983, 2020 WL 6135714, at *9 (S.D.N.Y. Oct. 16, 2020); *Agerbrink*, 155 F. Supp. 3d at 452–54; *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 460 (S.D.N.Y. 2012)).

Plaintiffs moved for leave to amend on November 7, 2022 after receiving initial productions of payroll records from the Workforce7 Defendants and Con Ed in August and September 2020 and receiving the Workforce7 Defendants' productions of payroll records for the opt-in plaintiffs in August and September 2022. Even if calculating from August/September 2020, as Defendants suggest (rather than from August/September 2022, as Plaintiffs suggest), the Court does not find that the approximately two year delay between Plaintiffs' receipt of the records and their motion is "undue," such that leave to amend should be denied. *See id.*; *On Track Innovations LTD. v. T-Mobile USA, Inc.*, No. 12-cv-2224 (JCF), 2014 U.S. Dist. LEXIS 12960, at *8 (S.D.N.Y. Jan. 31, 2014) (collecting cases in which leave to amend granted after four to seven year delays);

9

*Innocent v. Hotels, LLC*, No. 05-cv-6057 (JCF), 2006 U.S. Dist. LEXIS 55237, at *10 (S.D.N.Y. Aug. 9, 2006) (collecting cases in which plaintiffs knew of the relevant facts at or before filing the original complaint).

    *2. Unfair Prejudice*

Defendants generally oppose what they consider an expansion of the NYLL § 191 claim, particularly as it concerns a demand for statutory liquidated damages; argue that paragraph 76[3] of the PSAC is improperly "speculat[ive]" because it is "based simply on 'information and belief;'" and contend that certain allegations, particularly regarding mandatory meetings and a "transportation" line item on flaggers' paystubs, "may arguably add to Plaintiffs' existing claims against Workforce7, [but] they expressly have nothing to do with Con Edison, although Plaintiffs seek to hold Con Edison jointly liable for their claimed damages." Opp. at 6. As a result, Defendants argue introducing new factual allegations, "at this late stage of the discovery process," would be prejudicial and "derail" the scheduling order. *Id.* at 6–7.

Defendants' objections as to paragraph 76 and Con Ed's joint liability are invalid bases upon which to deny leave to amend. As to the former, Defendants cite no authority for their argument that leave to amend should be denied on the basis that "[a]t this stage in the litigation, Plaintiffs should at least be able to state definitively whether they and their colleagues commonly performed worked [sic] requiring 'street opening permits.'" *Id.* at 6. Nor do Defendants contend that the "speculat[ive]" nature of the claims in paragraph 76 prejudices them. *Id.* At best, Defendants' position may be construed as an argument that Plaintiffs' proposed amendment is futile. But, leave to amend will be denied on grounds of futility only where the non-moving party establishes "beyond doubt that the plaintiff can prove no set of facts in support of [its] amended claims." *Healthy*

---

[3] Paragraph 76 states: "Upon information and belief, the vast majority of the work that Con Ed and Vali Industries performed involving Workforce7 flaggers required opening the street. This was true even of electrical work, as the power system in New York City is located underground."

10

*Lifestyle Brands, LLC v. Env't Working Grp.*, No. 20-cv-1098 (ER), 2021 U.S. Dist. LEXIS 187101, at *7 (S.D.N.Y. Sep. 29, 2021) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999)).  Courts analyze futility under the standard of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Agerbrink*, 155 F. Supp. 3d at 456.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  That paragraph 76 states that the allegation therein is "[u]pon information and belief" is not in itself a basis to find the allegation implausible, particularly as plausibility in motions to dismiss is evaluated at the level of *claims*, not individual factual allegations.  *See id.*  Moreover, factual determinations may not be made at this stage of the litigation, nor will the Court consider the substantive merits of Plaintiffs' claims on a motion to amend.  *Vasquez v. City of N.Y.*, No. 20-cv-4641 (ER), 2023 U.S. Dist. LEXIS 37165, at *6 (S.D.N.Y. Mar. 6, 2023) (citing *In re Ivan F. Boesky Sec. Litig.*, 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995)); *see also Goldberg v. Roth*, No. 99-cv- 11591 (BSJ), 2001 U.S. Dist. LEXIS 20932, at *20 (S.D.N.Y. Dec. 13, 2001) ("[U]nless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered on a motion to amend." (citation omitted)).

       Defendants' arguments as to Con Ed's joint liability fail for the same reason.  Under the FLSA and NYLL, individuals may have multiple "joint" employers, all of whom will be individually and jointly liable.  *Paz v. Piedra*, No. 09-cv-3977, 2012 U.S. Dist. LEXIS 4034, at *14 (S.D.N.Y. Jan. 12, 2012) (citing *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 186 (S.D.N.Y. 2003)).  And "whether a particular defendant can be considered a plaintiff's employer is a fact-specific inquiry."  *Flores v.*

11

*201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017).  It therefore may not be considered on a motion to amend.  *See Vasquez*, 2023 U.S. Dist. LEXIS 37165, at *6; *Goldberg*, 2001 U.S. Dist. LEXIS 20932, at *20.

Defendants' remaining arguments—as to statutory liquidated damages under NYLL § 191 and the discovery schedule—are addressed below.

        a.      *Statutory Liquidated Damages*

Plaintiffs seek to "clarify that Plaintiffs' preexisting NYLL § 191 unpaid wages claim includes liquidated damages resulting from untimely wage compensation."  Mot at 5; *see also* Doc. 265-4 at 56–57.  Plaintiffs allege that these allegations "were added in response to a March 2022 decision by the United States District Court of the Northern District of New York, which held that manual workers are able to bring claims for liquidated damages and attorneys' fees when they are not paid on a weekly basis, even when they were paid all of their wages owed."  Mot. at 15 (citing *Mabe v. Wal-Mart Assoc.*, 2022 U.S. Dist. LEXIS 53492 (N.D.N.Y. Mar. 24, 2022)).  Defendants dispute that the PSAC merely "clarifies" Plaintiffs' claim and instead charge that Plaintiffs' amendments would "greatly expand [Plaintiffs'] NYLL § 191 frequency-of-pay claims by altering their supporting allegations to not only claim uncompensated overtime, but also to include a demand for statutory liquidated damages."  Opp. at 5.  Further, Defendants argue the March 2022 *Mabe* decision was not the first case to recognize the availability of liquidated damages, as the principle has "been widely recognized by New York's courts" since 2019 and the same Northern District of New York *Mabe* case in fact first reached the conclusion in a prior decision in 2021.  *Id*.

Although Defendants express surprise at the proposed additional language as to statutory liquidated damages under NYLL § 191, the operative complaint explicitly states that the sixth cause of action is brought "[p]ursuant to NYLL § 191" and directly quotes the language of subsection NYLL § 191(1)(a), the very subsection Defendants claim is new.  Am. Compl. ¶ 206; *compare id.* ("Thus, Defendants violated NYLL § 191 by failing

12

to pay Plaintiff all of their wages earned within the week such wages were due."), *with* PSAC ¶ 227 ("By paying Plaintiffs, who were manual workers, on a biweekly basis, Defendants failed to pay Plaintiffs their wages on a timely basis, in violation of NYLL § 191(1)(a).")  It also explicitly states that "Plaintiffs and the Class members are entitled to recover from Defendants their unpaid wages, damages for unreasonably delayed payment of wages, *liquidated damages,* reasonable attorneys' fees, and costs and disbursements of the action . . . ." Am. Compl. ¶ 210; *compare id.*, *with* PSAC ¶ 230 ("Due to Defendants' violations of NYLL § 191(1)(a), Plaintiffs and the Class Members are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs and pre-judgment and post-judgment interested [sic] pursuant to NYLL § 198.").  Consequently, Plaintiffs' proposed amendments do not "greatly expand" their § 191 frequency-of-pay claims nor add for the first time a demand for liquidated damages, as Defendants claim.

            b.      *Additional Discovery*

Defendants finally allege that the "introduction of such new factual allegations, at this late stage of the discovery process, would be patently prejudicial and would threaten to derail the modified scheduling order deadlines only recently entered by the Court." Opp. at 6–7.  Defendants fail to identify, however, specific allegations that are "new" relative to the already-pleaded events of the complaint, nor any for which Defendant would need to seek additional discovery such that modification of discovery deadlines would be warranted.

Amendments are not unduly prejudicial even where they may warrant some additional discovery and concomitant extensions of scheduling deadlines. *Bodum Holding AG*, 2020 U.S. Dist. LEXIS 192983, at *28–29.  This is particularly true where significant amounts of discovery remain outstanding. *Id.* (noting that depositions remained outstanding and plaintiff had filed before the close of discovery).  Furthermore, where proposed amendments "arise[] from the same set of operative facts as the original

claims, or from events closely related to those originally pleaded," no undue prejudice will result even where the deadline for discovery has passed. *Michalek v. Amplify Sports & Entm't LLC*, 2012 U.S. Dist. LEXIS 85727, at *15 (S.D.N.Y. June 20, 2012) (quoting *Kreinik v. Showbran Photo, Inc.*, No. 02-cv-1172 (RMB), 2003 U.S. Dist. LEXIS 18276, 2003 WL 22339268, at *10 (S.D.N.Y. Oct. 14, 2003)).

The key allegations in Plaintiffs' operative complaint remain unchanged in the PSAC, and the factual allegations "new" to the PSAC still relate to the events relied upon in the operative complaint. *See generally* Doc. 265-4. As Defendants do not indicate otherwise by specifying any allegations unrelated to the originally pleaded claims and events, the Court does not find that Defendants would be unduly prejudiced even if discovery had already closed. Moreover, here, discovery remains ongoing. All discovery is not set to be completed until 90 days from the date of a decision on Plaintiffs' class certification motion, which itself is not due until August 11, 2023. Doc. 277. The deadlines for expert and nonexpert depositions and for expert reports likewise remain months away. *Id.* Indeed, the only deadline that has passed to date is that for interrogatories, but even that deadline was still months away (February 10, 2023, Doc. 259) when Plaintiffs filed the motion to amend November 7, 2022. And that deadline was extended an additional two months *after* Plaintiffs' filed the motion. Doc. 269 (extending deadline for interrogatories to April 17, 2023). Thus, even if the amendments *did* require additional discovery (notwithstanding that Defendants have not demonstrated that it would), Defendants had—and continue to have—ample time to seek it. [4] Accordingly, no prejudice results such that leave to amend will be denied. *See Bodum Holding AG*, 2020 U.S. Dist. LEXIS 192983, at *28–29; *Michalek*, 2012 U.S. Dist. LEXIS 85727, at *15.

---

[4] Plaintiffs note in footnote that they "intend to ask the Court for a modest extension of all pending deadlines, including the deadline to exchange their [damages] analysis, complete non-expert depositions and file their class certification motion." Doc. 265 at 5 n. 1. Should Plaintiffs still intend to seek such an extension, Plaintiffs are directed to confer with Defendants and submit a letter with agreed-upon dates to the Court.

      *c.*    *Collective and Subclass Definitions*

Finally, Plaintiffs' PSAC also "conforms Plaintiffs' collective definition to that certified by the Court and modifies Plaintiffs' proposed prevailing wage subclass definition to narrow the geographic scope to New York City projects and include all non-union flaggers on Con Edison jobsites, whether they worked directly with Con Edison or through a subcontractor." Mot. at 5–6. As to the collective definition, Plaintiffs' amendments in PSAC ¶ 30 accurately conform the definition to that certified by the Court (Doc. 124 at 12–13), and Defendant does not argue otherwise. As to the class definition, Defendants do not specifically object to Plaintiffs' proposed modification of the proposed prevailing wage subclass definition. And, as Plaintiffs have not yet moved to certify the class, Defendants are not prejudiced by the change, particularly since, as noted above, discovery remains ongoing. *See* Doc 277; *Bodum Holding AG*, 2020 U.S. Dist. LEXIS 192983, at *28–29; *Michalek*, 2012 U.S. Dist. LEXIS 85727, at *15. Accordingly, Plaintiffs are granted leave to amend both definitions.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to join parties and for leave to amend the caption and complaint is GRANTED. The second amended complaint shall be filed by May 15, 2023. The Clerk of Court is respectfully directed to terminate the motion, Doc. 264.

It is SO ORDERED.

Dated:    May 8, 2023
              New York, New York

                                                                  EDGARDO RAMOS, U.S.D.J.