UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VICTOR BALLAST, LUIS
SIMONE, RICHARD WALKER *and*
ORLANDO OBRET, *Individually and
On Behalf of All Others Similarly
Situated*

                          Plaintiffs,

            *– against –*

WORKFORCE7 INC.,
CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC., VALI
INDUSTRIES, INC., *and* RONALD
HILTON, *Jointly and Severally*

                          Defendants.

---

**OPINION & ORDER**

20-cv-3812 (ER)

U̲n̲d̲e̲r̲l̲i̲n̲e̲d̲: Ramos, D.J.:

        Victor Ballast, Luis Simone, Richard Walker, and Orlando Obret bring this

collective and class action on behalf of all similarly situated construction site flaggers[1]

against Workforce7 Inc. ("Workforce7"), Consolidated Edison Company of New York,

Inc. ("Con Ed"), Vali Industries, Inc. ("Vali"), and individual defendant Ronald Hilton

(collectively, "Defendants").  Plaintiffs allege Defendants failed to pay minimum wage

and overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206–

07, and various provisions of New York Labor Law ("NYLL").  Doc. 279 (Second

Amended Complaint, "SAC").

        Before the Court is Defendants' motion to dismiss Counts Ten and Eleven of the

SAC and to extend their time to answer the remaining claims.  Doc. 288.  For the reasons

set forth below, the motion is granted in part and denied in part.

---

[1] The Court refers to Ballast, Simone, Walker, Orbet, and the putative collective and class, collectively, as
"Plaintiffs."

## I.   BACKGROUND

### A.  Factual Background

Ballast, Simone, Walker, and Obret worked as construction flaggers[2] or supervisors for Defendants from approximately August 2017 through April 2021.  SAC ¶¶ 114, 129, 141, 151.  Workforce7 is a New York corporation with offices in the Bronx and Yonkers that employs construction flaggers and that contracts with companies requiring flaggers.  SAC ¶¶ 18–19, 55–56.  Hilton has served as the chief executive officer of Workforce7 since 2012 and at all relevant times was responsible for approving employees' paychecks and for day-to-day operations including setting office policies, hiring, discipline, and managing the business.  *Id.* ¶¶ 57–60.  At all relevant times, Workforce7 contracted with Con Ed, a public utilities provider, and with Vali, a construction contracting business that has performed excavation work on Con Ed job sites, to provide flaggers for work sites on streets, roads, and sidewalks throughout New York City and elsewhere in the state.  *Id.* ¶¶ 61–62, 67.  Plaintiffs allege that Workforce7, Con Ed, and Vali are their joint employers and that Hilton set the relevant payroll policies.  *Id.* ¶¶ 20, 25, 28.

Plaintiffs further allege that, throughout their employment, Defendants subjected them to various unlawful practices that deprived them of wages and of required overtime pay.  Per Hilton's instructions, they were required to travel to the Workforce7 office in the Bronx at 6:00 am or earlier in order to sign in to receive a job assignment, as work was typically assigned on a first-come, first-served basis.  *Id.* ¶¶ 158–59.  Plaintiffs frequently waited one or more hours at the Bronx office for a job assignment, which might be for a site in the Bronx, Manhattan, Brooklyn, Queens, or Westchester County.  *Id.* ¶¶ 116–17, 131–33, 142, 152, 159.  Plaintiffs allege that some flaggers would wait the entire day,

---

[2] As construction flaggers, Plaintiffs were responsible for safety at and near construction sites, including directing pedestrian and vehicle traffic around the sites; setting up signs, cones, and barriers; ensuring that pedestrians were not near construction vehicles; closing street intersections; etc.  SAC ¶¶ 79, 177.

until as late as 3:00 pm, without being assigned any work. *Id.* ¶ 160.  Flaggers were not paid for the time they spent waiting for job assignments. *Id.*

Once they were assigned a job by Workforce7, Plaintiffs were given a timesheet to be signed by the Con Ed or Vali supervisor at the worksite and returned to the Workforce7 office at the end of the day. *Id.* ¶¶ 94–96, 159–60, 165–66.  Plaintiffs understood that Workforce7 used the completed timesheets to invoice Con Ed and Vali for flagging services. *Id.* ¶ 166.  Flaggers who did not return their completed timesheets to the office were subject to being reprimanded or penalized by no longer being assigned jobs:  in April 2019, Ballast was written up for not returning his timesheets promptly. *Id.* ¶¶ 165–67.  On multiple occasions, Plaintiffs were required to bring traffic cones, signs, and other equipment with them to the work sites. *Id.* ¶ 159.  Plaintiffs also allege that Defendants routinely deducted thirty minutes or more for a lunch break from certain flaggers' payments, even though flaggers were not always allowed to take that break. *Id.* ¶ 168.  Plaintiffs allege that they were not paid for the time spent waiting for job assignments, picking up and returning timesheets and equipment, and traveling between the Workforce7 office and various work sites. *Id.* ¶ 169.  Plaintiffs were paid biweekly. *Id.* ¶ 2.  None of the Plaintiffs received benefits of any kind. *Id.* ¶¶ 127, 140, 150, 157.

Plaintiffs contend that Con Ed and Vali supervised, directed, and controlled their work while on site. *Id.* ¶¶ 87, 93–113.  Con Ed or Vali supervisors or foremen instructed them on where to stand and where to put up signage; disciplined them; controlled whether and when they could take meal or bathroom breaks; signed their timesheets; and frequently required them to travel to other Con Ed or Vali work sites, for which travel they were not compensated. *Id.* ¶¶ 88–93, 98–113, 118, 124, 137–38, 144–45.  Ballast estimates that he worked between forty to sixty hours per week on work sites, not including time spent traveling back and forth to the Workforce7 office, while Simone estimates he generally worked between forty to fifty-two hours per week, not including travel. *Id.* ¶¶ 121, 134.  Similarly, Walker estimates that he worked between forty to

seventy hours per week, and Obret between forty to fifty, during at least one week of each pay period, though Plaintiffs allege that Defendants would cut flaggers' hours during the second week of the pay period to keep the total biweekly amount under eighty hours to avoid paying overtime premiums. *Id.* ¶¶ 146, 154. Ballast and Simone were paid fifteen dollars per hour for all regular hours and twenty-two dollars and fifty cents for all overtime hours, but they did not receive any wages for time spent waiting for job assignments, picking up and returning timesheets and equipment, and job-related travel. *Id.* ¶¶ 125, 138. Walker was paid twelve dollars per hour from June to December 2017, thirteen dollars from January to July 2018, fourteen in July 2018, and sixteen from July 2018 to February 2021. *Id.* ¶ 148. Obret was paid eleven dollars per hour from August 2017 to December 2017, thirteen dollars from January to July 2018, fourteen in July 2018, and fifteen from July 2018 to April 2021. *Id.* ¶ 156.

### B.  Procedural Background

Ballast and Simone filed suit on May 15, 2020 against Workforce7, Con Ed, Ronald Hilton, Safeway Construction Enterprises, LLC, M.J. Electric, LLC, and John Doe Corp. #1.[3] Doc. 1. Workforce7 and Hilton ("the Workforce7 Defendants") answered on August 16, 2020. Doc. 36. Con Ed moved to dismiss on October 15, 2020. Doc. 56. Plaintiffs stipulated to dismiss without prejudice their claims against Safeway Construction Enterprises and M.J. Electric LLC on August 28 and October 16, 2020, respectively. *See* Docs. 41, 59. Pursuant to a stipulation executed by the remaining parties on December 3, 2020 (Doc. 67), Con Ed notified the Court of its intention to withdraw its motion to dismiss (Doc. 68), and Plaintiffs filed their amended complaint on December 9, 2020. The amended complaint added Marquis Richardson as a plaintiff and Vali as a defendant (in place of John Doe Corp. #1). Con Ed and Vali answered the

---

[3] Plaintiffs also allege FLSA violations in connection with work on M.J. Electric work sites (SAC ¶¶ 184–99) but concede that these projects were not overseen by Con Ed personnel and Con Ed is not liable for any wage damages incurred in connection with Plaintiffs' work performed for M.J. Electric (*id.* ¶ 185).

amended complaint on January 29, 2021 and May 18, 2021, respectively.  Docs. 76, 83.
The Workforce7 Defendants did not answer the amended complaint.

Plaintiffs moved for conditional certification of a FLSA collective on August 9,
2021.  Doc. 94.  On November 5, 2021, Con Ed requested a pre-motion conference
seeking leave to file a motion to dismiss Richardson from this action for failure to
respond to discovery and apparent failure to communicate with counsel.  Doc. 118.  The
Court granted Plaintiffs' motion for conditional certification and denied without prejudice
Con Ed's motion to dismiss on Dec. 20, 2021.  Doc. 124.

On April 20, 2022, Con Ed renewed its motion to dismiss Richardson for his
continued failure to respond to discovery and communicate with counsel.  Doc. 240.  The
Court granted Con Ed's motion on May 4, 2022, dismissing Richardson's claims with
prejudice.  Doc. 246.

Plaintiffs moved to join Walker and Obret and amend the complaint accordingly
on November 7, 2022.  Doc. 264.  The Court granted the motion on May 8, 2023.  Doc.
278.  Plaintiffs filed the Second Amended Complaint on May 15, 2023, which added
Walker and Obret but was otherwise substantively the same.[4]  Doc. 279.

Con Ed filed the instant motion on July 19, 2023 to dismiss Counts Ten and
Eleven ("the Counts"), contract and quasi-contract claims, respectively, that allege
Defendants failed to pay Plaintiffs prevailing wages, and extend its time to answer the
remaining claims.  Doc. 288.  Vali and the Workforce7 Defendants filed letters the same
day, joining Con Ed's motion and asking that Con Ed's arguments be applied equally to
dismiss those causes of action as asserted against them.  Docs. 291, 292.[5]  On November
21, 2023, the Court noted that Con Ed's motion to dismiss the Counts, as against it, relied

---

[4] Relevant here, the Tenth and Eleventh causes of action in the Second Amended Complaint were also
brought in the original complaint.  See Doc. 1 ¶¶ 161–72.

[5] Accordingly, although the motion is styled as being solely on behalf of Con Ed, the Court refers to the
motion as "Defendants' motion" except to the extent that Vali or Workforce7's arguments diverge from Con
Ed's.

in part upon arguments that Vali and the Workforce7 Defendants were the ones actually liable to Plaintiffs; but neither Vali nor the Workforce7 Defendants addressed those arguments in their letters seeking to join Con Ed's motion.  Doc. 300 at 1–2.  The Court directed Vali and the Workforce7 Defendants to submit a response stating whether they also joined the portions of Con Ed's motion arguing that they are liable for Plaintiffs' prevailing wage claims and, if not, submit any argument to dismiss the Counts.  *Id.* at 2–3.  Vali and the Workforce7 Defendants submitted responses on December 22, 2023 disclaiming liability to Plaintiffs.  Docs. 305, 306.

## II.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal

sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

In considering a Rule 12(b)(6) motion, a district court may consider the complaint, exhibits thereto, and any document incorporated by reference or integral to it. *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (quoting *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)). Courts most commonly recognize documents as incorporated by reference or integral where "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Glob. Network Communs., Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006). Accordingly, when considering a motion to dismiss breach of contract claims, courts will look "at the contract itself, which by definition is integral to the complaint." *Sobel v. Major Energy Servs., LLC*, No. 19-cv-8290 (GBD), 2020 U.S. Dist. LEXIS 137832, at *13 (S.D.N.Y. July 31, 2020). "If a document integral to the complaint contradicts that complaint, the document controls, and the court need not accept the complaint's allegations as true." *Trustpilot Damages LLC v. Trustpilot, Inc.*, No. 21-cv-432 (JSR), 2021 U.S. Dist. LEXIS 121150, at *9 (S.D.N.Y. June 29, 2021) (citations omitted).

## III.    DISCUSSION

### A.  Rule 12(g) Does Not Prohibit Defendants' Motion

Plaintiffs object that the instant motion is procedurally improper, and should be denied on that basis alone, because Federal Rule of Civil Procedure 12(g)(2) prohibits parties from making successive Rule 12 motions raising a defense that was available in, but omitted from, the prior motion.  Doc. 295 at 17–19.  Plaintiffs allege that, because the Counts were in the original complaint, which Con Ed previously moved to dismiss in its entirety pursuant to Rule 12(b)(6), Con Ed thereby waived any 12(b)(6) defenses, even though the prior motion was not decided; and Plaintiffs' amendment of the complaint (but not the Counts) does not revive the waived defense.  *Id.* at 18–19.  Defendants respond that Rule 12(g) only bars parties from relitigating 12(b)(2)–(5) defenses,[6] but it does not prevent successive 12(b)(6) arguments.  Doc. 297 at 7.

Rule 12(g)(2) provides that, "[e]xcept as provided in Rule 12(h)(2) or (3)," a party that makes a Rule 12 motion may not make another Rule 12 motion "raising a defense or objection that was available to the party but omitted from its earlier motion."  Rule 12(h)(2), in turn, provides that a defense of failure to state a claim upon which relief can be granted may be raised "(A) in any pleading allowed or ordered under Rule 7(a); (B) by any motion under Rule 12(c); or (C) at trial."

Accordingly, "[a]lthough Rule 12 'bars successive motions premised on the differing defenses listed in Fed. R. Civ. P. Rule 12(b)(2)-(5)[,]' it does not necessarily prevent additional 12(b)(6) motions containing 'differing arguments.'"  *Indig v. Vill. of Pomona*, No. 18-cv-10204 (PMH), 2021 WL 3773653, at *3 (S.D.N.Y. Aug. 24, 2021) (quoting *Walia v. Napolitano*, No. 11-cv-02512, 2017 WL 10378189, at *8 (E.D.N.Y. Dec. 4, 2017)).  Courts in this District have therefore held that successive Rule 12(b)(6) motions are not procedurally improper.  *See, e.g.*, *United States ex rel. Kolchinsky v.*

---

[6] Those defenses are:  lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process.

*Moody's Corp.*, 238 F. Supp. 3d 550, 555 (S.D.N.Y. 2017) ("Indeed, Rule 12 provides an exception to waiver for any motion to dismiss for '[f]ailure to state a claim,' which may be raised not only in a pleading or motion, but as late as trial itself.  Rule 12 provides that while procedural defenses are waived if omitted from a pleading or pre-answer motion, a defendant cannot waive the more fundamental 12(b)(6) defense—that the plaintiff has no legal right to recovery in the first place." (internal citation omitted)); *Vega v. State Univ. of New York Bd. of Trustees*, No. 97-cv-5767 (DLC), 2000 WL 381430, at *2 (S.D.N.Y. Apr. 13, 2000) ("[S]uccessive motions to dismiss for failure to state a claim are not precluded by Rule 12(g)."); *Sharma v. Skaarup Ship Management Corp.*, 699 F. Supp. 440, 444 (S.D.N.Y. 1988) ("Rule 12 specifically allows for successive motions to dismiss for failure to state a claim."); *see also Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (explaining that "the defense of failure to state a claim is not waivable" and is "preserved from the waiver mechanism in Rule 12(h)").

Plaintiffs cite several cases from the Eastern District of New York denying motions to dismiss to the extent they raised defenses that "could have been or were previously presented or decided."  Doc. 295 at 19 (citing *Ogunkoya v. Cnty. of Monroe*, No. 15-cv-6119 (KAM), 2020 U.S. Dist. LEXIS 118580, at *10 (E.D.N.Y. July 7, 2020); *Falcon v. City Univ. of N.Y.*, No. 15-cv-3421 (ADS), 2016 U.S. Dist. LEXIS 92396, at *37 (E.D.N.Y. July 15, 2016)).  At least one court in this District has similarly held that it "will only consider arguments that Defendants could not have advanced in their previous motions to dismiss."  *Easton Rae, LLC v. Violet Grey, Inc.*, No. 21-cv-6234 (JPO), 2023 U.S. Dist. LEXIS 54321, at *9–10 (S.D.N.Y. Mar. 29, 2023) (citation omitted).  But both the *Falcon* and *Easton Rae* courts held that the defendants could raise the identical failure-to-state-a-claim arguments by a Rule 12(c) motion as soon as they answered.[7]

---

[7] Though *Ogunkoya* did not similarly hold, the court in that case had already decided the prior Rule 12 motion, and accordingly held that the prior decision was the law of the case, and defendants were therefore not entitled to re-raise already denied defenses and objections.  2020 U.S. Dist. LEXIS 118580, at 10.

*Easton Rae*, 2023 U.S. Dist. LEXIS 543221, at *13; *Falcon*, 2016 U.S. Dist. LEXIS 92396, at *39; *see also* Fed. R. Civ. P. 12(h)(2)(B) (providing that a failure to state a claim argument may be raised on a 12(c) motion). And *Easton Rae* explicitly noted that it decided to wait for a 12(c) motion because "[h]aving [the d]efendant answer first would be most efficient." 2023 U.S. Dist. LEXIS 543221, at *12.

Thus, the greater weight of case law in this District suggests that failure-to-state-a-claim arguments are not waivable and may be brought in a successive Rule 12 motion. Moreover, Defendants undoubtedly could re-raise the identical arguments as a 12(c) motion after answering the SAC, but (unlike *Easton Rae*) requiring Defendants to thusly re-file in the instant case would be inefficient because Defendants already answered the Counts in prior versions of the complaint. The Court will therefore consider the merits of Defendants' arguments here.

### B. Defendants' Motion to Dismiss is Granted in Part and Denied in Part

Count 10 alleges that that the Defendants entered into contracts containing schedules of the prevailing rates of wages and supplemental benefits or containing reference to NYLL prevailing wage provisions, such that prevailing wages were effectively made part of the contracts—but Defendants failed to pay prevailing wages. Doc. 279 ¶¶ 242–44. Specifically, Plaintiffs point to contracts directly between the Workforce7 Defendants and Con Ed or indirectly via Vali (*i.e.*, with Workforce7 as either prime- or subcontractors on Con Ed projects) for flagging work on New York streets, roadways, and sidewalks ("the Con Ed Contracts"),[8] to which Plaintiffs allege they were intended third-party beneficiaries. *Id.* ¶¶ 67–74. To the extent any contracts "failed to

---

[8] The Con Ed Contracts with Vali are slightly different than those with Workforce7, as those with Vali incorporate Con Ed's Standard Terms and Conditions for *Construction* Contracts, whereas those with Workforce7 use Con Ed's Standard Terms and Conditions for *Service* Contracts. *Compare* Docs. 290-1–290-2 (Workforce7), *with* Docs. 290-3–290-17 (Vali).

Although the Con Ed Contracts were not attached to Plaintiffs' complaint, they are, "by definition[,] integral to the complaint," and therefore properly before the Court on the instant motion to dismiss. *See Sobel*, 2020 U.S. Dist. LEXIS 137832, at *13.

explicitly contain prevailing wage schedules," Plaintiffs argue the prevailing wage requirements were nonetheless "supplemented as a matter of law." *Id.* ¶¶ 243–44; *see also id.* ¶¶ 77–84.  Further, Plaintiffs allege that projects involving street opening, or excavating, in New York City required that Con Ed and/or Vali obtain Street Opening Permits from the New York City Department of Transportation ("the DOT Permits"), which include a stipulation requiring that Plaintiffs be paid prevailing wages pursuant to New York City Administrative Code § 19-142.[9]  *Id.* ¶ 75.  To the extent that Plaintiffs' contractual prevailing wages claim fails, Plaintiffs pled, in in the alternative, Count 11, which alleges that Defendants were unjustly enriched by failing to pay Plaintiffs prevailing wages.  Doc. 279 ¶¶ 246–52.

Defendants move to dismiss the Counts first on the basis that the Con Ed projects, as private work rather than work for a public agency with public funds, were not "public works," the only type of project to which NYLL § 220's prevailing wage requirements necessarily apply.  Doc. 289 at 13–18.  Moreover, Con Ed argues that the Con Ed Contracts did not require it (as opposed to Vali and Workforce7) to pay Plaintiffs prevailing wages.  *Id.* at 18–25; *see also id.* at 19 (arguing that the Con Ed Contracts with Workforce7 "obligate Workforce7 as the contractor, and not Con Edison as the owner" to pay prevailing wages to the extent that Plaintiffs are owed such wages), 23 (arguing that the Con Ed Contracts with Vali did not "obligate[ Con Ed] to pay prevailing wages and

---

[9] Section 19-142 provides:

> A person to whom a permit may be issued, to use or open a street, shall be required, before such permit may be issued, to agree that none but competent workers, skilled in the work required of them, shall be employed thereon, *and that the prevailing scale of union wages shall be the prevailing wage* for similar titles as established by the fiscal officer pursuant to section two hundred twenty of the labor law, paid to those so employed.  *No permit shall be issued until such agreement shall have been entered into with the department, and all such permits hereafter issued shall include therein a copy of this provision.*  When permits are issued to utility companies or their contractors, the power to enforce this provision shall be vested with the comptroller of the city of New York consistent with the provisions of section two hundred twenty of the labor law.

(emphasis added).

benefits," rather "Vali would pay such wages and benefits itself").  For their part, Vali and the Workforce7 Defendants dispute that the Con Ed Contracts required that they pay Plaintiffs prevailing wages either.  Doc 305 at 3–4; Doc. 306 at 1–2.  Second, Defendants argue that Plaintiffs are not third-party beneficiaries to the Con Ed Contracts.  Doc. 289 at 25–26.  Third, the DOT Permits are not contracts and do not provide any third-party contractual rights or benefits.  *Id.* at 26–28.

In opposition, Plaintiffs argue that their claims do not depend upon whether the Con Ed jobsites where they worked are public works projects because the Counts rely on contract theories based on the Con Ed Contracts and the DOT Permits.  Doc. 295 at 10.  In other words, Plaintiffs allege that Defendants contractually obligated themselves to pay prevailing wages on their non-public works, even if the NYLL did not so obligate Defendants, and Defendants' NYLL argument is a "red herring."  *Id.*  Furthermore, Plaintiffs argue that § 19-142 "provides for two separate agreements to pay prevailing wages to workers on excavations:  (1) the 'agreement [that] shall have been entered into' before the [DOT] Permit is acquired and (2) the [DOT] Permit itself."  *Id.* at 12.  It is these two agreements that form the basis of Con Ed's liability.  *Id.*  Moreover, the permits are valid contracts upon which Plaintiffs may bring a third-party beneficiary claim.  *Id.* at 23–30.  But, to the extent that the DOT Permits do not constitute contracts, Plaintiffs seek to recover in the alternative in quasi-contract in Count 11.  *Id.* at 30–33.

As to Vali, Plaintiffs allege that it likewise agreed to pay prevailing wages pursuant to § 19-142 to the extent it obtained DOT Permits for the work for Con Ed.  *Id.* at 14.  More crucially, however, Vali agreed to pay Plaintiffs prevailing wages pursuant to its contracts with Con Ed, which acknowledge the obligation to pay prevailing wages in accordance with § 19-142.  *Id.*  Similarly, Plaintiffs allege the Con Ed Contracts with Workforce7 require Workforce7 to comply with all federal, state, and local laws, which Plaintiffs argue also meant that Workforce7 needed to comply with § 19-142's prevailing wages requirement.  *Id.; see also id.* at 23 ("Just as Con Edison has agreed to comply

with [§] 19-142 and pay prevailing wages as evidenced by its request and receipt of [the DOT] Permits, so too have Workforce7 and Vali agreed to comply with the law pursuant to their contracts with Con Ed[].").

> 1. *The Motion to Dismiss Count 10 is Granted in Part and Denied in Part*
> > a. *Count 10 is Dismissed Insofar as it Relies Upon the DOT Permits*

Plaintiffs argue that Con Ed and Vali are liable for failure to pay prevailing wages both based on (1) the "agreements" Con Ed entered into with the Department of Transportation ("DOT") to acquire the DOT Permits and (2) the DOT Permits themselves, which requirement payment of prevailing wages pursuant to § 19-142. Doc. 295 at 12.

As a preliminary matter, the Court notes that the former agreements are nowhere referenced in the SAC. Indeed, Plaintiffs even note in their memorandum of law that they "do not possess" any such agreements and, in fact, "are not aware of the form such agreement[s] may have taken." *Id.* at 22, 30. In other words, Plaintiffs *assume* such agreements must exist because, without them, the DOT would presumably not have issued the permits. However, even if the existence such agreements could be plausibly alleged, allegations raised for the first time in opposition to dismissal and not pled in the complaint are insufficient to resist a motion to dismiss. *Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810 F. App'x 17, 20 (2d Cir. 2020) ("[A] complaint may not be amended by advocating a different theory of liability in an opposition brief wholly unsupported by factual allegations in the complaint."); *Ritchie v. N. Leasing Sys., Inc.*, 14. F. Supp. 3d 229, 241 (S.D.N.Y. 2014) ("It is longstanding precedent in [the Second] [C]ircuit that parties cannot amend their pleadings through issues raised solely in their briefs." (citation omitted)); *In re Veon Ltd. Sec. Litig.*, No. 15-cv-08672 (ALC), 2018 U.S. Dist. LEXIS 148272, at *51 (S.D.N.Y. Aug. 30, 2018) ("Courts in this Circuit have held that a plaintiff is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss." (internal quotation marks and citation omitted)).

Accordingly, the Court cannot consider Plaintiffs' new theory of liability with respect to these purported agreements.  *See Universal Trading & Inv. Co. v. Tymoshenko*, No. 11-cv-7877 (PAC), 2012 WL 6186471, at *1 (S.D.N.Y. Dec. 12, 2012) ("[N]ew facts and allegations, first raised in a [p]laintiff's opposition papers, may not be considered in deciding a motion to dismiss." (internal quotation marks and citation omitted)).

As to the DOT Permits themselves, Defendants argue that such permits cannot form the basis of Plaintiffs' prevailing wage claims because the DOT Permits "are not contracts and do not provide any third-party contractual rights or benefits to a vendor's employees."  Doc. 289 at 26–27 (citing *Gregory v. Stewart's Shops Corp.*, No. 14-cv-33, 2017 WL 4326518, at *4 (N.D.N.Y. Sept. 28, 2017); *Allen v. Telergy Network Servs.*, 860 N.Y.S 2d 299, 303 (3d Dep't 2008); *Pyramid Co. of Onondaga v. N.Y. State Dep't of Labor*, 645 N.Y.S.2d 633, 634–35 (N.Y. App. Div. 3d Dep't 1996); *Santana v. San Mateo Constr. Corp.*, No. 650029/2022, 2023 WL 4106949, at *2 (N.Y. Sup. Ct. June 21, 2023); *Ross v. No Parking Today, Inc.*, 192 N.Y.S.3d 872 (N.Y. Sup. Ct. 2023)).  Plaintiffs argue that permits may constitute contracts if the elements of a contract are established.  Doc. 295 at 23 (citing *State of N.Y. v. JEDA Capital-Lenox, LLC*, No. L43-12, 2018 N.Y. Misc. LEXIS 1292, at *9 (N.Y. Sup. Ct. Apr. 8, 2018), *aff'd* 176 A.D.3d 1443, 1446 (N.Y. App. Div. 3d Dep't 2019); *Express Indus. & Terminal Corp. v. N.Y. State DOT*, 252 A.D.2d 376 (N.Y. App. Div. 1st Dep't 1998), *rev'd on other grounds,* 93 N.Y.2d 584 (N.Y. 1999)).  They further contend that the authority Defendants rely on does not reach so far as to hold that "no obligation or express agreement contained in a permit may be enforceable as a contract."  *Id.* at 26.  Rather, Plaintiffs argue that "[n]o authoritative rule exists as to whether permits may ever be considered contracts," and neither *Ross* nor *Santana* are persuasive "as they ignore both express statutory language and New York appellate precedent."  *Id.*

The Court does not find Plaintiffs' authority, nor its refutation of Defendants' authority, persuasive and accordingly dismisses the Tenth Cause of Action insofar as it

arises from the DOT Permits.  Although Plaintiffs are right that *Express Indus.* held that a permit could be enforced as a contract if all requirements for contract formation are met, 252 A.D.2d at 381, the *JEDA Capital-Lenox* court, twenty years later, said only that it "remains an unsettled question under New York law" whether a highway work permit constitutes an enforceable contract, 2018 N.Y. Misc. LEXIS 1292, at *9.

Several of Defendants' cases are also inapposite.  *Gregory* declined to consider a permit issued by the Department of Labor to be a contract because the Department of Labor "reserved the right to revoke . . . at any time" those specific provisions of the permit that were the subject of the suit, and such a unilateral and unqualified right of revocation would preclude contract formation in any context.  2017 WL 4326518, at *4. *Pyramid* held that the DOT's issuance of a permit was insufficient to satisfy the requirement that a public agency be party to a construction contract, as was necessary to trigger NYLL § 220's prevailing wage requirements in its prior incarnation.  645 N.Y.S.2d at 634–35.  *Allen* comes closer to addressing whether plaintiff-employees may bring a breach of contract claim as third-party beneficiaries.  Relying on *Pyramid*, it held that, "[i]nsofar as this Court has held that a highway work permit does not constitute a contract, [a] plaintiff may not claim to be a third-party beneficiary thereunder"; and, even if the permit was a contract, the plaintiff there would not have been an intended third-party beneficiary for purposes of his claim.  860 N.Y.S 2d at 303.

Ultimately, however, *Santana* and *Ross* both expressly foreclose a cause of action like Count Ten.  *Santana* dismissed a nearly identical claim—for prevailing wages, brought against Con Ed and one of its flagging service vendors, by a plaintiff flagger employed by that vendor on Con Ed projects, based on DOT Permits—expressly because "permits are not contracts and thus there can be no viable breach of contract claims" arising therefrom.  2023 WL 4106949, at *2.  And *Ross* too dismissed a prevailing wage claim brought by a class of flaggers for Con Ed and its vendor because "the [DOT P]ermit does not constitute a contract that plaintiffs may enforce using a third party

beneficiary theory."  192 N.Y.S.3d at 875.  And while Plaintiffs charge that *Santana* and *Ross* are inadequately reasoned and wrongly decided, the Court is not persuaded, particularly in light of the paucity of contrary authority and a federal court's obligation to follow state courts' construction of state law.  Accordingly, following *Santana* and *Ross*, Plaintiffs' Tenth Cause of Action for breach of contract is dismissed insofar as it is based on the DOT Permits.

> b. *Count 10 is Dismissed as Against the Workforce7 Defendants and Con Ed, But Plaintiffs May State a Breach of Contract Claim Against Vali Based on the Con Ed Contracts with Vali*

Plaintiffs also argue the duty to pay prevailing wages and supplemental benefits was made part of the Con Ed Contracts for Plaintiffs' benefit, rendering Plaintiffs third party beneficiaries.  Doc. 279 ¶¶ 241–45.  Defendants dispute that Plaintiffs are third party beneficiaries of the Con Ed Contracts because the contracts specifically disclaim any third-party rights.  Doc. 289 at 25–26.  Additionally, Vali argues that its contracts with Con Ed require only that it pay prevailing wages to employees "at the construction site," but traffic control flaggers like Plaintiffs worked hundreds of feet away from the site, and the requirement thus did not apply to them.  Doc. 306 at 1–2; *see also id.* at 2 ("Further, Vali disputes that Con Edison and Vali ever intended, negotiated for, much less entertained that [f]laggers would be incorporated into the foregoing contractual language to make flaggers eligible for prevailing wages.").  And the Workforce7 Defendants challenge that none of the Con Ed Contracts to which they were a party contained any reference to prevailing wages.  Doc. 305 at 3–4.

> i. *Plaintiffs Do Not State a Breach of Contract Claim Based Upon the Con Ed Contracts with Workforce7*

The Con Ed Contracts with Workforce7 provide that certain enumerated Con Ed affiliates and non-parties are third party beneficiaries of the contracts and may enforce them and specifically state that "[t]here are no other third party beneficiaries of the Contract."  Docs. 290-1 & 290-2 (Con Ed Contracts with Workforce7) § 46.  Those

contracts also contain a provision requiring compliance with all federal, state, and local laws and regulations, including labor laws. *Id.* § 26. The contracts do not specifically mention prevailing wages. *See generally id.*

Plaintiffs argue that the obligation § 26 imposes on Con Ed and the Workforce7 Defendants to "comply with all laws," includes the obligation imposed by § 19-142 to pay prevailing wages to its workers on Con Ed's excavation projects. Doc. 295 at 14. Defendants do not respond to Plaintiffs' allegations that § 26 of the contracts obligated Con Ed and the Workforce7 Defendants to comply with § 19-142 and, accordingly, pay Plaintiffs prevailing wages. Doc. 297 at 7–8; Doc. 305 at 3–4. Plaintiffs' interpretation of § 26 is plausible. Section 19-142 applies to all projects for which DOT Permits are issued, independent of whether the project is a "public work" pursuant to NYLL § 220, and Plaintiffs allege that some, if not all, of the projects for which they served as flaggers required DOT Permits. *See* Doc. 295 at 11–14.

Plaintiffs do not, however, address § 46 of the Con Ed Contracts, which expressly limits the affiliates and non-parties that may be considered as third-party beneficiaries. Plaintiffs are not among the list of affiliates and non-parties enumerated in that provision. Docs. 290-1 & 290-2, § 46. The provision's concluding sentence—that "[t]here are no other third party beneficiaries"—therefore applies to Plaintiffs. *See id.* Accordingly, Plaintiffs may not bring a breach of contract claim on the basis of the Con Ed Contracts with Workforce7. *See Olin Corp. v. Lamorak Ins. Co.*, No. 84-cv-1968 (JSR), 2018 U.S. Dist. LEXIS 65446, at *45 (S.D.N.Y. Apr. 17, 2018) ("In New York, only the parties to a contract can enforce that contract, unless a non party is intended to be a third-party beneficiary.").

ii. *Plaintiffs May State a Breach of Contract Claim Against Vali, But Not Con Ed, Based on the Con Ed Contracts with Vali*

The Con Ed Contracts with Vali also disclaim any third-party beneficiaries except those specifically enumerated in the contract. Docs. 290-3–290-17 (Con Ed Contracts

with Vali) § 44.  In earlier contracts, the disclaimer reads:  "Unless specifically provided elsewhere herein, nothing contained in [the contracts] is intended for the benefit of any third parties."  Docs. 290-3–290-7, § 44.  Contracts effective in or after 2013 replicate the language in the Workforce7 contracts, stating in relevant part:

> Con Edison's affiliates and other non-parties referenced in Articles 4, 7, 14, 17, 19, 25, 27, 29, 31, 35, 36, 37, 44 and 56 are third party beneficiaries and may enforce those Articles and any other articles in which the affiliates or nonparties are specifically referenced. There are no other third party beneficiaries of the Contract.

Docs. 290-8–290-17, § 44.  Section 14 of each of the contracts with Vali, titled "Labor," in turn provides in relevant part:

> With respect to Work ordered for Con Edison, unless otherwise agreed to by Con Edison, Contractor shall employ on Work at the construction site only union labor from building trades locals having jurisdiction over the Work to the extent such labor is available. Where Contractor employs workers on sites where a permit to use or open a street (including excavating the street) is required and New York City Administrative Code Section 19-142 . . . is applicable, Contractor agrees that, pursuant to and in furtherance of the requirements of . . . Section 19-142 . . . and the terms and conditions of the permit:  none but competent workers, skilled in the work required of them, shall be employed thereon; the prevailing scale of union wages shall be the prevailing wage for similar titles as established by the Comptroller of the City of New York pursuant to Section 220 of the New York State Labor Law . . . , paid to those so employed, and Contractor shall pay that prevailing wage to workers so employed.  These obligations of Contractor shall apply even though Con Edison may have obtained the permit.

Docs. 290-3–290-17 § 14.  Plaintiffs argue that, together, these two provisions demonstrate that Vali agreed to pay Plaintiffs prevailing wages in accordance with § 19-142.  Doc. 295 at 14.

The contracts with Vali thus contain an even more explicit reference to § 19-142 and prevailing wages than those with Workforce7, only strengthening Plaintiffs' argument that the contracts required Vali to pay Plaintiffs prevailing wages.  Vali, however, argues that § 14 only applies to "workers on sites," but deposition testimony reveals that flaggers

worked hundreds of feet from "the hole" where the construction was taking place. Doc. 306 at 2. But that argument relies on evidence not properly before the Court on a motion to dismiss and asks the Court to decide a question of fact (namely, what constitutes being "on site"); it not therefore a proper basis for dismissal. *See ASARCO LLC*, 756 F.3d at 198; *Halebian*, 644 F.3d at 130.

Moreover, unlike the contracts with Workforce7, the post-2013 Con Ed Contracts with Vali specifically cross-reference § 14, which contains the labor provisions, in § 44, which governs third-party beneficiaries. *See* Docs. 290-3–290-17 § 14; Docs. 290-8– 290-17, § 44. And the pre-2013 versions do not specify a closed list of possible third-party beneficiaries, meaning that the provisions of § 14 may plausibly render Plaintiffs third-party beneficiaries to the contract. *See* Docs. 290-3–290-17 § 14; Docs. 290-3–290-7, § 44. Vali does not address Plaintiffs' status as third-party beneficiaries. *See* Doc. 306 at 1–2.[10] Accordingly, Vali's motion to dismiss Count 10, insofar as it relies upon the Con Ed Contracts, is denied.

Plaintiffs do not, however, identify a basis by which the provisions of the Con Ed Contracts with Vali establish liability for *Con Ed* to pay Plaintiffs prevailing wages. *See* Doc. 295 at 12–14. To the contrary, as Con Ed argues (Doc. 289 at 22–24), § 14 expressly provides that Vali, rather than Con Ed, was obligated to pay prevailing wages. Docs. 290-3–290-17 § 14. Count 10 is therefore dismissed as against Con Ed.

### 2. *Vali and the Workforce7 Defendants' Motions to Dismiss Count 11 are Denied, but Count 11 is Dismissed as Against Con Ed*

#### a. *Count 11 is Dismissed as Against Con Ed*

Con Ed's argument specifically to dismiss Count 11 is that "a property owner who contracts with a general contractor does not become liable to a subcontractor on a quasi-contract theory unless it expressly consents to pay for the subcontractor's performance,"

---

[10] Vali is also not aided by Con Ed's argument that Plaintiffs are not third-party beneficiaries because Con Ed does not address the language of § 44, either as written in the earlier contracts or the post-2013 contracts (*see* Doc. 289 at 25–26), and its conclusory assertion is therefore unavailing.

and that Con Ed never "assumed Vali's obligations to directly pay its subcontractors (including Workforce7) for their work."  Doc. 289 at 28, n.9 (citing *Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club*, 549 N.Y.S.2d 57, 59 (N.Y. App. Div. 2d Dep't 1989); *Merrill Iron & Steel v. Yonkers Contracting Co.*, No. 05-cv-50422, 2006 WL 2679940, at *6 (S.D.N.Y. Sept. 19, 2006)).[11]

Plaintiffs respond that Con Ed's contracting relationships with Workforce7 and Vali are "of no moment" because Count 11 against Con Ed "do[es] not arise from those contracts or those relationships, nor [is it] barred by them."  Doc. 295 at 32.  Moreover, they argue that workers like them regularly recover prevailing wages "from those who have agreed to pay them and benefited from such agreements, including general contractors."  *Id.* at 33 (citing *Solouk v. European Copper Specialties, Inc.*, No. 14cv8954 (DF), 2019 U.S. Dist. LEXIS 81267, at *30 (S.D.N.Y. May 2, 2019)).  Plaintiffs also argue that Defendants' cited authority applies only to owners and general or subcontractors, not to employees like them.  *Id.*

On reply, Con Ed argues that Plaintiffs' distinction between workers and contractors is "meaningless," and their cited caselaw still applies since Plaintiffs admit that it was Workforce7 that hired and paid them, not Con Ed.  Doc. 297 at 16.

*Perma Pave* holds that a subcontractor may not recover against the owner, as opposed to the general contractor, in quasi-contract for work performed on the owner's

---

[11] On reply, Defendants further argue that quasi-contract claims may not be used to obtain equitable relief for regulatory violations that exceeds what the regulations themselves provide for, and § 19-142 vests enforcement authority exclusively with the New York City comptroller, not private litigants like Plaintiffs. Doc. 297 at 13–14.  Defendants also argue that Plaintiffs may not pursue equitable remedies where adequate legal remedies exist (e.g., filing a complaint with the comptroller or filing a claim on Vali's payment bonds), nor where Plaintiffs allege that an enforceable contract exists.  *Id.* at 15–16.

However, arguments raised for the first time in reply are not properly before the Court.  *MFW Assocs., LLC v. Plausteiner*, No. 15-cv-2513 (PAE), 2016 U.S. Dist. LEXIS 56151, at *2 (S.D.N.Y. Apr. 27, 2016) ("[N]ew arguments may not be made in a reply brief." (quoting *DSND Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008))); *see also Minnie Rose, LLC v. Anna Yu*, No. 15-cv-1923 (ER), 2023 U.S. Dist. LEXIS 200784, at *29–31 (S.D.N.Y. Nov. 8, 2023); *Disability Rights N.Y. v. City of N.Y.*, No. 22-cv-04493 (ER), 2023 U.S. Dist. LEXIS 175917, at *27 n.9 (S.D.N.Y. Sep. 28, 2023). Accordingly, the Court will not consider these arguments.

property unless the owner directly promised the subcontractor that it would pay for the work.  549 N.Y.S.2d at 59.  Similarly, *Merrill* holds that a second-tier subcontractor could recover in quasi-contract only against the first-tier subcontractor with whom it bargained, not the general contractor unless the general contractor directly promised to pay the second-tier subcontractor.  2006 WL 2679940, at *5.  The *Merrill* court reasoned that the second-tier subcontractor plaintiff "should not be allowed to perform an end-run around the bargained-for contractual structure by seeking relief directly from [the general contractor], with whom he has not bargained."  *Id.* (citation omitted) (alteration in original).  Moreover, a general contractor's "participation in and approval of the manner of the subcontractor's work and acceptance of the benefits thereof, without more, is not enough to give rise to an obligation to pay the subcontractor directly."  *Id.* at *6 (citations omitted).  Thus, Con Ed's cited authority suggests that quasi-contract claims should adhere to the "bargained-for contractual structure" unless a defendant bypassed that structure and directly obligated itself to pay the plaintiff.

Plaintiffs rely on *Solouk*, which holds that even a subcontractor's employees, not merely a general contractor's employees, are third-party beneficiaries of a prime contract (between the owner and general contractor) and may therefore sue for prevailing wages under a breach-of-contract theory if the contract expressly incorporates NYLL § 220. 2019 U.S. Dist. LEXIS 81267, at *26–28.  But Count 11 is not a breach of contract claim; it is a quasi-contract claim.  Doc. 279 ¶¶ 246–52.  Third-party beneficiary theories are therefore inapposite to the instant claim.  And Plaintiffs cite no authority for their argument that Con Ed's authority is inapplicable to workers.  Doc. 295 at 33.  Nor has the Court found any such authority.

Accordingly, Plaintiffs may only sue Con Ed for prevailing wages under a quasi-contract theory if Con Ed obligated itself to directly pay Plaintiffs.  *Cf. Merrill*, 2006 WL 2679940, at *5–6.  Plaintiffs' allegation that Con Ed supervised, directed, and controlled their work while on site is not enough (Doc. 279 ¶¶ 87, 93–113), as they have

acknowledged that only the *Workforce7 Defendants* set the payroll policies and paid Plaintiffs (*id.* ¶¶ 20, 25, 28).  Accordingly, Count 11 is dismissed as against Con Ed.

        *b.   Vali and the Workforce7 Defendants' Motions to Dismiss Count 11 are Denied*

Vali and the Workforce7 Defendants move to dismiss Count 11 on the basis that they never received rates above the prevailing wage and therefore could not have been unjustly enriched.  Doc. 305 at 4.[12]  Beyond a conclusory sentence stating that they were paid below prevailing wage rates, however, they offer no evidence for their assertion.  *Id.*  Moreover, even if they did, such evidence would not be properly before the Court, as the Court must take Plaintiffs' assertions as true on a motion to dismiss and not engage in any fact-finding.  *See Halebian*, 644 F.3d at 130.  Because their only arguments in support of their motion to dismiss are based on questions of fact, the motions are therefore denied.

### C.  Defendants' Request for an Extension of Time to Respond to the Remaining Claims in the SAC is Granted

Defendants also request leave for an extension of time to answer or otherwise respond to the remaining claims in the SAC.  Doc. 289 at 29–30.  Plaintiffs do not oppose or otherwise address the request.

The Court therefore grants the request.  Pursuant to Rule 12(a)(4)(A), Defendants' responsive pleading must be served within fourteen days of the instant Opinion.  *See also Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 165 n.1 (S.D.N.Y. 2019) ("[A] timely motion to dismiss some claims extends the time to answer all claims[.]" (citing *Lombardo v. Dr. Seuss Enters., L.P.*, No. 16-cv-9974, 2017 WL 1378413, at *3 (S.D.N.Y. Apr. 7, 2017))).

### IV.   CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED in part and DENIED in part.  Count 10 is dismissed *except* insofar as it is against Vali based on the

---

[12] Vali adopted the Workforce7 Defendants' arguments to dismiss Count 11.  Doc. 306 at 2–3.

Con Ed Contracts with Vali; and Count 11 is dismissed as against Con Ed (but may proceed as against Vali and the Workforce7 Defendants).

Defendants are directed to answer or otherwise respond to the SAC by February 9. 2024.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 288.

It is SO ORDERED.

Dated:    January 26, 2024
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.