UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR BALLAST, LUIS
SIMONE, RICHARD WALKER *and*
ORLANDO OBRET, *Individually and
On Behalf of All Others Similarly
Situated*

Plaintiffs,

– *against* –

WORKFORCE7 INC.,
CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC., VALI
INDUSTRIES, INC., *and* RONALD
HILTON, *Jointly and Severally*

Defendants.

**OPINION & ORDER**

20-cv-3812 (ER)

RAMOS, D.J.:

Victor Ballast, Luis Simone, Richard Walker, and Orlando Obret (collectively, "Plaintiffs") bring this collective and class action on behalf of all similarly situated construction site flaggers[1] against Workforce7 Inc. ("Workforce7"), Consolidated Edison Company of New York, Inc. ("Con Ed"), Vali Industries, Inc. ("Vali"), and individual defendant Ronald Hilton (collectively, "Defendants").  Plaintiffs allege Defendants failed to pay minimum wage and overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206–07, and various provisions of New York Labor Law ("NYLL").  Doc. 279 (Second Amended Complaint, "SAC").

On January 25, 2024, the Court granted in part and denied in part Defendants' motion to dismiss Counts 10 and 11 of the SAC.  Doc. 309 ("the Opinion").  Before the Court is Plaintiffs' motion for reconsideration of portions of the Opinion.  For the reasons set forth below, the motion is denied.

---

[1] The Court refers to Ballast, Simone, Walker, Obret, and the putative collective and class, collectively, as "Plaintiffs."

## I.     BACKGROUND

The Court assumes the parties' familiarities with the facts and summarizes the relevant background only to the extent relevant to the instant motion.

### A.  Factual Background

Ballast, Simone, Walker, and Obret worked as construction flaggers[2] or supervisors for Defendants from approximately August 2017 through April 2021.  SAC ¶¶ 114, 129, 141, 151.  Workforce7 is a New York corporation with offices in the Bronx and Yonkers that employs construction flaggers and that contracts with companies requiring flaggers.  SAC ¶¶ 18–19, 55–56.  Hilton has served as the chief executive officer of Workforce7 since 2012 and at all relevant times was responsible for approving employees' paychecks and for day-to-day operations including setting office policies, hiring, discipline, and managing the business.[3]  *Id.* ¶¶ 57–60.  At all relevant times, Workforce7 contracted with Con Ed, a public utilities provider, and with Vali, a construction contracting business that has performed excavation work on Con Ed job sites, to provide flaggers for work sites on streets, roads, and sidewalks throughout New York City and elsewhere in the state.  *Id.* ¶¶ 61–62, 67.  Plaintiffs allege that Workforce7, Con Ed, and Vali are their joint employers and that Hilton set the relevant payroll policies.  *Id.* ¶¶ 20, 25, 28.  Plaintiffs further allege that, throughout their employment, Defendants subjected them to various unlawful practices that deprived them of wages and of required overtime pay.

Plaintiffs contend that Con Ed and Vali supervised, directed, and controlled their work while on site.  *Id.* ¶¶ 87, 93–113.  Con Ed or Vali supervisors or foremen instructed them on where to stand and where to put up signage; disciplined them; controlled whether and when they could take meal or bathroom breaks; signed their timesheets; and

---

[2] As construction flaggers, Plaintiffs were responsible for safety at and near construction sites, including directing pedestrian and vehicle traffic around the sites; setting up signs, cones, and barriers; ensuring that pedestrians were not near construction vehicles; closing street intersections; etc.  SAC ¶¶ 79, 177.

[3] The Court refers to Workforce 7 and Hilton together as "the Workforce7 Defendants."

frequently required them to travel to other Con Ed or Vali work sites, for which travel they were not compensated.  *Id.* ¶¶ 88–93, 98–113, 118, 124, 137–38, 144–45.

### B.  Procedural Background

Ballast and Simone filed suit on May 15, 2020.  Doc. 1.  The Court granted conditional certification on Dec. 20, 2021.  Doc. 124.  Plaintiffs filed the SAC on May 15, 2023.  Doc. 279.

On July 19, 2023, Con Ed moved to dismiss Counts 10 and 11 ("the Counts"), contract and quasi-contract claims, respectively, that allege Defendants failed to pay Plaintiffs prevailing wages, and extend its time to answer the remaining claims.  Doc. 288.  On January 25, 2024, the Court issued the Opinion, which, as relevant here and discussed further below, dismissed both of the Counts as to Con Ed.  Doc. 309. Defendants answered the SAC on February 9, 2024.  Docs. 313 (Con Ed), 314 (Workforce7 Defendants), 315 (Vali).

Plaintiffs filed the instant motion on February 16, 2024.  Doc. 316.  Therein, first, Plaintiffs request clarification as to whether the Opinion dismissed the Counts with or without prejudice, and they also assert that the Court failed to "specify which element(s) of a breach of contract cause of action Plaintiffs failed to sufficiently allege in the SAC." Doc. 317 at 11–13.  Second, Plaintiffs move for reconsideration of the Court's dismissal of the Counts as to Con Ed.  Doc. 317 at 13–19.  In the alternative, if the Court does not reinstate the Counts, Plaintiffs ask that the Court certify the Opinion for interlocutory review.  *Id.* at 19–27.

## II.   LEGAL STANDARD

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"  *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  "A

motion for reconsideration should be granted only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,* 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

A motion for reconsideration is not a substitute for appeal, *Boart Longyear Ltd. v. Alliance Indus., Inc.*, 869 F. Supp. 2d 407, 418 (S.D.N.Y. 2012), nor is it a vehicle for a party dissatisfied with the Court's ruling to voice its disagreement with the decision, *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 512–13 (S.D.N.Y. 2009). "Courts have repeatedly been forced to warn litigants that such motions should not be made reflexively to reargue those issues already considered when a party does not like the way the original motion was resolved." *Boart Longyear Ltd.*, 869 F. Supp. 2d at 418 (internal quotation marks omitted) (quoting *Makas v. Orlando*, No. 06-cv-14305 (DAB), 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008)); *see also, e.g., Anwar v. Fairfield Greenwich Ltd.*, 884 F. Supp. 2d 92, 96 (S.D.N.Y. 2012) ("The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided." (citation omitted)); *Assoc. Press v. U.S. Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (motion for reconsideration is not "an occasion for repeating old arguments previously rejected").

Whether to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10-cv-3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. Jul. 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

### III.    DISCUSSION

### A.  On Reconsideration, the Court Declines to Reverse its Dismissal of Count 10 as to Con Ed

Count 10 alleged that that Defendants entered into contracts containing schedules of the prevailing rates of wages and supplemental benefits or containing reference to NYLL prevailing wage provisions, such that prevailing wages were effectively made part of the contracts—but Defendants failed to pay prevailing wages.  Doc. 279 ¶¶ 242–44. Specifically, Plaintiffs pointed to certain contracts for flagging work between the Workforce7 Defendants and Con Ed, either directly or indirectly (*i.e*, as a contractor to Vali on a Con Ed project), for which Plaintiffs alleged they were intended third-party beneficiaries ("the Con Ed Contracts").  *Id.* ¶¶ 67–74.  Plaintiffs also alleged that projects involving street opening, or excavating, in New York City required that Con Ed and/or Vali obtain Street Opening Permits from the New York City Department of Transportation ("the DOT Permits"), which include a stipulation requiring that Plaintiffs be paid prevailing wages pursuant to New York City Administrative Code § 19-142.[4]  *Id.* ¶ 75.  Furthermore, in their opposition to the motion to dismiss, Plaintiffs argued that § 19-142 "provides for two separate agreements to pay prevailing wages to workers on excavations:  (1) the 'agreement [that] shall have been entered into' before the [DOT] Permit is acquired and (2) the [DOT] Permit itself."  Doc. 295 at 12.  Accordingly,

---

[4] Section 19-142 provides:

> A person to whom a permit may be issued, to use or open a street, shall be required, before such permit may be issued, to agree that none but competent workers, skilled in the work required of them, shall be employed thereon, *and that the prevailing scale of union wages shall be the prevailing wage* for similar titles as established by the fiscal officer pursuant to section two hundred twenty of the labor law, paid to those so employed.  *No permit shall be issued until such agreement shall have been entered into with the department, and all such permits hereafter issued shall include therein a copy of this provision.*  When permits are issued to utility companies or their contractors, the power to enforce this provision shall be vested with the comptroller of the city of New York consistent with the provisions of section two hundred twenty of the labor law.

(emphasis added).

Plaintiffs argued that, in addition to the Con Ed Contracts, the agreement that "shall have been entered into" before the issuance of the DOT Permit and the DOT Permit itself are also independent agreements upon which Con Ed may be liable for breach of contract. *Id.* at 12, 23–30.

The Opinion dismissed Count 10 as to Con Ed because:

(1) the Con Ed Contracts did not require Con Ed to pay Plaintiffs prevailing wages;

(2) Plaintiffs failed to plead the existence of any agreement that "shall have been entered into" before the issuance of the DOT Permits in the SAC, and they could not amend their pleadings by opposition to a motion to dismiss;[5] and

(3) the DOT Permits are not contracts.[6]

Doc. 309 at 13–19. Plaintiffs seek reconsideration of the third of these bases—that the DOT Permits are not legally cognizable as contracts. Doc. 317 at 17.

On that issue, in the Opinion, the Court held that several of Plaintiffs' and Defendants' cited authority was inapposite: the cases did not address whether flaggers like Plaintiffs could bring a prevailing wage claim based on a breach of contract theory predicated on the theory that DOT Permits are contracts, which plaintiffs may enforce as

---

[5] Plaintiffs have also sought clarification as to whether this portion of Count 10 was dismissed with or without prejudice, as they interpreted the Court's holding "as an indication that an amendment to cure the deficiencies in plaintiffs' pleading may be possible." Doc. 317 at 12. Con Ed "does not oppose" the request for clarification but "believes it is readily apparent that the Court dismissed [the Counts] *with prejudice*." Doc. 319 at 13 (emphasis in original).

The Court dismissed the first and third bases for liability—the Con Ed Contracts and the DOT Permits—with prejudice because the deficiencies as to either could not be cured with better pleading or specific allegations. *See Holmes v. Apple Inc.*, No. 17-cv-4557 (ER), 2018 U.S. Dist. LEXIS 122792, at *37 (S.D.N.Y. July 23, 2018) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). But it is plausible that, with additional allegations, Plaintiffs could state a claim as to agreements entered into with the DOT before the issuance of the DOT Permits. *See id.* Accordingly, that portion of the Opinion was dismissed without prejudice, and Plaintiffs are granted leave to amend Count 10 solely as to that basis for liability. *See Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013); *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015).

[6] Plaintiffs have also sought clarification as to "which element(s) of a breach of contract cause of action Plaintiffs failed to sufficiently allege in the SAC." Doc. 317 at 13 (listing the four elements of a breach of a contract claim as the existence of an agreement, plaintiff's adequate performance thereof, defendant's breach, and damages). The Court's holding that DOT Permits may not constitute contracts goes to the first, threshold element of a breach of contract claim—the existence of a legally cognizable agreement.

third-party beneficiaries.  Doc. 309 at 14–15.  But the Court found persuasive two of Defendants' cases:  *Santana v. San Mateo Constr. Corp.*, No. 650029/2022, 2023 WL 4106949, at *2 (N.Y. Sup. Ct. June 21, 2023), and *Ross v. No Parking Today, Inc.*, 192 N.Y.S.3d 872 (N.Y. Sup. Ct. 2023).  *Santana* dismissed a nearly identical claim[7] expressly because "permits are not contracts and thus there can be no viable breach of contract claims" arising therefrom.  2023 WL 4106949, at *2.  And *Ross* too dismissed a prevailing wage claim brought by a class of flaggers against Con Ed and its vendor because "the [DOT P]ermit does not constitute a contract that plaintiffs may enforce using a third party beneficiary theory."  192 N.Y.S.3d at 875.  The Court rejected Plaintiffs' arguments that *Santana* and *Ross* are inadequately reasoned and wrongly decided.  Doc. 309 at 16.  Rather—given that Plaintiffs had not mustered persuasive authority that DOT Permits are contracts, and in accordance with a federal court's general deference to state courts' construction of state law—the Court followed the reasoning of *Santana* and *Ross* in dismissing Count 10 insofar as it was based on the DOT Permits. *Id.*

     In their motion, Plaintiffs argued that the Court erred in relying upon *Santana* and *Ross*, as they were not appellate decisions.  Doc. 317 at 17.  Moreover, the question of whether DOT Permits constitute contracts was unsettled under New York law, and the Court "appeared to overlook the language of the permits themselves . . . and the legislative history supplied by Plaintiffs."  *Id.* at 17–18.  Accordingly, they ask that the Court either reinstate the claim now or reconsider that portion of the Opinion following the First Department's decision in *Ross* (which was then pending).  *Id.* at 18–19.

     Four days after Plaintiffs filed their motion, on February 20, 2024, the First Department decided *Ross*, and Plaintiffs submitted a copy of the order to the Court.  Doc.

---

[7] As in the instant case, *Santana* involved a claim for prevailing wages brought against Con Ed and one of its flagging service vendors by a flagger employed by that vendor, based on DOT Permits.  2023 WL 4106949, at *2.

318-1. The First Department held that the *Ross* plaintiffs had adequately stated a claim against Con Ed for breach of contract based on agreements between Con Ed and the City made pursuant to § 19-142 before the issuance of the DOT Permits. *Id.* at 2. But, as relevant here, it also held:

> [T]he court properly dismissed the portion of plaintiffs' breach of contract claim based solely on the DOT permit. Contrary to plaintiffs' argument, *the type of permit at issue here is not a contract* giving rise to third-party beneficiary rights (*see Matter of Union Indem. Ins. Co. of N.Y.*, 200 AD2d 99, 108 [1st Dept 1994] ["the essential foundation of any right of action a third-party beneficiary may have is a valid and binding contract"]).

Doc. 318-1 at 3 (emphasis added). Further, the First Department also noted:

> Moreover, early New York decisions also concluded that a *permit is not a contract* (*see e.g. People ex rel. Lodes v Department of Health of City of N.Y.*, 189 NY 187, 191 [1907]; *Metropolitan Bd. of Excise v Barrie*, 34 NY 657 [1866]). A considerably more recent Court of Appeals case, *Brothers v New York State Elec. & Gas Cor.* (11 NY3d 251, 259–260 [2008]), found that the work permit at issue in that case was "not a typical 'bargained-for exchange'" but declined to decide whether the permit was a contract.

*Id.* at 3 n.1 (emphasis added).

On reply, Plaintiffs acknowledge that the First Department's decision in *Ross* is "controlling, on point authority." Doc. 321 at 6. But, in touting that the decision supports their position and requires reconsideration, they refer only to that portion of the decision concerning the *Ross* plaintiffs' ability to sufficiently plead a breach of contract claim based on agreements between Con Ed and New York City. *Id.* at 6–7. Plaintiffs disregard the portion of the decision actually relevant to their motion for reconsideration—the First Department's explicit repudiation of any argument that DOT Permits are contracts. *Id.*

The Court agrees that *Ross* is controlling, on point authority, and it will follow the First Decision's decision—which reiterates that Plaintiffs may not state a breach of contract claim against Con Ed predicated on the DOT Permits. *See* Doc. 318-1 at 3, 3

n.1.  Insofar as Plaintiffs argued that the Court gave too much weight to the trial courts'

decisions in *Ross* and *Santana*, that concern is resolved by the First Department's

decision.  And insofar as Plaintiffs seek to relitigate their arguments, rearguing issues

already briefed and voicing disagreement with the Court's ruling are not bases for

reconsideration.  *See Boart Longyear Ltd.*, 869 F. Supp. 2d at 418; *Anwar*, 884 F. Supp.

2d at 96; *R.F.M.A.S.*, 640 F. Supp. 2d at 512–13; *Assoc. Press*, 395 F. Supp. 2d at 19.

Accordingly, the Court declines to reconsider its prior decision to dismiss Count 10.

### B.  On Reconsideration, the Court Declines to Reverse its Dismissal of Count 11 as to Con Ed

Count 11 sought to recover, in the alternative in quasi-contract on the basis that

Defendants were unjustly enriched by failing to pay Plaintiffs prevailing wages.  Doc.

279 ¶¶ 246–52.  Con Ed moved to dismiss the claim on the basis that "a property owner

who contracts with a general contractor does not become liable to a subcontractor on a

quasi-contract theory unless it expressly consents to pay for the subcontractor's

performance," and Con Ed never "assumed Vali's obligations to directly pay its

subcontractors (including Workforce7) for their work."  Doc. 289 at 28, n.9 (citing *Perma

Pave Contracting Corp. v. Paerdegat Boat & Racquet Club*, 549 N.Y.S.2d 57, 59 (N.Y.

App. Div. 2d Dep't 1989); *Merrill Iron & Steel v. Yonkers Contracting Co.*, No. 05-cv-

50422, 2006 WL 2679940, at *6 (S.D.N.Y. Sept. 19, 2006)).  The Court held:

> *Perma Pave* holds that a subcontractor may not recover against the owner, as opposed to the general contractor, in quasi-contract for work performed on the owner's property unless the owner directly promised the subcontractor that it would pay for the work.  549 N.Y.S.2d at 59.  Similarly, *Merrill* holds that a second-tier subcontractor could recover in quasi-contract only against the first-tier sub-contractor with whom it bargained, not the general contractor unless the general contractor directly promised to pay the second-tier sub-contractor.  2006 WL 2679940, at *5.  The *Merrill* court reasoned that the second-tier subcontractor plaintiff "should not be allowed to perform an end-run around the bargained-for contractual structure by seeking relief directly from [the general contractor], with whom he has not bargained."  *Id.* (citation omitted) (alteration in original).  Moreover, a general contractor's "participation in and approval of

the manner of the subcontractor's work and acceptance of the benefits thereof, without more, is not enough to give rise to an obligation to pay the subcontractor directly." *Id.* at *6 (citations omitted). Thus, Con Ed's cited authority suggests that quasi-contract claims should adhere to the "bargained-for contractual structure" unless a defendant bypassed that structure and directly obligated itself to pay the plaintiff. . . . Plaintiffs may only sue Con Ed for prevailing wages under a quasi-contract theory if Con Ed obligated itself to directly pay Plaintiffs. *Cf. Merrill*, 2006 WL 2679940, at *5–6. Plaintiffs' allegation that Con Ed supervised, directed, and controlled their work while on site is not enough (Doc. 279 ¶¶ 87, 93–113), as they have acknowledged that only the *Workforce7 Defendants* set the payroll policies and paid Plaintiffs (*id.* ¶¶ 20, 25, 28). Accordingly, Count 11 is dismissed as against Con Ed.

Doc. 309 at 20–21.

In support of their motion for reconsideration, Plaintiffs argue that "the Court appears to have overlooked Plaintiffs' extensive allegations that Con Ed[] is their joint employer (SAC ¶¶ 85–113), which, by law, would make Con Ed[] responsible for the amount that Plaintiffs are paid, whether they explicitly agreed to pay Plaintiffs or not." Doc. 317 at 14–15 (citing *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 75 (2d Cir. 2003)). Plaintiffs further argue that, "in determining that Con Ed[] did not obligate itself to pay Plaintiffs prevailing wages, the Court seemingly departed from its prior ruling which held that Plaintiffs had sufficiently alleged that the Defendants were jointly responsible for payment of the Plaintiffs' wages." *Id.* at 15 (citing the Court's decision granting Plaintiffs' motion for FLSA collective certification).

Both *Zheng* and the Court's collective certification decision, however, concern only Defendants' status as joint employers within the meaning of the *FLSA* and do not address whether Con Ed obligated itself to directly pay Plaintiffs for *quasi-contract* purposes. Con Ed noted as much in its opposition papers. Doc. 319 at 17 (collecting cases in which courts declined to import joint employer liability principles into non-FLSA claims). Consequently, on reply, Plaintiffs state that "New York federal courts have both dismissed quasi-contract cases against entities alleged to be joint employers

and permitted them to proceed."  Doc. 321 at 12 (comparing *McCardle-Bracelin v. Cong. Hotel, LLC*, No. 20-cv-861, 2022 U.S. Dist. LEXIS 29081, at *26–27 (N.D.N.Y. Feb. 17, 2022) as an instance in which a plaintiff pled an unjust enrichment claim based on allegations that the defendants were joint employers who played a role in creating the policies at issue, with *Hugee v. SJC Grp., Inc.*, No. 13-cv-423, 2013 U.S. Dist. LEXIS 116471, at *33–34 (S.D.N.Y. Aug. 13, 2013) as an instance in which an unjust enrichment claim was dismissed where the plaintiff did not "sufficiently allege that the alleged joint employer requested, approved, supervised, agreed to pay for, or assumed any other obligations with respect to his employment").

First, to be clear, Plaintiffs allege in the SAC that Con Ed supervised, directed, and controlled their work while on site (SAC ¶¶ 87, 93–113); but only the Workforce7 Defendants are alleged to have been responsible for approving paychecks, setting payroll and other office policies, and for day-to-day operations including hiring and discipline (*id.* ¶¶ 57–60).  *Perma Pave* and *Merrill* illustrate that the relevant consideration for quasi-contract claims is whether Con Ed obligated itself to pay Plaintiffs directly, *not* whether Con Ed was involved in supervising Plaintiffs at the work sites or derived benefit from their labor.  549 N.Y.S.2d at 59; 2006 WL 2679940, at *5.  That is a fundamentally different inquiry than FLSA joint employer liability, which looks to whether defendants "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984).

Furthermore, the *only* authority Plaintiffs submit in which a court permitted an unjust enrichment claim to proceed based on joint employer liability principles is *McCardle-Bracelin*, 2022 U.S. Dist. LEXIS 29081, at *26–27.  But that case considered whether hotel franchisor companies were joint employers with a hotel franchisee, where the franchisor established the employment policies for the franchisee (and therefore its

employees), and the plaintiffs alleged that the franchisor defendants engaged in unlawful tip retention with the franchisees. *Id.* at *17–18, 22. The Court held that, given the level of control that the franchisors had over the franchisees, it was plausible that the franchisors had the sort of relationship with the plaintiff that would cause her to reply on promises about pay from the franchisors. *Id.* at *25–26. That is not the case here, where Plaintiffs have alleged that Con Ed's involvement was limited to supervision at work sites and did not extend to approval of paychecks or setting payroll and employment policies. *See* SAC ¶¶ 57–60, 87, 93–113.

Accordingly, the Court declines to conflate the relevant inquiries under the FLSA for joint employer liability and quasi-contract theories of liability with tiered contractor structures. Plaintiffs' motion for reconsideration is denied.

### C. The Court Will Not Certify the Opinion for an Interlocutory Appeal

Plaintiffs requested that, if the Court denied the motion for reconsideration (as it has), then the Court certify the Opinion for interlocutory review. Doc. 317 at 19–27. Plaintiffs focused particularly on the significance of the question of whether DOT Permits constitute contracts and the lack of relevant authority on the issue.[8] *Id.*

The First Department's decision in *Ross*, however, "lessens the uncertainty as to the status of Plaintiffs' breach of contract claims," as even Plaintiffs acknowledge on reply. Doc. 321 at 13. Accordingly, the Court declines to certify the Opinion for interlocutory appeal.

---

[8] Plaintiffs also stated that an answer from the Second Circuit as to whether workers on an excavation project could bring a quasi-contract claim against the recipient of a DOT Permit that required payment of prevailing wages pursuant to § 19-142, regardless whether the agreement was "reduced to writing or otherwise documented beyond the Permit materials." Doc. 317 at 20. Plaintiffs' framing of the question muddies the issues before the Court, as Plaintiffs seek to bring a *contract* claim against Con Ed based on agreements it purportedly entered with the DOT as a condition of issuance of the DOT Permits, not a *quasi-contract* claim.

IV.    **CONCLUSION**

For the foregoing reasons, the motion for reconsideration is DENIED.  If Plaintiffs wish to amend the complaint to include additional factual allegations with respect to the existence of any agreement that "shall have been entered into" before the issuance of the DOT Permits (*see supra* n.5), they must do so by April 22, 2024.

The Clerk of Court is respectfully directed to terminate the motion (Doc. 316).

It is SO ORDERED.

Dated:    April 8, 2024
          New York, New York

_____
        EDGARDO RAMOS, U.S.D.J.