UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR BALLAST, LUIS SIMONE, RICHARD WALKER, *and* ORLANDO OBRET, individually and on behalf of all others similarly situated,

                      Plaintiffs,

– *against* –

WORKFORCE7 INC., CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., VALI INDUSTRIES, INC. *and* RONALD HILTON, jointly and severally,

                      Defendants.

**OPINION & ORDER**

20-cv-03812 (ER)

RAMOS, D.J.:

      Victor Ballast, Luis Simone, Richard Walker, and Orlando Obret (collectively "Plaintiffs") bring this wage and hour putative class action against Workforce7 Inc. ("Workforce7"), Consolidated Edison Company of New York ("ConEd"), Vali Industries, and Ronald Hilton. Doc. 325. Before the Court is defendant ConEd's motion to dismiss count ten of Plaintiffs' third amended complaint ("TAC") and request to extend their time to answer Plaintiffs' remaining claims. Doc. 332. Plaintiffs allege that ConEd failed to pay prevailing wages, daily overtime, and supplemental benefits which Plaintiffs were entitled to receive as third-party beneficiaries to contracts between ConEd and New York City. For the reasons set forth below, ConEd's motion is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

      The Court presumes the Parties' familiarity with the relevant facts as set forth in the Court's prior opinion granting dismissal without prejudice. *See Ballast v. Workforce7*

*Inc.,* No. 20-cv-03812 (ER), 2024 WL 307966 (S.D.N.Y. January 25, 2024). The Court recounts here only those facts necessary to resolve the instant motion.

Plaintiffs were employed by Workforce7 and worked as construction site flaggers on public streets, roadways, and sidewalks pursuant to contracts with ConEd, a public utilities provider in New York City and Westchester County, NY. Doc. 325 ¶¶ 1, 2.[1]

Plaintiffs allege that ConEd failed to pay them proper prevailing wage rates, supplemental benefits and overtime premiums which they were entitled to receive. ¶¶ 3, 87. Plaintiffs were paid bi-weekly and received no benefits of any kind. ¶¶ 5, 139. Plaintiffs allege that they were not compensated for time spent waiting to receive job assignments, travel time to job assignments, and time spent picking up and returning timesheets and equipment. ¶¶ 2, 38. ConEd was responsible for overseeing Plaintiffs' employment while at work sites, which included providing basic instructions on where to put up signage and stand as well as instituting necessary disciplinary measures. ¶ 58, 98. ConEd was also responsible for filling out Plaintiffs' timesheets and would either fill it out themselves or instruct flaggers on what times to write down. ¶ 104.

Ballast estimates that his work hours ranged from 40 to 60 hours per week on site which does not include travel time. ¶ 133. Simone estimates that he generally worked between 40 to 52 hours per week, not including travel. ¶ 146. Similarly, Walker estimates that he worked between 40 to 70 hours per week, and Obret between 40 to 50 hours, during at least one week of each pay period. ¶¶ 158, 166. Plaintiffs allege that defendants would cut flaggers' hours during the second week of the pay period to keep the total biweekly amount under 80 hours to avoid paying overtime premiums. ¶ 175.

Ballast and Simone were paid $15.00 per hour for all regular hours and $22.50 for all overtime hours. ¶¶ 137, 149, 150. They did not, however, receive any wages for time spent waiting for job assignments, picking up and returning timesheets or equipment and

---

[1] [1] Unless otherwise noted, citations to "¶ __" refer to the third amended complaint, Doc. 325.

job-related travel. *Id.* Walker was paid $12.00 per hour from June to December 2017, $13.00 from January to July 2018, $14.00 in July 2018, and $16.00 from July 2018 to February 2021. ¶ 160. Obret was paid $11.00 per hour from August 2017 to December 2017, $13.00 from January to July 2018, $14.00 in July 2018 and $15.00 from July 2018 to April 2021. ¶ 168

When performing street work, ConEd is required to obtain street opening permits from the NYC Department of Transportation ("DOT") in order to comply with the Rules of the City of New York, Title 34, Section 2-11(a)(1), which states that no excavations shall be made without a Street Opening Permit. ¶ 69. During the application process, applicants must also agree to comply with N.Y.C. Admin. Code § 19-142 which includes an agreement to pay prevailing wages to all workers by operation of the Street Opening Permit. ¶ 79.

### A. Procedural History

Ballast and Simone filed suit on May 15, 2020 against Workforce7, ConEd, Ronald Hilton, Safeway Construction Enterprises, LLC, M.J. Electric, LLC, and John Doe Corp. #1. Doc. 1. Plaintiffs have amended their complaint twice. Docs. 69, 279. Plaintiffs filed their second amended complaint on May 15, 2023, and on July 19, 2023, the defendants made a motion to dismiss Counts 10 and 11 of the Second Amended Complaint. Docs. 279, 288. On January 25, 2024, the Court granted in part and denied in part. Doc. 309. Plaintiffs subsequently filed a motion for clarification, partial reconsideration and alternatively, certification of the January 25 Order for an interlocutory appeal on February 16, 2024.[2] On April 8, 2024, the Court issued an opinion and order denying Plaintiffs' motion. Docs. 316, 323. The Court specified in its Order that if Plaintiffs wished to amend the SAC to include additional factual allegations

---

[2] Plaintiffs were seeking clarification as to the finality of the dismissal of their breach of contract (count ten) and quasi-contract claims (count eleven) as to certain defendants and which elements of Plaintiffs' causes of action were not satisfied.

with respect to the existence of any agreements that "shall have been entered into" before the issuance of the DOT Permits, they may do so by April 22, 2024.  Doc. 323.  Accordingly, on April 22, 2024, Plaintiffs filed a third amended complaint and ConEd filed the instant motion to dismiss count ten of the TAC on June 21, 2024.  Docs. 325, 331.  Count ten is a claim for breach of contract against ConEd and Vali Industries for breaching the agreements they entered into during the process of applying for street opening permits from the DOT to pay Plaintiffs prevailing wages and supplemental benefits.  Doc. 325 at 56.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litigation*, 502 F. 3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint … does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F. 3d 375, 378 (2d Cir. 1995)).  Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest

regarding its substantive merits" or "weighing the evidence that might be offered to support it." *Halebian v. Berv*, 644 F. 3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F. 3d 58, 62 (2d Cir 2014).

In considering a Rule 12(b)(6) motion, a district court may consider the complaint, exhibits thereto, and any document incorporated by reference or integral to it. *ASARCO LLC v. Goodwin*, 756 E3d 191, 198 (2d Cir. 2014) (quoting *In re Thelen LLP*, 736 F. 3d 213, 219 (2d Cir. 2013)). Courts most commonly recognize documents as incorporated by reference or integral where "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason-usually because the document, read in its entirety, would undermine the legitimacy of the plaintiffs claim-was not attached to the complaint." *Global Network Communications, Inc. v. City of NY.*, 458 F. 3d 150, 157 (2d Cir. 2006). Accordingly, when considering a motion to dismiss breach of contract claims, courts will look "at the contract itself, which by definition is integral to the complaint." *Sobel v. Major Energy Servs., LLC*, No. 19-cv-8290 (GBD), 2020 U.S. Dist. LEXIS 137832, at *13 (S.D.N.Y. July 31, 2020). "If a document integral to the complaint contradicts that complaint, the document controls, and the court need not accept the complaint's allegations as true." *Trustpilot Damages LLC v. Trustpilot, Inc.*, No. 21-cv-432 (JSR), 2021 U.S. Dist. LEXIS 121150, at *9 (S.D.N.Y. June 29, 2021) (citations omitted).

### III. DISCUSSION

#### A. Breach of Contract Claim

*1. The Court Will Not Reconsider Claims Related to the Street Opening Permits Themselves*

Plaintiffs claim that they are not seeking to re-assert their claim that the street opening permits are contracts. Doc. 336 at 10. ConEd, however, raises this issue in their memorandum of law in support of their motion dismiss, stating that Plaintiffs continue to make the same argument that had already been dismissed by the Court. Doc. 332 at 3. The Court made clear in its January 25, 2024 Order that Count 10, which was based on the ConEd Contracts and the DOT Permits, was dismissed with prejudice and could not be resuscitated by repleading. Doc. 323 f.n. 5. The Court instructed Plaintiffs that they were permitted to amend their complaint solely to add any additional factual allegations that support their contention that contractual agreements existed prior to the issuance of the DOT Permits. Doc. 309. Accordingly, the Court will solely address the claims related to these "other agreements" and the *applications* for the DOT Permits.

*2. The Applications for DOT Permits May Plausibly Be Considered Contracts*

Plaintiffs argue that although the permits themselves may not be contracts, the applications required to obtain the permits created a binding agreement between ConEd and the City of New York to pay Plaintiffs prevailing wages, which ConEd failed to do. Doc. 336 at 11. Thus, Plaintiffs believe they are entitled to recovery as third-party beneficiaries of the agreements between ConEd and the city. Docs. 325, 336 at 5, 6, 14. ConEd argues that Plaintiffs have failed to adequately plead a plausible cause of action that meets the federal pleading standards for a breach of contract claim. Specifically, they argue that the applications for the DOT permits do not constitute binding, enforceable contracts. Doc. 332 at 5. The Court finds that Plaintiffs' allegations in the TAC, taken as true, sufficiently establish the plausible existence of a contract that was formed between ConEd and the DOT during the application process for the Street Opening Permits.

To constitute a valid contract, there must be "an offer, acceptance of the offer, agreement, mutual consideration, and the parties' intent to be bound." *Kolchins v. Evolution Markets, Inc.,* 31 N.Y. 3d 100 (2018). When determining whether an agreement was formed, the Court will look "to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Money Tree Capital Funding, LLC v. Money Tree Capital Markets LLC*, No. 22-cv-10084, 2023 WL 7412278, at *7 (S.D.N.Y. Nov. 9, 2023) (citing *Kolchins*, 31 N.Y. 3d at 106).

Here, Plaintiffs argue that before any permit can be obtained from the DOT, ConEd must agree to comply with Admin. Code § 19-142 and all Permit stipulations, which includes the promise to pay prevailing wages. Doc. 325 at 11-12. Additionally, as Plaintiffs correctly state, it is not detrimental to their argument at this stage that these agreements were not manifested through written formal contracts. *Ortiz v. Consolidated Edison Company of New York, Inc.*, No. 22-cv-8957 (JLR) (GS), 2024 WL 308616, at *29 (S.D.N.Y. June 7, 2024) (holding that plaintiffs' claim could proceed even where the complaint did not specifically identify the relevant contract).

To support their argument, Plaintiffs rely on *Ross* from the First Department.[3] In *Ross*, construction site flaggers brought a breach of contract claim "premised on a contract between Con Edison and the City." *Ross v. No Parking Today, Inc.,* 224 A.D. 3d 559, 203 N.Y.S. 3d 608 (1st Dep't 2024). Similar to the instant case, the plaintiffs in *Ross* alleged that defendant ConEd failed to ensure payment of prevailing wages as required by the permits that were issued to ConEd by the DOT. *Id.* at 609. The Appellate Division held that reliance on the permit *applications* sufficiently pled a breach of contract claim. *Id.* The plaintiffs' argument was that ConEd breached the commitments they agreed to be bound by prior to obtaining the permits, as required by Administrative Code of City of

---

[3] This decision was published after the Court's initial Order dismissing Count 10 as based on the permit agreements, but affording the Plaintiffs the opportunity to amend to include factual allegations regarding the permit applications.

7

N.Y. § 19-142.  *Id.*   The court held that the "plaintiffs sufficiently alleged a breach of contract claim based on an agreement between Con Edison and the City," because the complaint gave sufficient notice of the claim and referred to "the promises required to be made pursuant to New York City Administrative Code § 19-142 prior to obtaining [DOT] permits."  *Id.*

Another opinion in a case in this district that had analogous facts was issued after this Court's Order which dealt with a similar breach of contract claim involving the same parties, ConEd and the DOT, based on the agreements made prior to the issuance of the permits.  *Ortiz,* 2024 WL 308616.  *Ortiz* discussed how the First Department in *Ross*, "permitted the plaintiffs to proceed with their claim based on the separate 'agreements required to be made' under Admin. Code § 19-142, despite the fact the complaint did 'not specifically identify the relevant contract.'"  *Ortiz,* 2024 WL 308616, at *29.  (citing *Ross,* 203 N.Y.S. 3d at 609).  The *Ortiz* court found *Ross* controlling on this point and allowed the plaintiffs to proceed with that portion of their claims on the same basis.  *Id.*  This Court agrees with *Ortiz* that *Ross* is controlling in this circumstance and finds that the plaintiffs here may proceed relying on the same theory as in *Ross*.  Thus, the Court concludes that the Plaintiffs here plausibly allege that ConEd entered into agreements with the City during the permit application process, which required ConEd to pay Plaintiffs prevailing wages in order to receive the DOT Permits based on Admin. Code § 19-142.  *Id.*

ConEd attempts to distinguish *Ross* by stating that Plaintiffs' claims may have met the New York Appellate Court's relaxed pleading standards, but that here the federal pleading standards have clearly not been met.  The Court disagrees.  As the court articulated in *Ortiz*, "Admin. Code § 19-142 expressly provides that 'before such permit may be issued,' the permittee 'shall be required … to agree' the prevailing wage will be paid to the laborers employed.  *Ortiz*, 2024 WL 308616, at 30 (citing Admin. Code ¶ 19-142).  The sentence immediately thereafter reiterates: "No permit shall be issued until

such agreement shall have been entered into with the [DOT]." *Id.* Thus, it is clear that these contractual agreements are required to be made prior to the issuance of any permits. *Id.* ("In short, the law appears to *require* the contracts that Plaintiffs allege exist between Con Edison and the City."). Accordingly, the Court finds that Plaintiffs have demonstrated the plausibility of an enforceable contract which ConEd has breached and their claim may proceed.[4]

### B. Con Edison's Request for Leave for An Extension of Time to Answer Plaintiffs' Remaining Claims is GRANTED

ConEd requests leave for an extension of time to answer or otherwise respond to the remaining claims in the Third Amended Complaint. Plaintiffs do not oppose or otherwise address the request. The Court therefore grants the request. ConEd is directed to answer by January 22, 2025. *See Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 165 n.1 (S.D.N.Y. 2019) ("[A] timely motion to dismiss some claims extends the time to answer all claims[.]" (citing *Lombardo v. Dr. Suess Enterprises, L.P.*, No. 16-cv-9974, WL 1378413, at *3 (S.D.N.Y. Apr. 7, 2017))).

### IV. CONCLUSION

For the foregoing reasons, ConEd's motion to dismiss is DENIED. Count 10 may proceed as it is related to the application permits. ConEd is directed to answer the TAC

---

[4] ConEd also challenges Plaintiffs' attempt to assert a "catch-all theory" for prevailing wages and benefits based on an agreement that ConEd "was required to make, and actually did make, or was deemed to make, [with the NYC DOT] in order to receive the Street Opening Permits." Doc. 332. The Court finds that this theory is insufficiently pled as Plaintiffs have not provided any indication as to what these "other agreements" may be.

by January 22, 2025.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 331.

It is SO ORDERED.

Dated:   January 7, 2025
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.