# PELTON GRAHAM LLC

ADVOCATES FOR JUSTICE

June 2, 2026    **MEMO ENDORSED**

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA CM/ECF**

Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square, Room 619
New York, New York 10007

SO ORDERED:

_____

HON. EDGARDO RAMOS
UNITED STATES DISTRICT JUDGE
June 3, 2026

Re:    ***Ballast, et al. v. Workforce7 Inc., et al.***
    **Civil Action No.: 20-cv-03812 (ER)**

Dear Judge Ramos:

This office represents Plaintiffs in the above-referenced action. We write respectfully to request that the Court so-order the annexed Subpoena to Testify at a Deposition in a Civil Action directed to the New York City Department of Transportation ("NYC DOT"), together with its Addendum A.

Plaintiffs seek testimony and documents from NYC DOT concerning the permitting processes, systems, acknowledgments, stipulations, and compliance requirements applicable to Street Opening Permits and related permits issued in connection with Con Edison street excavation work during the relevant period. The subpoena seeks information directly relevant to Count 10 of Plaintiffs' Third Amended Complaint (Dkt. No. 325, hereinafter the "TAC"), which asserts a breach of contract claim against Con Edison under a third-party beneficiary theory premised on NYC Administrative Code § 19-142.

Specifically, Plaintiffs allege that, each time Con Edison applied for a Street Opening Permit during the relevant period, it agreed to comply with NYC Administrative Code § 19-142 and all applicable permit stipulations, including prevailing wage stipulations annexed to the permits, as well as provisions requiring applicants to comply with all laws and rules of NYC DOT and all other applicable laws and rules. (TAC ¶¶ 71-79). Plaintiffs further allege that Con Edison obtained tens or hundreds of thousands of Street Opening Permits in connection with the flagger projects during the relevant period. (*Id*. ¶¶ 68, 73). The requested materials and information are directed to the existence, nature, and operation of those alleged agreements and the permitting process through which they are implemented.

NYC DOT is uniquely positioned to provide this information because it is the agency responsible for issuing the permits at issue and administering the NYCStreets online permitting portal through which Con Edison applies for those permits. The requested discovery concerns

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 220 Montgomery Street, Ste. 2100., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Hon. Edgardo Ramos
Plaintiffs' Letter Motion Requesting So-Ordered Subpoena
Page **2** of **2**

records and information maintained by NYC DOT concerning the permit application workflow, online acknowledgment processes, permit stipulations, Location Permit Bonds, Revocable Consent Agreements, and related permitting materials central to Plaintiffs' claims.

On April 29, 2026, Plaintiffs issued a subpoena to DOT pursuant to Fed. R. Civ. P. 45, which was substantially identical to the annexed subpoena, except that the annexed subpoena contains revised compliance dates. (Dkt. No. 412). By email dated May 20, 2026, counsel for NYC DOT advised Plaintiffs that NYC DOT requires the subpoena to be "So Ordered" before it will process the requested deposition and document production. Plaintiffs respectfully submit this request in an effort to proceed cooperatively and efficiently with the requested non-party discovery. Accordingly, Plaintiffs respectfully request that the Court so-order the attached Subpoena to Testify at a Deposition in a Civil Action and its Addendum A directed to NYC DOT.

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

*/s/ Brent E. Pelton*

Brent E. Pelton, Esq. of
PELTON GRAHAM LLC

Encl.

cc:      All counsel (via CM/ECF)

www.PeltonGraham.com

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | | |
|---|---|---|
| Victor Ballast, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   20-cv-03812 (ER) |
| Workforce7, Inc., et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          NYC DOT Litigation Services
             59 Maiden Lane, 37th Floor, New York, NY 10038
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:     See Addendum A (attached).

| Place:  Pelton Graham LLC | Date and Time: |
|---|---|
| 111 Broadway, Suite 1503 | |
| New York, NY 10006  *or other agreed-upon location | 07/16/2026 10:00 am |

The deposition will be recorded by this method:     Stenographer; may also be video recorded

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
          See Addendum A (attached).

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      06/02/2026

_____                   OR          _____
**Edgardo Ramos, U.S.D.J.    Dated: June 3, 2026**                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*          Plaintiffs
_____ , who issues or requests this subpoena, are:
Brent Pelton, Pelton Graham LLC, 111 Broadway, Suite 1503, New York, NY 10006, pelton@peltongraham.com, 212-385-9700

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Addendum A**

YOU ARE COMMANDED to appear at the time, date, and place set forth in the June 2, 2026, Subpoena to Testify at a Deposition in a Civil Action to testify about the following matters.

For the avoidance of doubt, this subpoena seeks testimony and documents concerning NYC DOT's permitting processes, systems, and requirements imposed on permit applicants, and does not seek records maintained exclusively by the Office of the Comptroller.

NYC DOT shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf regarding the matters set forth herein, and such persons shall testify as to information known or reasonably available to NYC DOT. The persons so designated shall be prepared to testify fully and completely regarding the topics set forth herein, including information known or reasonably available to NYC DOT, whether or not such information is within the personal knowledge of the designee.

Nothing herein requires NYC DOT to create documents or analyses that do not exist, and testimony may be based on information known or reasonably available to NYC DOT.

**Definitions and Instructions**

1. "NYC DOT" means the New York City Department of Transportation, including the Office of Permit Management, any permit office or bureau, any unit or personnel responsible for permit processing or confirmations, and any division, office, or personnel administering the NYCStreets online permitting system. "NYC DOT" shall also include the Office of Franchises, Concessions and Revocable Consents (also known as the Office of Cityscape and Franchises), the Highway Inspection and Quality Assurance (HIQA) unit and all borough HIQA offices, the NYC DOT Legal Department, and the Central Insurance Unit.

2. "Street Opening Permit" means any permit issued pursuant to NYC Administrative Code §19-102 or the Street Works Manual to open or excavate New York City streets, roadways and sidewalks.

3. "Protected Street Permit" means any permit to perform work on a street designated by NYC DOT as a protected street within the meaning of 34 RCNY § 2-11.

4. "NYCStreets" or the "Portal" means the online permitting portal administered by NYC DOT at nycstreets.net, including all screens, modules, forms, acknowledgment pages, confirmation screens, and user registration components.

5. "Con Edison" means Consolidated Edison Company of New York, Inc., and any affiliated entity that applies for Street Opening Permits or Protected Street Permits through NYC DOT.

6. "Confirmations Interface" means the confirmation page, module, or interface located at https://nycstreets.net/Public/Confirmation/Index, or any equivalent screen, module, or interface within the NYCStreets system, through which permit applicants are required to review or acknowledge permit stipulations, compliance obligations, or applicable laws as a condition of obtaining or maintaining permits.

7. "Location Permit Bond" means any bond or surety required by NYC DOT to be maintained by permit applicants as a condition of eligibility for, or issuance of, Street Opening Permits or use of the NYCStreets system, including but not limited to any bond identified in the NYCStreets portal associated with Con Edison. A sample Location Permit Bond is annexed hereto as **Exhibit 1**.

8. "Revocable Consent Agreement" means any revocable consent, franchise, agreement, permit, license, or other authorization issued by or on behalf of the City of New York, including through the NYC Department of Transportation, granting Con Edison the right to install, construct, operate, maintain, repair, remove, or replace structures, equipment, or facilities in, on, above, or under New York City streets or other public places, including but not limited to gas mains, gas pipes, electrical conduits, transformer vaults, or other utility infrastructure. A sample Revocable Consent Agreement is annexed hereto as **Exhibit 2**.

9. "WAGE 01" and "WAGE 02" mean the prevailing wage stipulations of those names annexed to Street Opening Permits issued to Con Edison, and any predecessor, successor, or equivalent stipulations referencing NYC Administrative Code § 19-142 or the obligation to pay prevailing wages to workers employed on permitted work.

10. "Section F" means Section F of the paper "Application for Roadway/Sidewalk Permits" form titled "Acknowledgements and Agreements by Authorized Representative of the Applicant," which requires the applicant to agree to "comply with all laws and rules of the Department and any other applicable laws and rules."

11. "Street Works Manual" means the NYC DOT Street Works Manual, including all versions in effect during the Relevant Time Period, and any provisions incorporated into or referenced by Street Opening Permits.

12. Unless otherwise specified, the relevant time period for all requests is July 1, 2018 through the present.

13. The terms 'including' and 'include' shall be construed to mean 'including but not limited to.'

14. "Permittee Registration Application" means the application, in any form (paper, electronic, or otherwise), submitted by Con Edison to NYC DOT's Office of Permit Management to register as a permittee and obtain a Permittee ID Number, together with all supporting documentation submitted therewith, including any notarized certifications, corporate filings, evidence of tax identification, authorization of designated representatives, and any renewals, updates, or amendments to such application filed during the Relevant Time Period.

15. "Administrative Code § 19-142 Agreement" means the agreement required by NYC Administrative Code § 19-142 to be "entered into with the department" by a person to whom a Street Opening Permit may be issued, before such permit may be issued, in which such person agrees that prevailing wages shall be paid to workers employed on permitted excavation work, as held by the First Department in Ross v. No Parking Today, Inc., 224 A.D.3d 559 (1st Dep't 2024) and Santana v. San Mateo Construction Corp., 234 A.D.3d 562 (1st Dep't 2025) to be the operative contract supporting a breach of contract claim independent of the permit itself.

16. "HIQA" means NYC DOT's Highway Inspection and Quality Assurance unit, the citywide enforcement division that operates 24 hours per day in all five boroughs and is responsible for inspecting permitted work sites for compliance with permit stipulations, Title 19 of the NYC Administrative Code, and all applicable laws, rules, and regulations, and for issuing Corrective Action Requests (CARs), Notices of Immediate Corrective Action (NICAs), and Notices of Violation (NOVs).

17. "Franchise and Revocable Consent Central File" means the central file maintained by NYC DOT pursuant to NYC Charter § 376 containing copies of all franchise and revocable consent agreements, together with the public listing of all current franchises and revocable consents required to be compiled and kept up to date by NYC DOT.

18. "Self-Insurance Certification" means any letter, certificate, or other document submitted by or on behalf of Con Edison to NYC DOT certifying that Con Edison is self-insured for purposes of satisfying the insurance requirements of 34 RCNY § 2-02(a)(3), including but not limited to the February 12, 1999 letter from Con Edison's Insurance Manager to NYC DOT, and any successor or replacement certifications submitted during the Relevant Time Period.

19. "Permittee ID" means the unique five-digit identification number assigned by NYC DOT to Con Edison upon completion of permittee registration, which Con Edison is required to use on all permit applications.

20. Where a request seeks "documents sufficient to show," NYC DOT may satisfy the request by producing representative, exemplar, or template documents, together with any metadata, data dictionaries, or explanatory materials sufficient to show how such documents are used in practice, provided that such representative production fully conveys the responsive information and does not omit material variations in form, content, or applicable requirements.

21. Where responsive information is maintained in electronic systems or databases (including NYCStreets), NYC DOT may produce such information in the form of structured data exports, database extracts, or system-generated reports, in lieu of individual document-by-document production, to the extent such production preserves all fields and content required by the applicable request and is accompanied by a data schema or data dictionary sufficient to interpret the produced dataset. Production of a complete structured dataset shall be deemed to satisfy any request for individual documents to the extent the dataset contains the same information.

22. For categories of records generated in high volume (including individual Street Opening Permits), NYC DOT may produce: (a) a complete structured dataset of such records in electronic form by Permittee ID, as specified in the document production requests below; and (b) a reasonable number of representative sample documents sufficient to show the form, content, and any material variations in such records over time. NYC DOT is not required to produce every individual permit document where production of the complete dataset and representative samples fully satisfies the request. This instruction does not apply to: (i) the Permittee Registration Application file; (ii) Location Permit Bonds; (iii) insurance certificates and Self-Insurance Certifications; (iv) franchise agreements and Revocable Consent Agreements; (v) paper permit applications bearing Section F acknowledgments; (vi) HIQA enforcement records; or (vii) communications between NYC DOT and Con Edison, each of which shall be produced in full.

## DEPOSITION TOPICS

NYC DOT is commanded to produce one or more witnesses knowledgeable about the following topics, and each such witness shall be prepared to testify as to all information known or reasonably available to NYC DOT and to access and demonstrate the NYCStreets Permit Management System in real time during the deposition via screen share or, if live demonstration is not feasible, through screenshots, recordings, or a test environment sufficient to demonstrate functionality:

1. The process by which permit applicants, including Con Edison, register for and obtain access to the NYCStreets portal, including: all steps required to create or maintain a user account; all terms, conditions, user agreements, or acknowledgments required to be accepted during registration or account maintenance; and whether applicants are  required

to agree to comply with all applicable laws, permit stipulations, or prevailing wage requirements as a condition of account registration or access, including whether such acceptance is mandatory to proceed, whether such acceptance is recorded or stored by NYC DOT, and whether NYC DOT maintains or can retrieve records reflecting such acceptance by specific applicants, including Con Edison.

2. A step-by-step walkthrough of the complete online Street Opening Permit application process as it currently exists in the NYCStreets portal, and, to the extent reasonably available, representative versions of the process in effect during the Relevant Time Period, including: the sequence of screens, forms, modules, and acknowledgment pages presented to an applicant; the sequence in which screens are presented; all fields, checkboxes, click-through agreements, or certification language required to be completed or accepted before an application can be submitted; and any screens or portal elements that reference compliance with applicable laws, permit stipulations, the Street Works Manual, prevailing wage requirements, or NYC Administrative Code § 19-142, including representative versions sufficient to show the material features of the NYCStreets portal and application workflow in effect during the Relevant Time Period, the dates of any material changes to such workflow, and whether NYC DOT maintains records sufficient to identify or reconstruct prior versions of the application process.

3. The purpose, function, and operation of the Confirmations Interface (i.e., the confirmation page, module, or interface located at https://nycstreets.net/Public/Confirmation/Index, or any equivalent screen, module, or interface within the NYCStreets system), including: what the Confirmations Interface requires of permit applicants; when and how applicants are required to complete it; what acknowledgments, certifications, or agreements are required; whether completion is a prerequisite to permit issuance; whether it contains any language referencing compliance with applicable laws, prevailing wage requirements, or NYC Administrative Code § 19-142; whether completion is required on a per-permit basis or on a one-time or periodic basis; whether it has changed during the Relevant Time Period; whether the acknowledgments contained therein are incorporated into or made part of permits issued by NYC DOT; and whether NYC DOT maintains records reflecting applicants' completion or acceptance of such acknowledgments, including audit logs, database records, or other electronically stored information reflecting completion or acceptance by Permittee ID (including Con Edison), and whether such records can be produced in bulk by Permittee ID in lieu of individual permit-by-permit files.

4. A step-by-step walkthrough of the complete online Protected Street Permit application process as it currently exists in the NYCStreets portal, and as it existed at any point during the Relevant Time Period, including: any screens, forms, or acknowledgments specific to Protected Street applications; the process by which Confirmation Numbers are generated pursuant to 34 RCNY § 2-11; and any acknowledgment or compliance language specific to Protected Street Permit applications, including whether any additional or different

acknowledgments, certifications, or compliance obligations are required for Protected Street Permits as compared to standard Street Opening Permits.

5.  The requirement that permit applicants maintain a Location Permit Bond as a condition of eligibility for, or issuance of, Street Opening Permits or use of the NYCStreets system, including: what such bond requires of permit applicants; whether and how such bond obligates applicants to comply with applicable laws, rules, and regulations; the process by which Location Permit Bonds are submitted, reviewed, and accepted by NYC DOT; whether such bond constitutes or satisfies any part of the agreement contemplated by NYC Administrative Code § 19-142; whether compliance with applicable laws, including prevailing wage requirements, is a condition of maintaining such bond or obtaining permits; and whether NYC DOT maintains a single bond or series of bonds covering multiple permits or all permits issued to a permittee during a given period, and whether such bond operates as a continuing agreement applicable across all permits issued during its term rather than on a per-permit basis.

6.  Revocable Consent Agreements between the City of New York and Con Edison, including: the general scope and subject matter of such agreements; the categories or types of infrastructure or operations covered by such agreements (including whether they encompass gas utility operations); the standard or typical provisions in such agreements requiring Con Edison to obtain permits, comply with applicable laws, or satisfy conditions imposed by NYC DOT or other agencies; and how such agreements, in general, interact with the Street Opening Permit application process, including whether such agreements impose conditions relating to compliance with applicable laws, including prevailing wage requirements, and whether such conditions are enforced, referenced, or incorporated through the permitting process.

7.  The acknowledgments and agreements required of permit applicants, including Con Edison, as a condition of issuance of a Street Opening Permit, including: whether and how the paper application's Section F requirement (i.e., that the applicant agree to "comply with all laws and rules of the Department and any other applicable laws and rules") is satisfied in the online NYCStreets application process; what, if any, equivalent acknowledgment or agreement is required of applicants using the NYCStreets portal; how NYC DOT satisfies the requirement of NYC Administrative Code § 19-142 that "no permit shall be issued until such agreement shall have been entered into with the department"; and all conditions precedent to the issuance of a Street Opening Permit, including whether applicants are required to agree to comply with applicable laws as a condition of permit issuance.

8.  Material changes or updates to the NYCStreets portal and the Street Opening Permit application process from July 1, 2018 through the present, including: changes to any acknowledgment, confirmation, or agreement screens presented to applicants; changes made following the enactment of the Roadway Quality Assurance Act; changes to the

manner in which prevailing wage requirements or NYC Administrative Code § 19-142 compliance obligations are communicated to or required of permit applicants; and, for material changes, the date of the change, the reason for the change, and any documents or records reflecting the change.

9. NYC DOT's responses to Plaintiffs' FOIL Request No. FOIL-2025-841-00575 (submitted January 31, 2025) and Plaintiffs' Subpoena Duces Tecum (served August 28, 2025), annexed hereto as **Exhibits 3** and **4**, respectively, including: (a) the basis for the documents produced in response to each request; (b) the basis for any documents withheld or not produced; (c) the identity of any databases, systems, or custodians searched in responding to such requests; (d) whether NYC DOT maintains records of acknowledgments, agreements, or click-through certifications completed by individual permit applicants (including Con Edison) during the online application process; (e) whether any responsive information exists within NYCStreets or related systems that was not produced; and (f) whether NYC DOT directed Plaintiffs to the NYC Comptroller's Office for prevailing wage records, including the basis for that referral.

10. The identity of the departments, divisions, and individuals within NYC DOT with knowledge of, or responsibility for, (a) the NYCStreets portal, (b) the Street Opening Permit application process, and (c) the maintenance, storage, and retrieval of data relating to permit applications, acknowledgments, and certifications, including the location, custodians, and systems in which any such data is maintained, and whether such data is accessible, searchable, or retrievable for the Relevant Time Period.

11. NYC DOT's authority, if any, to enforce compliance with permit conditions, including compliance with applicable laws referenced in permit applications, the Street Works Manual, or permit stipulations, including but not limited to prevailing wage requirements, and the extent to which such enforcement is performed by NYC DOT or referred to other agencies.

12. The origin, purpose, and inclusion of WAGE 01 and WAGE 02 stipulations in Street Opening Permits issued to Con Edison, including: how such stipulations are incorporated into permits; whether permit applicants are required to agree to such stipulations as a condition of permit issuance; whether such stipulations reference or implement NYC Administrative Code § 19-142; and whether compliance with such stipulations is required as a condition of obtaining or maintaining permits.

13. The role of the Street Works Manual in the permit application and issuance process, including whether compliance with the Street Works Manual is required as a condition of

permit issuance and whether the Manual incorporates or references prevailing wage requirements or NYC Administrative Code § 19-142.

14. The categories of data maintained by NYC DOT within the NYCStreets system relating to permit applications, approvals, acknowledgments, certifications, and compliance confirmations, including whether such data is retained, searchable, and retrievable for the Relevant Time Period, and whether such data includes records reflecting applicant acknowledgments, certifications, or agreements.

15. The Administrative Code § 19-142 Agreement: how NYC DOT operationalizes the requirement of NYC Administrative Code § 19-142 that "no permit shall be issued until such agreement shall have been entered into with the department," including: what document or process constitutes or evidences that agreement; whether such agreement is a single executed instrument, a class of documents, or arises by operation of the permittee registration process, the Location Permit Bond, the permit application, or some other mechanism; where records of such agreement are maintained; whether NYC DOT can identify and produce the specific agreement entered into by Con Edison; and how NYC DOT would describe or characterize the agreement to a court; whether such agreement is embodied in a limited set of standardized documents or system-wide requirements applicable across all permits issued to a permittee (i.e., a master or continuing agreement) rather than a separate agreement for each individual permit; and whether NYC DOT has ever identified or described such agreement in litigation, enforcement proceedings, policy guidance, or internal communications.

16. The Permittee Registration Application as agreement: whether and how Con Edison's Permittee Registration Application constitutes, satisfies, or evidences the Administrative Code § 19-142 Agreement, including: the specific compliance obligations Con Edison accepted in its registration; whether the registration form requires the applicant to agree to comply with all applicable laws including NYC Administrative Code § 19-142; whether the registration is executed under oath or notarized; what records NYC DOT maintains of Con Edison's registration submissions and any compliance certifications made therein; and whether Con Edison's registration has been renewed, updated, or amended during the Relevant Time Period; and whether the Permittee Registration Application operates as a master or continuing agreement governing all permits issued to Con Edison during the period of its validity, rather than requiring a separate agreement for each individual permit.

17. The Location Permit Bond as an independent agreement: the specific language of the Location Permit Bond(s) filed by Con Edison with NYC DOT, including the condition that Con Edison "comply with and conform to the conditions of all permits, including all applicable laws, rules, and regulations"; whether and how such bond constitutes an

independently executed written agreement separate from any individual permit; whether the bond is notarized and executed under seal; the term, coverage period, and renewal history of Con Edison's bond; and how the bond interacts with and may satisfy the Administrative Code § 19-142 Agreement requirement; and whether the bond operates as a continuing or master agreement applicable across all permits issued during its term, such that it constitutes a single, standing compliance commitment rather than a per-permit agreement.

18. The contents of Con Edison's complete permittee file maintained by NYC DOT's Office of Permit Management, including: all Location Permit Bonds on file, all continuation certificates, all commercial general liability insurance certificates (including the notarized broker certifications accompanying each), all Workers' Compensation insurance certificates, all Self-Insurance Certifications including the February 12, 1999 letter from Con Edison's Insurance Manager, any indemnification agreements, any compliance holds or deficiency notices, and Con Edison's assigned Permittee ID Number.

19. The Franchise and Revocable Consent Central File for Con Edison maintained pursuant to NYC Charter § 376, including: all franchise agreements on file between the City and Con Edison; all Revocable Consent Agreements on file between the City and Con Edison, including master revocable consents, transformer vault licenses, and any individual consent agreements; all petitions for consent filed by Con Edison; and the standard terms and conditions of such agreements with respect to Con Edison's obligation to obtain permits and comply with all conditions of those permits.

20. HIQA enforcement history for Con Edison during the Relevant Time Period, including: all Corrective Action Requests (CARs), Notices of Immediate Corrective Action (NICAs), and Notices of Violation (NOVs) issued to Con Edison; the nature and disposition of each; any Environmental Control Board proceedings arising from permits issued to Con Edison; any compliance holds placed on Con Edison's permittee account; and whether HIQA has ever issued any enforcement action relating to non-compliance with WAGE 01 or WAGE 02 stipulations or prevailing wage requirements on Con Edison permits.

21. Con Edison's complete permit history in the NYCStreets database during the Relevant Time Period, including: the total volume of Street Opening Permits issued to Con Edison; the geographic scope across boroughs; the categories of work performed; whether all or substantially all such permits carried WAGE 01 and WAGE 02 stipulations; the NYCStreets database fields and records maintained for each permit; and the process by which NYC DOT can export or produce a complete dataset of permits issued to Con Edison by Permittee ID for the Relevant Time Period.

22. NYC DOT's institutional understanding of what the Administrative Code § 19-142 Agreement consists of for a high-volume utility permittee such as Con Edison, including: whether NYC DOT treats the registration, bond, or some other instrument as the operative agreement; whether NYC DOT has ever taken the position in litigation or otherwise that a utility company such as Con Edison had or had not entered into the required § 19-142 Agreement; and whether NYC DOT has any records, guidance, or policies describing how the § 19-142 Agreement requirement is operationally satisfied.

## DOCUMENT PRODUCTION

You, or your representatives, are required to produce the following documents, electronically stored information, or objects no later than **July 2, 2026**, and must permit inspection, copying, testing, or sampling of such materials. The witness(es) shall be prepared to testify regarding all documents produced.

Electronically stored information shall be produced in the form in which it is ordinarily maintained or in a reasonably usable form. To the extent responsive information is maintained in electronic systems or databases (including NYCStreets), such information shall be produced in a format that preserves its content, structure, and, where reasonably available, associated metadata sufficient to identify the source, date, and nature of the information. To the extent any responsive information is not reasonably accessible, NYC DOT shall identify the source and the basis for inaccessibility.

To the extent responsive information is maintained in electronic systems or databases (including NYCStreets), production shall include associated or linked materials (such as attachments, underlying records, or related fields) necessary to render the information complete and understandable.

Where a request seeks 'documents sufficient to show,' NYC DOT may produce summary or representative documents so long as they fully convey the responsive information.

1. Documents sufficient to show all versions of the Confirmations Interface and any acknowledgment, certification, or agreement language presented to applicants during the Relevant Time Period.

2. Documents sufficient to show the NYCStreets application screens, confirmation pages, and acknowledgment language presented to applicants during the Relevant Time Period, including the screens requiring applicants to agree to comply with applicable laws or permit stipulations.

3. Documents sufficient to show the form and content of Street Opening Permits issued to Con Edison, including all stipulations (including WAGE 01 and WAGE 02), through: (a) standard permit templates and all stipulation sets (including the complete text   of WAGE

01 and WAGE 02 as they appear on permits) applicable during the Relevant Time Period; and (b) a reasonable number of representative sample permits sufficient to show any material variations in form, content, or stipulations over time. NYC DOT need not produce every individual permit where such information is otherwise available through the complete NYCStreets dataset produced pursuant to the database export request below and through the templates and representative samples produced pursuant to this request.

4. Documents sufficient to show material changes to acknowledgment or certification language in the NYCStreets portal during the Relevant Time Period.

5. Documents sufficient to show Con Edison's registration(s) and qualification to act as a permittee within the NYCStreets system, including any applications, account records, user agreements, terms and conditions, certifications, insurance or indemnification submissions, or other materials required or accepted in connection with such registration(s).

6. Documents sufficient to show any agreements, authorizations, approvals, or conditions (including franchises, system-wide, master or general approvals), other than Street Opening Permits or Revocable Consent Agreements, pursuant to which Con Edison is permitted to use, occupy, or open New York City streets.

7. Documents sufficient to show the requirements imposed by NYC DOT for permittee registration or qualification, including any required certifications, insurance, or indemnification obligations.

8. The complete Permittee Registration Application file for Con Edison maintained by NYC DOT's Office of Permit Management, including: all versions of Con Edison's Permittee Registration Application submitted at any time; all annual renewals, amendments, and updates; all supporting documentation submitted therewith (including corporate filings, EIN letter, authorized representative designations); the notarized signature page; and all correspondence between NYC DOT and Con Edison concerning the registration or any compliance deficiencies.

9. All Location Permit Bonds filed by Con Edison with NYC DOT during the Relevant Time Period, in all formats (One Location, Two to Fifty Locations, More Than One Hundred Locations, or any other applicable format), including: all executed bond forms bearing the signatures of Con Edison and its surety; all notarized acknowledgments; all continuation certificates; and any correspondence concerning the bond's submission, renewal, cancellation, or deficiency.

10. All commercial general liability (CGL) insurance certificates, policies, endorsements, and notarized broker certifications filed by Con Edison with NYC DOT's Central Insurance Unit, together with all Workers' Compensation insurance certificates, the Self-Insurance Certification (including the February 12, 1999 letter from Con Edison's Insurance Manager and any successor certifications), and all related correspondence between NYC DOT's Legal Department and Con Edison or its insurance representatives.

11. All franchise agreements and Revocable Consent Agreements between the City of New York and Con Edison on file in the Franchise and Revocable Consent Central File maintained pursuant to NYC Charter § 376, including: all master revocable consent agreements; all individual revocable consent agreements; all transformer vault licenses; all petitions for consent filed by Con Edison; all renewals and amendments; and the public listing maintained by NYC DOT identifying all current franchises and revocable consents held by Con Edison.

12. All paper or PDF permit applications (form titled "Application for Roadway/Sidewalk Permit(s)") submitted by Con Edison to NYC DOT at any time during the Relevant Time Period, bearing the authorized representative's signature and the pre-printed Section F acknowledgment that "[t]he applicant agrees to comply with all laws and rules of the Department and any other applicable laws and rules."

13. All NYCStreets system-generated emails, notifications, and automated communications sent to Con Edison in connection with permit applications, permit issuances, permit renewals, and permit stipulations during the Relevant Time Period, including any system-generated confirmations referencing WAGE 01, WAGE 02, or prevailing wage compliance obligations.

14. A complete export or dataset from the NYCStreets database for all permits issued to Con Edison (by its Permittee ID) during the Relevant Time Period, in electronic format, including for each permit: the permit number, permit type, application date, issuance date, expiration date, street address and borough, work description, all stipulations (including WAGE 01 and WAGE 02 where applicable), OCMC project manager notes, and permit status.

15. Documents sufficient to identify and describe the data schema, field definitions, data dictionary, and table structure for the NYCStreets Permit Management System, including: all field names and definitions for permit records; the field or fields in which WAGE 01, WAGE 02, and other stipulations are stored; the field or fields capturing permittee acknowledgments or certifications; and any codebooks, system documentation, or

technical specifications sufficient to allow accurate interpretation of the complete dataset produced pursuant to the preceding request.

16. All Corrective Action Requests (CARs), Notices of Immediate Corrective Action (NICAs), and Notices of Violation (NOVs) issued by HIQA to Con Edison during the Relevant Time Period, including all inspection notes, site photographs, responses thereto, and any Environmental Control Board proceedings arising therefrom.

17. All documents constituting, evidencing, or relating to the Administrative Code § 19-142 Agreement between Con Edison and the City of New York, however denominated, including any written agreements, certifications, acknowledgments, electronic acceptances, or other instruments through which Con Edison agreed, or is deemed to have agreed, to pay or ensure payment of prevailing wages as a condition of obtaining Street Opening Permits during the Relevant Time Period.

18. All NYC DOT policies, procedures, internal guidelines, memoranda, or standard operating procedures governing how the Administrative Code § 19-142 Agreement requirement is operationally satisfied by utility company permittees, including any changes to such policies during the Relevant Time Period and any policies specific to Con Edison or public utility companies.

19. All communications between NYC DOT and Con Edison during the Relevant Time Period concerning WAGE 01 or WAGE 02 stipulations, prevailing wage requirements, NYC Administrative Code § 19-142, or any complaint, claim, investigation, or litigation relating to prevailing wages for workers on Con Edison's permitted street excavation projects.

20. All OCMC project manager records, notes, and communications relating to Con Edison permit applications during the Relevant Time Period, including all records of stipulation selection, hold placement and release, and any OCMC communications with Con Edison concerning permit conditions.

# Exhibit 1

**PERMIT BOND**

**ONE LOCATION LIABILITY**


**KNOW ALL PERSONS BY THESE PRESENTS**, that we, _____

_____

_____

_____

hereinafter referred to as the "Principal," and _____

_____

_____

_____

hereinafter referred to as the "Surety" (or "Sureties") are held and firmly bound to THE CITY OF NEW YORK, acting by and through its Department of Transportation, hereinafter referred to as the "City," or to its successors and assigns, in the penal sum of Ten Thousand ($10,000.00) Dollars, lawful money of the United States of America, for the payment of which said sum of money well and truly to be made, we, and each of us, bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal is about to enter, or has entered into a Permit in writing with the City for _____, a copy of which Permit is annexed to and hereby made part of this Bond as though herein set forth in full;

Dated this _____

THE CONDITION of the above obligation is such that if the above named Principal shall well and truly keep and in every respect comply with and conform to the conditions of all permits, including all applicable laws, rules, and regulations issued during calendar year \_\_\_\_ and during each and every subsequent calendar year while this Bond remains in force by the Commissioner of the Department of Transportation of the City of New York to the said Principal covering all locations in the Five Boroughs of New York City, including but not limited to the following: allowing him, her, it, or them to perform work on the roadway, to drive across curbs and sidewalks with vehicles or equipment or to hang banners and erect banner poles or any type of temporary construction; to excavate plots or open areaways and sidewalks; to take up the sidewalks or curbs for that purpose; to erect and maintain any and all signage; to erect sheds on sidewalks and on roadways; and shall properly bridge the sidewalks where the same are crossed by vehicles or equipment so as to afford safe and convenient passage for pedestrians; and to place building materials and equipment, tar kettles, boilers and vehicles upon the roadways; and

Updated November 19, 2014

to transport any vehicle upon the roadway; and to temporarily remove signs, meters, utility poles and street lights for the period of time therein mentioned; and for such periods as such permits may be extended to or renewed, and shall during that period properly protect all property within the location identified in the permit, including, but not limited to, city monuments, signs, meters, utility poles, and streetlights (collectively, "City Property")and at the expiration of said period, at once remove all material from the sidewalks and shall properly and permanently relay the sidewalks and reset the curbs and furnish new sidewalks and curbs where the old sidewalks and curbs have been broken, and shall repair the pavement of the roadway where the same may be disturbed, injured or excavated, including restoration of all City Property within the location identified in the permit,  all to be done pursuant to the rules and regulations of the Department of Transportation of the City of New York and to the satisfaction of and under the direction of the Commissioner of the Department of Transportation of the City of New York; and shall replace or repair all deficient or defective work it performed and shall guarantee the maintenance thereof for a period of up to sixty months subsequent to the completion of work on protected streets, or thirty-six months subsequent to the completion of work in the case of unprotected streets; and will indemnify and save harmless the City of New York of and from all damage and costs to which it may be put by reason of injury to persons or property of another, resulting from the use of the streets as authorized by said permits, or resulting from failure to comply with the conditions upon which said permits were granted, and shall as aforesaid in all respects strictly comply with the terms and conditions of said permits and timely pay any fines, fees, or penalties imposed on the Principal as a result of the failure to comply with terms and conditions of said permits or applicable laws, rules and regulations, then this obligation shall be null and void otherwise to remain in full force and effect.

The Surety, for value received hereby stipulates and agrees, as and when requested to do so by the City, up to the penal sum of this Bond, (1) to pay the City the costs the City incurred to complete the work specified herein to be performed under Principal's permits pursuant to their terms, conditions, and covenants (the "Permitted Work"), if the Principal, for any cause, has failed or neglected to fully perform and complete such Permitted Work, including repair and maintenance thereof, (2) fully complete the Permitted Work, and/or (3) to pay any fines, fees, or penalties imposed on the Principal as a result of its failure to comply with and conform to the conditions of all permits, including all laws, rules and regulations concerning the Permitted Work. If the City requests the Surety to complete the Permitted Work, the Surety (Sureties) further agrees to commence and diligently perform the Permitted Work specified in the permits and this Bond, including physical site work specified herein within twenty-five (25) business days after written notice thereof from the City and to complete all Work within such time as the City may reasonably fix. If the City elects to require the Surety to make payment under this Bond, for the costs the City incurred and/or for payment of fines, fees, or penalties, such payment must be made within a reasonable time period. The Surety and the City reserve all rights and defenses each may have against the other; provided, however, that the Surety expressly agrees that its reservation of rights, including challenging the City's determination that the Principal failed or neglected to fully perform and complete such Permitted Work, shall not provide a basis for non-performance of any obligation provided herein.

The Surety, for value received, for itself and its successors and assigns, hereby stipulates and agrees that the obligation of said Surety and its Bond shall be in no way impaired or affected by

Updated November 19, 2014

any extension of time, modifications, omission, addition, or change in or to the said permits or the work to be performed thereunder, or by any waiver of any provisions thereof, or by any assignment, subletting or other transfer thereof or of any work to be performed; and said Surety does hereby waive notice of any and all of such extensions, modifications, omission, additions, changes, waivers, assignments, subcontracts and transfers, and hereby expressly stipulates and agrees that any and all things done and omitted to be done by and in relation to assignees, subcontractors, and other transferees shall have the same effect as to said Surety as though done or omitted to be done by or in relation to said Principal.

It is agreed that this Bond becomes effective on the date set forth above and shall continue in force the entire calendar year or until terminated as provided herein.  The dates covered by this Bond may be extended for successive annual periods; all such extensions to be evidenced by a continuation certificate duly executed by an authorized representative of the Surety and the Principal. The Surety's liability shall not be cumulative from year to year. Any claim made under this Bond shall be applied against the penal sum in effect during the time period of the Bond in which the permit covering the work that is the subject of the claim was issued.  In addition, it is understood and agreed that this Bond includes the Principal's guarantee of the work performed in connection with any permit received during the time period that this Bond is in effect.

This Bond shall be terminated on a date specified in a written notice given by the Commissioner of Transportation of the City of New York to Surety and Principal or in a written notice of at least thirty (30) days given by the Surety to the Commissioner of Transportation of the City of New York at 55 Water Street, 9th Floor, New York, NY 10041 and the Principal by certified mail.  Such cancellation shall not be effective for any permits issued or work performed thereunder prior to this Bond's effective date of cancellation.

**IN WITNESS WHEREOF,** the Principal and the Surety (Sureties) have hereunto set their hands and seals, and such of them as are corporations have caused their corporate seals to be hereto affixed and these presents to be signed by their proper officers, this _____ day of _____, 20___.

_____(LS)
**Principal**

(Seal)                                                    By:    _____

                                                                  _____
                                                                  **Surety**

(Seal)                                                    By:    _____

                                                                  _____
                                                                  **Surety**

Updated November 19, 2014

(Seal)                                        By:    _____

                                                     _____
                                                     **Surety**

(Seal)                                        By:    _____

                                                     _____
                                                     **Surety**


      If the Principal is a partnership, the Bond should be signed by each of the individuals who are partners.

      If the Principal is a corporation, the Bond should be signed in its correct corporate name by a duly authorized officer, agent, or attorney-in-fact.

Updated November 19, 2014

## ACKNOWLEDGMENT OF PRINCIPAL—IF A CORPORATION

State of _____ County of _____ ss:

On this _____ day of _____, 200__ before me personally appeared _____
_____ to me known, who being by me duly sworn, did depose and say that
he/she resides at _____ ,
that he/she is the _____ of _____
_____ , the
corporation described in and which executed the foregoing instrument; that he/she knows the
seal of said corporation; that one of the seals affixed to said instrument is such corporate seal;
that it was so affixed by order of the directors of said corporation, and that he/she signed his/her
name thereto by like order.


_____
**Notary Public or Commissioner of Deeds**

## ACKNOWLEDGMENT OF PRINCIPAL—IF A PARTNERSHIP

State of _____ County of _____ ss:

On this _____ day of _____, 200__ before me personally appeared _____
_____ to me known and known to me to be a member of the firm of
_____ , the firm
described in and who executed the foregoing instrument and he/she acknowledged to me that
he/she executed the same as and for the act and deed of said firm.


_____
**Notary Public or Commissioner of Deeds**

Updated November 19, 2014

## ACKNOWLEDGMENT OF PRINCIPAL—IF AN INDIVIDUAL

State of _____ County of _____ ss:

On this ____ day of _____, 200__ before me personally appeared _____
_____ to me known and known to me to be the person described in and who executed the foregoing instrument and he/she acknowledged to me that he/she executed the same for the purpose therein mentioned.

_____
**Notary Public or Commissioner of Deeds**

**1.**     Each executed Bond should be accompanied by**:**

**a)**     appropriate acknowledgments of the respective parties; and

**b)**     an appropriate duly certified copy of the Power of Attorney or other certificate of authority where the Bond is executed by agent, officer or other representative of the Principal and Surety; and

**c)**     a duly certified extract from by-laws or resolutions of the Surety under which the Power of Attorney or other certificate of authority of its agent, officer or representative was issued, and

**d)**     a duly certified copy of the latest published financial statement of assets and liabilities of Surety.

**2.**     Affix Acknowledgments and Justification of Sureties.

*********************************************

Updated November 19, 2014

# Exhibit 2

A/C# 0111-55-1001

## THE CITY OF NEW YORK
### DEPARTMENT OF TRANSPORTATION
55 Water Street
New York, New York 10041

## REVOCABLE CONSENT AGREEMENT

Whereas, Consolidated Edison Company of New York, Inc. (the "Grantee" or "Con Edison") is a gas and electric corporation existing under the Laws of the State of New York providing electric, gas and steam service to customers within areas of New York City and Westchester County; and

Whereas, the City of New York (the "City"), in its capacity as owner of the inalienable property of the City of New York has the power to grant revocable consents in such property; and

Whereas, by agreement and associated letter agreement executed by the Grantee and by the City acting through the Department of Transportation ("DOT" or the "Grantor"), on November 1, 2004 the Grantor granted to the Grantee for a maximum term ending October 31, 2014, a revocable consent (the "Consent") for the use of the streets and public places in the City for the continued maintenance, operation, installation and removal of transformer vaults, transformers and associated equipment in vaults, on the sidewalk and public places and on poles and other overhead structures; and

Whereas, the Grantee in a petition to the Grantor requested renewal of the Consent agreement to expire on October 31, 2014 to use the public streets and public places in the City of New York for 1) the continued use and maintenance of transformer vaults heretofore constructed by or for the Grantee or predecessor companies under the streets and public places of the City of New York and maintained on October 31, 2014, and for the continued opera tion, removal, replacement, and maintenance therein of electrical transformers and associated equipment; 2) the construction, installation, use and maintenance by or for the Grantee within the City, of such additional transformer vaults under the streets and public places as the Grantee may require and for the operation, removal, replacement and maintenance therein of electrical transformers and associated equipment subsequent to October 31, 2014; 3) the continued use and maintenance of transformer vaults and associated equipment constructed by or for the Grantee or predecessor companies under sidewalks, outside the building line and within the curb line, of the City of New York and maintained on October 31, 2014 and for the operation, removal, replacement and maintenance therein of electrical transformers and associated equipment; 4) the construction, installation, use and maintenance by or for the Grantee within the City of such additional transformer vaults and associated equipment in, on or under sidewalks outside the building line and within the curb line, as the Grantee may require, and for the operation, removal, replacement and maintenance therein of electrical transformers and associated equipment subsequent to October 31, 2014; 5) the

1

2016 - 025267

CONFIDENTIAL

CONED-000060

Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 27 of 65

continued maintenance and operation, removal and replacement of overhead transformers, heretofore installed by the Grantee or predecessor companies upon poles or other structures above the streets and public places of the City and maintained on October 31, 2014; and 6) the installation, removal, replacement and maintenance of such additional overhead transformers upon poles or other structures above the streets and public places of the City as the Grantee may require for the same purposes subsequent to October 31, 2014.

NOW IT IS HEREBY AGREED:

1. Definitions

The following words and expressions as and whenever used in this revocable consent agreement ("Agreement" or "consent") shall, except where by the context it is clear that another meaning is intended, have the following meanings, respectively:

1.1.    The words "Associated Equipment" shall mean sidewalk vaults or portions thereof associated to Sidewalk Transformer Vaults that have been constructed and maintained by the Grantee or its predecessor companies or may be constructed and maintained by the Grantee in, on or under sidewalks, outside of the building line and within the curb line, in and under the streets and public places in the City of New York in which there is or may be installed associated equipment other than transformers for which permits have been or may be issued by the properly authorized department or departments of the City. The conditions imposed by the definition Vacant Sidewalk Transformer Vaults above shall apply in like manner to Vacant Associated Equipment.

1.2.    The words "Additional Overhead Transformers" shall mean such overhead transformers as have been or shall be installed and maintained by the Grantee on and after November 1, 2014 on poles and other overhead structures above the streets and public places in the City of New York, for which permits have been or may be issued by the properly authorized department or departments of the City.

1.3.    The words "Additional Roadway Transformer Vaults" shall mean such transformer vaults as have been or shall be constructed and maintained by the Grantee on and after November 1, 2014 in, on or under the roadway of the streets and public places in the City of New York in which transformers and associated equipment necessary to the use thereof have been or shall be installed, for which permits have been or may be issued by the properly authorized department or departments of the City.

1.4.    The words "Additional Sidewalk Transformer Vaults" shall mean such transformer vaults or portions thereof as have been or shall be constructed and maintained by the Grantee on and after November 1, 2014 in, on or under sidewalks outside of the building line and within the curb line, under the streets and public places in the City of New York, in which transformers and associated equipment necessary to the operation thereof have been or shall be installed, for

2

CONFIDENTIAL

CONED-000061

Case 1:20-cv-03812-ER   Document 414   Filed 06/03/26   Page 28 of 65

which permits have been or may be issued by the properly authorized department or departments of the City.

1.5.    The words "Present Overhead Transformers" shall mean overhead transformers installed and maintained by the Grantee or its predecessor companies on poles and other overhead structures above the streets and public places in the City of New York prior to November 1, 2014, for which permits have been issued by the properly authorized department or departments of the City.

1.6.    The words "Present Roadway Transformer Vaults" shall mean transformer vaults constructed and maintained by the Grantee or predecessor companies in, on or under the roadway of the streets and public places in the City in existence prior to November 1, 2014, in which transformers and associated equipment necessary to the operation thereof are installed and for which permits have been issued by the properly authorized department or departments of the City.

1.7.    The words "Present Sidewalk Transformer Vaults" shall mean transformer vaults or portions thereof constructed and maintained by the Grantee or its predecessor companies in, on or under sidewalks, outside of the building line and within the curb line, under the streets and public places in the City of New York, in existence prior to November 1, 2014, in which the transformers and associated equipment necessary to the operation thereof were installed, for which permits have been issued by the properly authorized department or departments of the City.

1.8.    The word "Structures" shall have the definition set forth in Subsection 1.12. below.

1.9.    The words "Temporary Transformer Vaults" shall mean such transformer vaults that have been constructed and maintained by the Grantee or its predecessor companies or may be constructed and maintained by the Grantee under and in advance of paving of the roadways of the streets and public places in the City of New York, prior to anticipated use for which permits shall have been issued or may be issued by the properly authorized officials of the City and in which the transformers and associated equipment necessary to their operation have not been installed and such transformer vaults shall have the status of Temporary Transformer Vaults. Temporary Transformer Vaults shall continue in such status until a permit is issued by the Grantor for the installation of transformers and associated equipment in the transformer vault at which time such structures shall become Additional Roadway Transformer Vaults.

1.10.    The word "Transformers" shall mean any and all underground transformers and Present Overhead Transformers and Additional Overhead Transformers.

1.11.    The words "Vacant Sidewalk Transformer Vaults" shall mean such transformer vaults or portions thereof that have been constructed and maintained by the Grantee or its predecessor companies or may be constructed and

3

CONFIDENTIAL

CONED-000062

maintained by the Grantee in, on or under sidewalks, outside of the building line under the streets and public places in the City of New York in which transformers and associated equipment necessary to the operation thereof are not installed for which permits have been or may be issued by the properly authorized departments of the City. Such sidewalk transformer vaults constructed but not placed in use shall have the status of Vacant Sidewalk Transformer Vaults and shall continue in such status until permits are issued for the installation of transformers and associated equipment in said vaults, at which time they shall become Additional Sidewalk Transformer Vaults. Such of the Present Sidewalk Transformer Vaults and Additional Sidewalk Transformer Vaults from which transformer and associated equipment shall be removed shall attain the status of Vacant Sidewalk Transformer Vaults only upon the issuance of a certificate to that effect from the Grantor.

1.12. The structures defined in subsections 1.1.-1.7, 1.9 and 1.11. shall be collectively referred to as the "Structures".

## 2. Consent Granted

The consent of Grantor is hereby granted to the Grantee to continue the use, operation, maintenance, alteration, repair, removal and replacement of Structures and associated equipment and/or to construct, install, use, operate, maintain, alter, repair, remove, and replace new Structures and associated equipment in the City of New York in, on, above and under inalienable property of the City of New York.

## 3. Term

3.1. This consent shall take effect as of November 1, 2014, irrespective of the date of approval or acceptance thereof, and shall continue only during the pleasure of the Grantor and shall be revocable by the Grantor upon one (1) year's written notice to the Grantee, but in no case shall it extend beyond REDACTED and thereupon all rights of the Grantee in the streets and public places by virtue of this consent shall cease and terminate. The Grantee shall on or before REDACTED notify the Grantor, in writing, of its intention or lack of intention to apply for a renewal of this consent. In the event the Grantee notifies the Grantor of its intention to apply for a renewal it shall, at the same time, file a petition therefor. Business terms of the renewal shall be subject to the mutual consent of the parties.

3.2. Notwithstanding the provisions of paragraph 3.1, the consent shall be revocable in whole or in part at any time by the Grantor if in the sole discretion of the Grantor the preservation of public safety so demands.

## 4. Annual Compensation

The Grantee shall pay into the Treasury of the City of New York annual compensation for the consent granted herein, computed as follows:

4

CONFIDENTIAL

CONED-000063

Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 30 of 65

For the Period 11/1/2014 - 10/31/2015

REDACTED

REDACTED

4.1.    The annual compensation for each subsequent year shall be increased at 2.176% over the previous year's rate, adjusted downward as provided below.  The annual compensation is due and payable to the City of New York on November 10th of each year of the term of this Agreement.

4.2.    On November 10th of each year of the term of this Agreement, Con Edison agrees to provide the Annual Report to DOT as defined in Section 20 herein.

Con Edison shall provide a current copy of the Transformer inventory with each report to verify the number of transformers.



REDACTED

4.4.    The compensation as herein fixed shall continue and be paid up to the revocation or termination by limitation of this consent, and thereafter as hereinafter provided.

4.5.    In the event the Grantee continues the maintenance, repair, alteration, replacement, use and/or operation of the Structures after and in spite of the termination or expiration of this consent, the Grantee agrees to pay to the City the compensation as set forth herein at the rate in effect at the time of such termination or expiration and in the manner set forth herein, together with any taxes it would have been required to pay had such maintenance and operation been duly authorized.  Such payments shall not be deemed to constitute an extension of this consent and all of the City's rights shall remain in full force and effect notwithstanding such payments. Such rate of compensation shall continue up to the date of the restoration of the street after the removal (as per 9.1), or deactivation at the discretion of the Grantor, of the Structures. During the period of continued maintenance, repair, alteration, replacement, use and/or operation of the Structures, the Grantee shall be bound by all of the terms and conditions of this consent.

In the event that a future agreement for these Structures becomes effective subsequent to the expiration of this Agreement, all terms of such future agreement shall be retroactive to the expiration date of this Agreement for all

5

CONFIDENTIAL
CONED-000064

Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 31 of 65

purposes, and it is understood and agreed that as a condition of such future agreement, Grantee shall be required to pay any deficiency between the amount Grantee has paid after the end of term of this Agreement and the payments required under the future agreement.

4.6     The compensation provided herein shall not be considered in any manner in the nature of a tax but shall be in addition to any and all other taxes of whatsoever kind or description now or hereafter required to be paid under any local law of the City by or by any law of the State of New York.

Commencing with the annual compensation payable on November 10, 2016, in the event that any annual compensation is not made by the date the payment is due, interest on the unpaid amount shall start to run from the date the payment is due.   Interest shall be calculated at the rate in effect under Article 50 of the New York Civil Practice Law and Rules.

If the Grantee shall fail to pay such compensation or the interest thereon, if any, the Comptroller of the City may withdraw the amounts thereof from the security fund hereinafter provided for, if such fund shall not have already become the property of the City as hereinafter provided.  If the amount owed exceeds the amount available in the security fund the Grantee shall be liable for the shortfall, and shall pay such to the City upon demand

5.     Installation, Repair and Removal of Vaults and Equipment

The Grantee shall pay the entire cost of all its work, labor and material in connection with each of the Structures hereby authorized and particularly:

(a)     construction, maintenance, repair, use, operation, installation, deactivation, alteration, replacement or removal (if applicable, as per 9.1) of the Structures ("The Work");

(b)     the protection of all Structures which shall in any way be disturbed by The Work;

(c)     if it is an underground Structure, any and all changes in sewers or other subsurface structures of the City necessitated by The Work, including the laying or relaying of pipes, conduits, sewers or other structures of the City;

(d)     the replacing or restoring of the pavement in the affected street which may be disturbed during The Work;

(e)     each and every item of the increased cost of the City for installation of any future structures of the City or repairs or alterations to any existing or future structures of the City caused by the presence in the street of the Structures; and

(f)     the inspection of The Work during The Work as herein provided which may be required by the Grantor or any other governmental entity having jurisdiction.

CONFIDENTIAL

CONED-000065

6.    Construction requirements.

Prior to the commencement of The Work, the Grantee shall obtain, at its sole cost and expense, any and all licenses, permits or other forms of approval or authorization which may be required by Grantor or any other governmental entity having jurisdiction.  The Grantee shall perform all the duties which may be imposed by those agencies as conditions of such forms of approval or authorization, provided such conditions are not inconsistent with the provisions of this consent.  The Grantee shall submit to the Grantor working plans in the form of a DOT permit sketch which shall include and show in detail the method of construction of the Structures and the presence of subsurface utilities; if applicable, Grantee shall make all necessary filings with the appropriate entities having jurisdiction, if Grantee seeks to make changes in any structures as a result of The Work.

If reasonably so ordered by the Grantor, all work in connection with The Work shall be carried on only at night or continuously for twenty-four (24) hours each day.

7. Notice required before work commences

Grantee shall give notice, in writing, to the Grantor and any other governmental entity having jurisdiction of its intention to begin the work hereby authorized at least forty-eight (48) hours before such work commences, except for emergencies. A permit taken out in advance of Work shall service as notice to the Grantor.

8. Relocations

If at any time the City determines it is necessary to replace or alter any structures of the City, or to construct any structures or lay any pipe for the City in a street or public place, the Grantee shall at its own expense, protect, alter or relocate (in accordance with 9.1(a), (b) or (c)) all or any portion of the Structures and equipment hereby authorized which may be in interference therewith, and in case of refusal or neglect of the Grantee so to do, the City shall have the right to break through or remove or relocate all or any portion of the Structures and equipment hereby authorized and the Grantee shall pay to the City the expense incurred by such removal or relocation.  This clause shall not apply to any work done by the City for or on account of the New York City Transit Authority or the rapid transit system it operates.

The provisions of this consent with respect to the payment by the Grantee of the cost of protecting or relocating its Structures and associated equipment are in addition to and shall not limit the right of the City to require pursuant to law removal as per 9.1 of the structures herein authorized or the protection thereof, all at the Grantee's expense.

9. Removal or deactivation of Structures

9.1.    Upon the termination by limitation or revocation of this Consent the Grantee, subject to such rights as it may have in the premises as reserved in

7

CONFIDENTIAL                                                  CONED-000066

Case 1:20-cv-03812-ER   Document 414   Filed 06/03/26   Page 33 of 65

paragraph 18 hereof, shall cause the following "Restoration Obligation" to be completed: (a) the contents of the Structures hereby authorized to be backfilled in accordance with applicable DOT requirements, or if required for a City project, removal of such underground Structure, if necessary; (b) the overhead transformers to be removed, and (c) all streets and public places affected by this permission to be restored to their proper condition. The entire cost of such work shall be borne by the Grantee.

9.2.    If Grantee fails to do so, after providing ten (10) days' notice to Grantee, Grantor shall have the right to cause the work to be done and shall recover the costs thereof from the security fund as provided for in this consent. If the costs exceed the amount available in the security fund, the Grantee shall be liable for the shortfall, and shall pay such to the City upon demand. Grantor's rights to recover the costs of said work and Grantee's liability and duty to pay for said work shall continue beyond the expiration, termination or revocation of this Agreement.

9.3.    In case the Grantee desires to terminate the use and occupancy of any Structures or the use of any overhead transformer prior to the termination or revocation of this consent, it shall obtain the necessary permit from the Grantor. The Grantee shall thereupon promptly complete its Restoration Obligation and all rights of use and occupancy and all obligations as to the payment of compensation for the period after removal as per 9.1 with respect to such Structures or overhead transformer shall cease.

10.    City's access paramount. The Grantee shall allow to the City a right of way under or above any part of the Structures for any and all structures which are now or may be hereafter placed in the affected street by the City, provided it does not unreasonably interfere with Grantee's Structures.

If the Grantor deems it necessary at any time to replace, alter or otherwise gain access to any Structures located in or on the street that is affected by the Structures, the Grantor shall have the right to break through or remove all or any portion of the Structures. The cost to the Grantor of breaking through or removing the Structures shall be recovered from the security fund as provided for in this consent. If the cost of breaking through or removal exceeds the amount available in the security fund, the Grantee shall be liable for the shortfall, and shall pay such to the City upon demand. Should the Grantor determine at its sole discretion that the breaking through or removal of the Structures should be performed by Grantee, Grantor shall have the option of requiring Grantee to break through or remove the Structures at its sole cost and expense as detailed in Article 5 herein.

11.    Structures subject to City's supervision. The Structures and any fixtures laid therein shall be constructed, repaired, maintained, used, operated, deactivated, altered, and removed subject to the supervision, inspection, and control of the proper authorities of the City. The Grantee shall protect the Structures for which consent has been granted. Whenever such Structures is about to be disturbed by the regulating or grading of any street, the Grantee

8

CONFIDENTIAL

CONED-000067

Case 1:20-cv-03812-ER   Document 414   Filed 06/03/26   Page 34 of 65

shall, on the receipt of a written notice from the City or its contractor, remove or otherwise protect and replace its Structures, and all fixtures and appliances connected therewith or attached thereto, where necessary, under the direction of the Commissioner. All such removal, protection, replacement or related activities required by this section shall be at the sole cost and expense of the Grantee. The City will endeavor to provide a thirty (30) day notice of such requirements, but reserves the right to require action sooner in cases of emergency. The Structures shall be open at all times to the inspection of all the authorities having jurisdiction.

12.    No rights conveyed. The Grantee acquires no right, title or interest in the space permitted to be occupied herein and it is expressly understood that said occupancy is considered temporary.

13. Maintenance of Structures

The Grantee, at its sole cost and expense, agrees to inspect and repair the Structures in accordance with the Public Service Commission's "Electric Safety Standards" applicable to such Structures.

14.    No alienation of City's rights

It is expressly understood that the grant of this consent will not alienate or diminish the absolute right of the City to reenter into full possession of the street space described herein for any reason whatsoever, free of any encumbrance or obligation, upon the expiration of this consent or upon its revocation and cancellation.

15.    Unconditional right of revocation. The Grantee expressly agrees that the Grantor may unconditionally revoke and terminate this consent at any time without liability. In the event of such revocation and termination, the Grantee shall remain liable for the due and full performance of all the terms, covenants and conditions contained herein to be performed up to the time of said termination, and the Grantee's obligation to pay compensation shall continue up to the date of the removal or deactivation of the Structures.

16. Restrictions against transfer of use of consent granted by this Agreement

This consent is for the exclusive use of the Grantee and solely for the purpose hereinabove mentioned and this consent for use shall not, either in whole or in part, be sold, assigned, leased or sublet in any manner, nor shall title thereto, or right, interest or property therein pass to or vest in any other person, firm or entity whatsoever, either by the acts of the Grantee or by operation of law, without the express written consent of the Grantor, which consent shall not be unreasonably withheld, conditioned or delayed by the Grantor.

17. Pre-existing rights of abutting property owners

9

CONFIDENTIAL                                                          CONED-000068

a) The consent granted by this Agreement is subject to whatever pre-existing right, title or interest the owners of abutting property or others may have in and to the affected street.

b) In the event abutting property owners or other third parties seek permission from DOT to erect anything that may have the effect of not permitting Con Edison the beneficial use and enjoyment of a previously installed Structure, including such property owner's/third party's application for a revocable consent, the City shall enforce the General Conditions, which include protection of the clearances around transformer vaults, currently codified in the Rules & Regulations of the City of New York at § 7-06.

c) In the event that on or after November 1, 2014, third parties erect encroachments, without the permission of the City, that have the effect of not permitting Con Edison the beneficial use and enjoyment a previously installed Structures, upon notice from Con Edison that its use is being precluded, Grantor will use good faith efforts to assist Con Edison in requiring the third party to remove such unauthorized encroachments.

In the event that the Grantor becomes aware that a third party wishes to install equipment or materials not under the DOT's jurisdiction that would interfere with Con Edison's use of any of the Structures, Grantor will use good faith efforts to direct such third party to coordinate with Con Edison to minimize the potential impacts of such interference.

18. Nature of Consent

This Consent shall not be construed as a recognition on the part of the City of the existence of any other franchises or rights in the Grantee to exercise its business in the localities where the vaults or their contents or overhead transformers authorized hereunder have been or may be constructed, installed or maintained, or as a ratification of the construction, installation, operation or maintenance of such vaults or their contents or installation, operation or maintenance of such overhead transformers prior to the effective date of this and prior consents, or as a waiver of any rights of the City with respect thereto. The acceptance of this consent shall be without prejudice to, or a waiver of, such rights as the Grantee may assert after the expiration hereof (or after notice of revocation) with respect to the subject matter of this consent.

Nothing in this consent shall affect the rights of the City to require that the Grantee's electrical conductors be placed underground in accordance with the provisions of law.

19. Security Deposit.

19.1 Security in the total amount of **REDACTED** **REDACTED** now on deposit with the Comptroller of The City of New York shall remain on deposit with the Comptroller of the City of New York as security for (i) the faithful performance by the Grantee of all the terms and conditions of this

10

CONFIDENTIAL                                    CONED-000069

consent; and (ii) the faithful performance by the Grantee of all the terms and conditions of the prior consents issued to the Grantee and its predecessors relating to the transformers, structures and other equipment herein authorized.

19.2. In case of material default in the performance by Grantee of any of such material terms and conditions of this consent, the Grantor shall have the right to cause The Work to be done and the materials to be furnished for making the necessary changes or repairs, after ten (10) days' notice to the Grantee, and shall collect the cost thereof from the security fund, or in case of default in the payment of the annual charge or in the payment of any other default under this consent, the Grantor shall collect the same, with interest calculated in accordance with Section 4.6 above, from the security fund after ten (10) days' notice in writing to the Grantee.

19.3. In the event that Grantor draws down on the security fund in accordance with Section 19.2, the Grantee shall replenish the security fund to the original amount set forth in this Section within 30 days of Grantee's receipt of a written notice from Grantor requesting such replenishment. If Grantee defaults in the payment thereof, this consent may be canceled and annulled, at the option of the Grantor.

19.4. If the amount deposited in the security fund is insufficient to cover any costs to the Grantor owed pursuant to this consent or any sum of money due to the Grantor pursuant to this consent, the Grantee shall be liable for the shortfall and shall pay such to the City within twenty (20) days of receipt of the Grantor's demand.

19.5. Upon the termination or revocation of this consent, and at such time as the Restoration Obligation work required by Section 4.5 herein is complete, as determined in the reasonable discretion of the Grantor, Grantor shall promptly return any amount remaining in the security fund to Grantee without interest.

19.6. No action or proceeding or rights under the provisions of this section shall affect any other legal rights, remedies or causes of action belonging to the City.

20. Annual Report.

REDACTED

11

CONFIDENTIAL                                                    CONED-000070

Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 37 of 65



REDACTED

21. Location Database



REDACTED

22. Compliance with applicable laws

This Agreement is granted on the further and express condition that Grantee shall strictly comply with all laws applicable to Grantee's Structures.

23. Discrimination prohibited

Pursuant to applicable laws prohibiting discrimination in employment, the Grantee agrees that it will not engage in any unlawful discrimination against any employee or applicant for employment because of race, creed, color, national origin, sex, age, disability, marital status or sexual orientation with respect to all employment decisions including, but not limited to, recruitment, hiring, upgrading, demotion, down grading, transfer, training, rates of pay or other forms of compensation, layoff, termination, and all other terms and conditions of employment.

24. Indemnification, Responsibility for Safety, Injuries and Insurance

(a) To the fullest extent permitted by law, the Grantee shall indemnify, defend and hold the City, its officials, and employees (the "Indemnitees") harmless from, all liabilities, obligations, fines, damages, penalties, claims, charges and expenses relating to alleged or actual injury (or death) to any person or damage to any property (including, without limitation, reasonable attorneys' fees and disbursements) ("Damages") that may be imposed upon, incurred by or asserted against any of the Indemnitees arising out of The Work, by reason of any defect or deterioration of the Structure or otherwise in connection with this consent, whether or not the Damages are due to the negligence of the City, its officials, officers, agents, servants or employees. It is a condition of this consent that the Grantee shall indemnify the Indemnitees for whatever Damages may arise from this consent or any operations relating thereto, provided that if the facts or law relating to any of the foregoing would preclude any of the

CONFIDENTIAL

CONED-000071

Case 1:20-cv-03812-ER   Document 414   Filed 06/03/26   Page 38 of 65

Indemnitees from being completely indemnified by the Grantee, such Indemnitees shall be partially indemnified by the Grantee to the fullest extent permitted by law.

(b) The Grantee shall be solely responsible for the safety and protection of its employees, agents, servants, contractors, and subcontractors, and for the safety and protection of the employees, agents, or servants of its contractors, subcontractors, and sublessees.

(c) The Grantee shall be solely responsible for taking all reasonable precautions to protect the persons and property of the City or others from damage, loss or injury resulting from any and all operations under this consent.

(d) As between the City and Grantee, the Grantee shall be solely responsible for injuries to any and all persons, including death, and damage to any and all property arising out of or related to the operations under this Agreement, whether or not due to the negligence of the Grantee, including but not limited to injuries or damages resulting from the acts or omissions of any of its employees, agents, servants, contractors, subcontractors, sublessees or any other person.

(e) The Grantee waives all rights against the City, including its officials and employees, for any damages or losses to the extent that such damages or losses are covered under any liability insurance or self-insurance required under this Section 20 (and only up to the limits of subparagraph 24(g) herein). (f) Grantee shall conduct operations under this in compliance with, and shall not cause or permit violation of any and all federal, state or local environmental, health and/or safety-related laws, regulations, standards, decisions of the courts, permits or permit conditions, currently existing or as amended or adapted in the future which are or become applicable to operations under this consent (collectively "Environmental Laws"). Except as may be agreed by the City as part of this consent, Grantee shall not cause or permit, or allow any of the Grantee's personnel to cause or permit any Hazardous Materials to be brought upon, stored, used, generated, treated or disposed of on any property in connection with operations under this consent. As used herein, "Hazardous Materials" means any chemical, substance or material which is now or becomes in the future listed, defined or regulated in any manner by any Environmental Law based upon, directly or indirectly, its properties or effects.

(g) During the entire term of this consent, the Grantee shall maintain Commercial General Liability (CGL) insurance protecting the insureds from claims for property damage and/or bodily injury, including death, that may arise from The Work, the Structure, or any operations under this consent, provided by a company that may lawfully issue such policy and has an A.M. Best rating of at least A-/"VII" or a Standard and Poor's rating of at least A, unless prior written approval is obtained from the City Corporation Counsel. This insurance shall be in the amount of at least **REDACTED** per occurrence and **REDACTED** aggregate. Coverage shall be at least as broad

13

CONFIDENTIAL

CONED-000072

REDACTED

The CGL insurance shall name the City of New York, together with its officials and employees, as an Additional Insured with coverage at least as broad as the most recent edition of REDACTED

In the event any of The Work is to be conducted near the property of any person who reasonably requires other types of insurance (for example, Railroad Protective Insurance for Work near a train track) or higher limits, the Grantee shall procure and submit proof of such insurance as a condition to this consent. Where appropriate, the City, together with its officials and employees, shall be named an Additional Insured thereon.

At the same time as the Grantee submits an executed version of this consent, the Grantee shall submit proof of the required insurance in a form acceptable to the Commissioner. This shall include (i) a Certificate of Insurance certifying the issuance and effectiveness of such insurance with the specified minimum limits and the company code issued to the insurance company by the National Association of Insurance Commissioners (the NAIC number), (ii) the additional insured endorsement(s) naming the City as an additional insured, and (iii) a duly executed Certification by Insurance Broker or Agent in the form required by the Commissioner, attached hereto. In addition, prior to the expiration date of all policies, the Grantee shall submit proof satisfactory to the Commissioner of either renewals of such policies or the issuance of new policies in compliance with the requirements herein.

Acceptance by the Commissioner of a Certificate of Insurance or any other action or inaction by the Commissioner or the Department does not waive Grantee's obligation to ensure that insurance fully consistent with the requirements herein is secured and maintained, nor does it waive Grantee's liability for its failure to do so.

The Grantee shall be obligated to provide the City with a copy of any policy of insurance required hereunder upon request by the Commissioner or the New York City Law Department.

The Grantee may satisfy its insurance obligations through a self-insurance program or with primary policies or a combination of primary and excess/umbrella policies, so long as such self-insurance program and/or all policies provide the scope of coverage required herein. At the Commissioner's sole discretion, the Grantee may satisfy its insurance obligations through a type of insurance other than Commercial General Liability insurance so long as such insurance provides materially the same level of coverage, both for Grantee and the City, as otherwise required herein. Where notice of loss, damage, occurrence, accident, claim or suit is required under a policy maintained in accordance with this consent, the Grantee shall notify in writing all insurance carriers that issued potentially responsive policies of any such event relating to The Work, the Structure, or any operations under this consent(including notice to Commercial General Liability insurance carriers for events relating to the

14

CONFIDENTIAL

CONED-000073

Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 40 of 65

Grantee's own employees) as required by the applicable insurance policy with such notice advising that notice is being given on behalf of the City of New York as Insured as well as the Named Insured. Such notice shall also conform to other policy requirements. The Grantee shall simultaneously send a copy of such notice to the City of New York c/o Insurance Claims Specialist, Affirmative Litigation Division, New York City Law Department, 100 Church Street, New York, New York 10007.

In the event the Grantee receives notice, from an insurance company or other person, that any insurance policy required under this consent shall expire or be cancelled or terminated (or has expired or been cancelled or terminated) for any reason, the Grantee shall immediately forward a copy of such notice to the Commissioner. Notwithstanding the foregoing, the Grantee shall ensure that there is no interruption in any of the insurance coverage required hereunder.

Policies of insurance required under this consent shall be primary and non-contributing to any insurance or self-insurance maintained by the City.

Wherever this consent requires that insurance coverage be "at least as broad" as a specified form (including all ISO forms), there is no obligation that the form itself be used, provided that the Grantee can demonstrate that the alternative form or endorsement contained in its policy provides coverage at least as broad as the specified form.

Under no circumstances shall the City be responsible for the payment of any self-insured retention (or any other aspect of a self-insurance program). Further, the Grantee shall ensure that any such self-insurance program provides the City with all rights that would be provided by traditional insurance under this consent, including but not limited to the defense and indemnification obligations that insurers are required to undertake in liability policies.

The insurance coverage required herein shall not relieve the Grantee of any liability under this consent, nor shall it preclude the City from exercising any rights or taking such other actions as are available to it under any other provisions of this consent or the law.

Provided that Grantee proffers evidence of self-insurance and assures coverage commensurate with the requirements herein, Grantee shall be permitted to self-insure the above stated amounts during the term of this consent. In the event that Grantee does choose to so self-insure, Grantee shall not be bound to any of the notice provisions related to cancellation and/or termination of insurance policies hereunder, however, should Grantee procure insurance for any of the coverage required hereunder, all such notice provisions shall remain in full force and effect.

CONFIDENTIAL

CONED-000074

Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 41 of 65

## 25. Investigation Clause

Grantee shall comply with the City's investigation requirements as described in its Investigation Clause, attached hereto as Exhibit A.

## 26. No rights conveyed

(a) The Grantee acquires no real property or interest in the space permitted to be occupied herein and it is expressly understood that said occupancy is considered temporary.

(b) Nothing in this Agreement, express or implied, is intended to confer upon any person, or entity, other than the Parties hereto and their permitted assigns, any rights or remedies under, or by reason of, this Agreement.

## 27. Severability and Headings

The clauses and provisions of this Revocable Consent Agreement are intended to be severable. The unconstitutionality or unconscionability of any term, clause or provision shall in no way defeat the effect of any other term, clause or provision.

Section and other headings are inserted for convenience only and shall not be used in any way to construe the terms of this Agreement.

## 28. Advertising

No advertisement shall be placed on, affixed to, projected from, or in any way displayed on the Structures unless expressly authorized by this Agreement, for the purposes of this Section "advertisement" shall not include Grantee's logo, ID plate, manufacturer nameplate or similar identifications.

## 29. Modification, amendment and assignment

This Agreement constitutes the entire agreement between the parties hereto and no other representation made heretofore shall be binding upon the parties hereto. This Agreement may not be modified, amended or assigned except by written agreement executed by the parties hereto.

16

CONFIDENTIAL                                                    CONED-000075

In Witness Whereof the parties hereunder have caused this revocable consent to be executed.


Grantor

NYC Department of Transportation Division of Franchises, Concessions and Consents

By: _____ Date: _____

Michelle Craven

Senior Executive Director


Accepted and agreed to:

Grantee:

Consolidated Edison Company of New York

By: _____ Date: 8/4/2016

(Signature)

_Scott Sanders_

(Print Name of Signatory)

_VP and Treasurer_

(Title)


The foregoing consent is hereby approved

BILL DE BLASIO, MAYOR

By: _____ Date: 8/19/16

Michael Owh, Director
Mayor's Office of Contract Services

Approved as to form

Certified as to legal authority

By: _____

Acting Corporation Counsel

**JUL 28 2016**

Date

17

CONFIDENTIAL                                                                 CONED-000076

In Witness Whereof the parties hereunder have caused this revocable consent to be executed.

Grantor

NYC Department of Transportation Division of Franchises, Concessions and Consents

By: _____    Date: _____

    Michelle Craven

    Senior Executive Director

Accepted and agreed to:

Grantee:

Consolidated Edison Company of New York

By: _____    Date: _____

    (Signature)

    _____

    (Print Name of Signatory)

    _____

    (Title)

The foregoing consent is hereby approved

    BILL DE BLASIO, MAYOR

By: _____    Date: _____

    Acting Director, Mayor's Office of Contracts

Approved as to form

Certified as to legal authority

By: _~~(signature)~~_____

    Acting Corporation Counsel

    JUL 28 2016

    Date

17

CONFIDENTIAL

CONED-000077

## Acknowledgment by Senior Executive Director

State, City and County of New York, ss.:

On the 18th day of August, in the year 2016, before me, the undersigned, personally appeared Michelle Craven, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of whom the individual(s) acted, executed the instrument.

_Gwendolyn Mattocks_
Notary Public or Commissioner of Deeds

GWENDOLYN MATTOCKS
Commissioner of Deeds
City of New York No. 2-13206
Certificate Filed In New York County
Commission Expires Oct. 01, 20 19

18

CONFIDENTIAL

CONED-000078

## Acknowledgment by Consolidated Edison Company

State, City, and County of New York, ss.,

On the 4th day of August, in the year 2016, before me, the undersigned, personally appeared _Scott Sanders_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of whom the individual(s) acted, executed the instrument.

_____
Notary Public or Commissioner of Deeds
LAURIEANN SILBERFELD
Notary Public, State of New York
No. 02SI4984247
Qualified in Nassau County
Commission Expires July 15, 19 2019

19

CONFIDENTIAL

CONED-000079

# Exhibit 3

Case 1:20-cv-03812-ER   Document 414   Filed 06/03/25   Page 47 of 65



Kristen Boysen <boysen@peltongraham.com>

# Fwd: [OpenRecords] Request FOIL-2025-841-00575 Submitted to Department of Transportation (DOT)

**Brent Pelton** <pelton@peltongraham.com>                                    Thu, Apr 17, 2025 at 2:11 PM
To: Kristen Boysen <boysen@peltongraham.com>


---------- Forwarded message ---------
From: <donotreply@records.nyc.gov>
Date: Fri, Jan 31, 2025 at 9:14 AM
Subject: [OpenRecords] Request FOIL-2025-841-00575 Submitted to Department of Transportation (DOT)
To: <pelton@peltongraham.com>


Your request FOIL-2025-841-00575 has been successfully submitted to the Department of Transportation (DOT). The details of your request are shown below.

Request Title: FOIL

Request Description: DOT FOIL Request

Request Type: DOT FOIL Request

DOT FOIL Request
Description of Records Requested: I write to inquire into the promises and agreements that NYC DOT permit applicants are required to enter into when applying for NYC Street Opening Permits. We are working to enforce the Wage 01 and Wage 02 Prevailing Wage Stipulations, as required by stipulation and NYC Admin Code 19-142, and are looking for all "Agreements" that utility company applicants enter into when applying for such permits. I have copies of the paper street opening permit and renewal permit applications, which both contain "Acknowledgements and Agreements by Authorized Representative of the Applicant." These "Acknowledgements" require the applicant to "comply with all laws and rules..." (Section F in the attached Street Opening Permit; Section D in Renewal Permit application). I am told that the paper forms are rarely utilized by utility contractors, and that permits are actually obtained using the NYCStreets portal. Can I get copies of the online screens that correspond to this "Acknowledgements and Agreements" section? Can you confirm that the online platform contains a provision comparable to Section F? Do users agree to "comply with all laws" when registering to use the NYCStreets portal? How and when are applicants required to check the "Confirmations" form? (Confirmations form found at https://nycstreets.net/Public/Confirmation/Index). Section 4.2 of the Street Works Manual, "Street Excavation Requirements," https://streetworksmanual.nyc/node/238 lists several requirements of permit applicants, including "follow all permit stipulations." Is there a part of the online application process that affirms that applicants agree to follow all permit stipulations and/or comply with Section 4.2 of the Street Works Manual (or the Street Works Manual generally)? Are there any screens or part of the online application that refers to NYC Admin. Code 19-142's prevailing wage requirements? NYC Admin. Code 19-142 specifically states "No permit shall be issued until such agreement shall have been entered into with the department..." Do you have a copy of this form agreement where utility contractors agree to pay prevailing wages prior to issuing them a permit? Can I get a screenshot of this portion of the portal? Has the online system changed over the past 10 years? Has the online system changed following the enactment of the Roadway Quality Assurance Act? Is it possible that someone is able to walk me through the online system or otherwise get me screen shot pictures of the forms that are required to be completed and agreed upon by utility contractors when seeking street opening permits via the NYC Streets system? Other than the typical forms required to obtain a street opening permit, are there other agreements between Con Edison and NYC DOT/NYC where Con Edison agrees

Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 48 of 65

to "Abide by All Laws" or otherwise agrees to pay prevailing wages as per stipulations Wage01 and Wage2? I'd be happy to discuss this request at your earliest convenience and would make myself available to meet with you to review the online system. Sincerely, Brent

Date of Incident:
Location:
Borough:
Client Name: none
Client File Number: none

Attached File: NYC_DOT_-_APPLICATION_FOR_ROADWAY_AND_SIDEWALK_PERMIT_-_Rev_8-8-19.pdf: NYC_DOT_-_APPLICATION_FOR_ROADWAY_AND_SIDEWALK_PERMIT_-_Rev_8-8-19.pdf


Requester's Contact Information

**Name:**
Brent E Pelton
**Title:**
Not provided
**Organization:**
Pelton Graham LLC
**Email:**
pelton@peltongraham.com
**Phone Number:**
(212) 385-9700
**Fax Number:**
Not provided
**Street Address (line 1):**
111 Broadway
**Street Address (line 2):**
Suite 1503
**City:**
New York
**State:**
NY
**Zip Code:**
10006

You can view the request and take any necessary action at the following webpage: https://a860-openrecords.nyc.gov/request/view/FOIL-2025-841-00575.


--



**Brent E. Pelton** | Partner
P: 212-385-9700 | F: 212-385-0800
pelton@peltongraham.com

Pelton Graham LLC
111 Broadway, Suite 1503 | New York | NY |10006
www.peltongraham.com

 

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.

**NEW YORK CITY DOT**
Department of Transportation

# APPLICATION FOR ROADWAY/SIDEWALK PERMIT(S)

*See reverse for instructions on how to complete this form.*                                    Rev. 8/8/19

**SECTION A: Applicant Information**

1. Permittee ID#:_____  2. Permittee Name:_____

3. Address:_____

4. Tel #:(_____)_____-_____  5. E-Mail:_____

**SECTION B: Work Information**

6. Borough: ☐ MN ☐ BK ☐ QN ☐ BX ☐ SI          7. OCMC File: _____-_____-_____

8. Type of Pavement:  a. Roadway_____  b. Sidewalk_____  9. DOB#:_____

10. House No.:_____  11. On Street:_____

11a. Street Work On, If Different From Above:_____

12. Between:_____ and _____
                    (Cross Street #1)                          (Cross Street #2)

13. For the Purpose of:_____

14. Number of Openings:_____  15. Area Size:_____  16. Frontage Length:_____
                                              (In Square Feet)                    (In Linear Feet)

17. Work Start Date:_____/_____/_____          18. Work End Date:_____/_____/_____

19. For the work location listed above: Check **YES** if at least **ONE** of the following is applicable.  Check **NO** if **NONE** of the following is applicable:
   Would the excavation work happen in a corner quadrant?              ☐ YES   ☐ NO
   Would the excavation work happen adjacent to a crosswalk?

**SECTION C: Type of Permit Requested (Check All That Apply)**

**STREET OPENING PERMITS**
☐ 0100  OPEN SIDEWALK TO INSTALL FOUNDATION
☐ 0111  MAJOR INSTALLATION SEWER
☐ 0113  REPAIR WATER
☐ 0114  REPAIR SEWER
☐ 0115  REPAIR WATER/SEWER
☐ 0116  FUEL OIL LINE
☐ 0117  VAULT CONSTRUCTION OR ALTERATION
☐ 0118  RESET, REPAIR OR REPLACE CURB
☐ 0119  PAVE STREET
☐ 0126  TEST PITS, CORES OR BORINGS
☐ 0127  CONDUIT CONSTRUCTION (CABLE, TELECOMM. AND FRANCHISE)
☐ 0132  INSTALL FENCE

**SIDEWALK CONSTRUCTION PERMITS**
☐ 0401  REPAIR SIDEWALK
☐ 0402  CONSTRUCT NEW SIDEWALK
☐ 0403  REPLACE SIDEWALK
☐ 0405  CONSTRUCT NEW SIDEWALK - BUILDERS PAVEMENT

**BUILDING OPERATIONS PERMITS**
☐ 0201  PLACE MATERIAL ON STREET
☐ 0202  CROSSING SIDEWALK
☐ 0203  PLACE CRANE OR SHOVEL ON STREET
☐ 0204  PLACE EQUIPMENT OTHER THAN CRANE OR SHOVEL ON STREET
☐ 0205  PLACE SHANTY OR TRAILER ON STREET
☐ 0208  TEMPORARY PEDESTRIAN WALKWAY
☐ 0211  OCCUPANCY OF ROADWAY AS STIPULATED
☐ 0214  PLACE CONTAINER ON STREET
☐ 0215  OCCUPANCY OF SIDEWALK AS STIPULATED
☐ 0221  TEMPORARY CONSTRUCTION SIGN/MARKINGS

**CANOPY PERMITS**
☐ 0701  CANOPY FOR HOTEL
☐ 0702  CANOPY FOR RESTAURANT
☐ 0703  CANOPY FOR RESIDENCE
☐ 0704  CANOPY FOR MISCELLANEOUS
☐ 0705  CANOPY FOR SIDEWALK CAFÉ
☐ Other Type of Permit_____

**SECTION D: Work Zone Sketch (Include On Street, both Cross Streets, North Arrow, Sidewalk/Roadway widths and proposed Work Zone)**

BUILDING LINE                          SHOW NORTH ⊕          BUILDING
CURB LINE ........                                      ........ CURB LINE

CURB LINE ........                                      ........ CURB LINE
BUILDING LINE                                                BUILDING LINE

**SECTION E: Permit Stipulations (For Official Use Only)**

| Permit Type | Fee | Permit Stipulations | Permit Number |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| Special Stipulations: | | | |

Additional Fees: Inspection:_____  Tunneling:_____  Other (Specify):_____

| OCMC Approval by: | | Date: | ____/____/____ |
|---|---|---|---|

**(For Official Use Only)**

Approved for the Commissioner by:

Date

____/____/____

**SECTION F: Acknowledgements and Agreements by Authorized Representative of the Applicant**

The permit to be granted is subject to the following conditions:
The applicant agrees to comply with all laws and rules of the Department and any other applicable laws and rules.
No permit shall be issued unless all applicable insurance and permit bonds are on file.

19. Submitted by:_____  20. Tel #:(_____)_____-_____
                    (Please Print)

21. Signed by:_____  22. Date:_____/_____/_____
              (Authorized Representative of Applicant)

**CONSTRUCTION OF COMPLETING A ROADWAY & SIDEWALK PERMIT APPLICATION GRAPHIC**

To ensure the proper processing of your application, please print all information *CLEARLY.*

**SECTION A: Applicant Information**

1. **Permittee ID#:** Provide the unique 5 digit identification number the Permittee received when he/she registered their company with the Department of Transportation. Permits will not be issued without a Permittee ID Number.
2. **Permittee Name:** Provide the name of the company to whom the permits will be issued and to whom the above Permittee ID# is assigned.
3. **Address:** Provide the Permittee's business mailing address.
4. **Tel #:** Provide the Permittee's daytime telephone number.
5. **E-mail:** Provide the Permittee's e-mail address.

**SECTION B: Work Information**

6. **Borough:** Check the Borough in which the proposed work will be performed (MN-Manhattan, BK-Brooklyn, QN-Queens, BX-Bronx, SI-Staten Island).
7. **OCMC File:** If one exists, provide the OCMC file number pertaining to the proposed work (e.g. MEC-08-001).
8. **Type of Pavement:**
   **a. Roadway:** If working in the roadway, provide the surface material of the roadway where the proposed work will occur (e.g. Asphalt)
   **b. Sidewalk:** If working in the sidewalk, provide the surface material of the sidewalk where the proposed work will occur (e.g. Concrete)
9. **DOB#:** Provide any applicable Department of Buildings permit numbers.
10. **House No.:** Provide the house number of the building where the proposed work will occur.
11. **On Street:** Provide the name of the street where the proposed work will occur.
    **11a. Street Work On, If Different From Above:** Provide the name of the street where the physical proposed work will occur if it is not occurring on the same street to which the address applies. (e.g.: Work being performed for 55 Water Street, but excavation is on Old Slip).
12. **Between:___ and___:** Provide the names of the two streets with which the On Street intersects (Cross Streets).
13. **For the Purpose of:** Provide the reason why you are applying for permits (e.g.: New Bldg. Construction, Repair Defective Sidewalk, etc.).
14. **Number of Openings:** Provide the number of proposed open excavations to be made.
15. **Area Size:** Provide the total square footage of the proposed work area.
16. **Frontage Length:** Provide the total linear footage of all proposed work. Provide total building's frontage length if performing new building or building alteration work.
17. **Work Start Date:** Provide the date when the proposed work is expected to commence. (May be changed by NYC DOT to reflect permit restrictions)
18. **Work End Date:** Provide the anticipated completion date of the proposed work. (May be changed by NYC DOT to reflect permit restrictions)
19. If you are performing excavation work and it affects the Corner Quadrant or Crosswalk, answer the question(s) accordingly. See
    https://www.nycpedramps.info/sites/default/files/2018-08/ContractorBrochure.pdf for detailed information.



CORNER and CORNER QUADRANT Schematic Definition
Not to Scale

**SECTION C: Type of Permit Requested**

Check all permit types that you wish to apply for today based on your proposed work.

**SECTION D: Work Zone Sketch**

Provide a diagram of the proposed work location for which you are requesting a permit. Show all pertinent information including On Street, both Cross Streets, North Arrow, Sidewalk/Roadway widths and location of excavations or placement of construction equipment/material, etc. NOTE: If completing this form online, On Street, Cross Streets, North Arrow and Sidewalk/Roadway widths may be filled in, however the work zone sketch must be hand-drawn after printing this form.

EXAMPLE:



**SECTION E: Permit Stipulations (For Official Use Only)**

This area is for OCMC Project Managers' use only. This is where you will see what permit stipulations will be issued and printed on the approved permit(s). DO NOT WRITE IN THIS AREA.

**SECTION F: Acknowledgements and Agreements by Authorized Representative of the Applicant**

19. **Submitted By:** Print the name of the person who is submitting this application for review and approval.
20. **Tel #:** Provide a valid daytime telephone number of the person submitting this application.
21. **Signed By:** The person submitting this application must be an authorized representative of the applicant and must provide his/her original signature.
22. **Date:** Provide the date of application submittal.



**AFTER ACCEPTING THE DISCLAMER, THE PUBLIC CAN SEARCH FOR ACTIVE PERMITS**



Case 1:20-cv-03812-ER   Document 414   Filed 06/03/26   Page 53 of 65

**NYCSTREETS - REGISTERED PERMITTEES OR THEIR AUTHORIZED REPRESENTATIVES MUST SIGN IN TO ACCESS THE PERMIT MANAGEMENT SYSTEM.**

**NYCStreets Permit Management System** Version 4.3.1

Permits | Confirmations                                                                                 Sign In | Help | Contact Us

### Sign In

Sign In / Sign In to your NYCStreets Account

| Please enter your email and password |
|---|
| Email | | • I forgot my password. |
| Password | | • I am signing in for the first time. |

Cancel   Sign In

protected by reCAPTCHA

⚠ Notifications

POSTED 5/29/2025
***NEW NYCSTREETS APPLICATION INTERFACE***: NYCSTREETS Permit application interface was updated to collect data regarding the location of the work area. It now includes five checkboxes to indicate whether the work obstructs the parking or moving lane, sidewalk and/or bike lane. Detailed explanation is provided in the tooltips for each checkbox.

POSTED 6/29/2026  NEW HOLD TYPE IN NYCSTREETS, DFP HOLD, (DEPLOYABLE FLOOD PROTECTION HOLD).  More information can be found on the FAQ page in NYCStreets. Click on HELP and scroll to the bottom of the page to HOLDS information.

POSTED 9.6.2023: **IMPORTANT** Update to the Insurance & Indemnification requirements.  The DOT Highway Rules Section 2-02 (3)  were updated in July 2023. See Section 2-02(3) here: https://codelibrary.amlegal.com/codes/newyorkcity/latest/NYCrules/0-0-0-61155  Going forward, all Permittees must comply with the updated requirements when submitting their CGL Insurance documents for renewals. Send all inquiries to constructionpermits@dot.nyc.gov.

POSTED 6/19/2023
Effective Monday July 3, 2023, the permit offices in Brooklyn, Queens & Staten Island are reducing their hours.  Brooklyn & Staten Island offices will be open on WEDNESDAYS ONLY, Window Hours 8:30a-3:30p.  Queens office will be open TUESDAY & WEDNESDAY ONLY, Window Hours 8:30a-3:30p.

POSTED 6.14.22 - Sidewalk Pedestrian Ramps
The New York City Department of Transportation (NYCDOT) and the New York City Department of Design and Construction (DDC) have officially released revisions to the New York City Department of Transportation Standard Detail of Construction Drawing # H-1011 Sidewalk Pedestrian Ramps. Please note that Drawing # H-1011  has been replaced with Drawing #s  H-1011-1 through H-1011-9. For more information regarding the latest revisions, please contact pedramp@dot.nyc.gov   While we recommend that the implementation of pedestrian ramp solutions included in these revisions are used immediately, the official inclusion of these drawings is applicable to all permits issued on or after June 27, 2022.

POSTED 11.30.2021 - Beginning Wednesday, December 1, 2021, the 0135-Final Restoration Only permit type will be renamed 0135-C.A.R. Restoration.  Following this change, for all 0135-C.A.R. Restoration requests submitted, Permittees will be required to provide a valid Corrective Action request (C.A.R.) number, prior to permit application submittal.  Permittees will also be required to provide a completed HIQA Cut Form. Failure to provide the completed HIQA Cut Form will result in application rejection.   For any questions regarding the HIQA Cut Form, please contact HIQA via email at vmaniscalco@dot.nyc.gov or jyacca@dot.nyc.gov.

POSTED 8.24.21: EMAIL SERVICE FOR SUMMONSES
The Department of Transportation, HIQA Summons Unit is now offering permittees the option on having their summonses emailed.  This new service allows for summonses to be served contactless, received faster, eliminate the need to pick-up a summons from a borough office or waiting to receive a summons from the Secretary of State.  Interested parties should email SummonsUnit@dot.nyc.gov for more details.  We encourage all permittees to apply for this service as we continue to make our operations paperless.

PLEASE VISIT THE STREET WORKS MANUAL WWW.STREETWORK8MANUAL.NYC  ALL PERMIT MANAGEMENT PROCEDURES, FORMS AND APPLICATIONS CAN BE FOUND HERE!! Forms are in APPENDIX B.

Work Zones & ADA Compliance  NYCDOT has a strong commitment to ensuring pedestrian accessibility within the public right of way. Please review informational document at http://www.nyc.gov/html/dot/downloads/pdf/work-zones-ada-compliance.pdf and ensure that all work is conducted in accordance with local, State and Federal standards to maintain an accessible path of travel.

FYI**FYI**Department of Environmental Protection (DEP) Noise Mitigation Notice** FYI**FYI
As of May 5, 2016, all Noise Mitigation Plans must now be made publicly available on the DEP website as per Local Law 10 of 2018. The DEP has new fillable forms that must be emailed to the DEP.  Note, these forms must still be made publicly available at the work site by conspicuously posting the plan. The on-line forms are printable for you to post as well as submit to DEP by e-mail.  For more info and/or to submit a Noise Mitigation plan, visit the DEP website: http://www.nyc.gov/html/dep/html/noise/construction-noise.shtml  If you have any questions, please contact the DEP directly.

Any construction work occurring in the street near a tree may require a permit from the NYC Department of Parks and Recreation. For more information go to https://www1.nyc.gov/html/dot/html/infrastructure/permits.shtml

VOTE NYC - For information on registering to vote, please visit: http://www.nycfb.info/nyc-votes/agency-registering-vote

POSTED 1/10/2019 - Government/Capital Projects:  Please be advised, if you need any assistance regarding your Government Contract/Capital Project Permits or have any questions, concerns or complaints, please send an email directly to governmentcontracts@dot.nyc.gov.

*** 12/6/17 UPDATE: IMPORTANT NOTICE REGARDING INSURANCE REQUIREMENT***: CERTIFICATE OF LIABILITY INSURANCE (COI) HAS BEEN UPDATED.  SAMPLE OF LATEST VERSION OF COI CAN BE FOUND HERE: http://www.nyc.gov/html/dot/downloads/pdf/insurancecert.pdf
When updating General Liability insurance, all permittees must provide copies of their General Liability insurance policy's Additional Insured Endorsements (CG 20 37 04 13 & CG 20 26 04 13) or equivalent.  The Name of Additional Insured Person(s) or Organization(s) should read: The City of New York, Including its officials and employees.
Location And Description of Completed Operations should read: All Locations as per NYCDOT permits.  These forms are in addition to the Certificate of Insurance and Certification by Broker that permit applicants must already supply. The agency requires this additional documentation to ensure that permittees have procured compliant insurance that properly makes the City additional insured on their insurance policies.  If you have questions, please contact the Permit office at constructionpermits@dot.nyc.gov .

POSTED 12/19/18 - 119- PAVE STREET PERMIT  - STIPULATION REVISION: 1/2 + 5' - THE PERMITTEE IS RESPONSIBLE FOR MILLING AND PAVING 1/2 + 5 FT OF THE ROADWAY TO A DEPTH OF 3 INCHES AS A MINIMUM RESTORATION REQUIREMENT. THE PERMITTEE IS REQUIRED TO EMAIL THE NYC DOT HIQA BORO OFFICE A MINIMUM OF 4 HOURS PRIOR TO PAVING. (MN – Manhattanbpp@dot.nyc.gov ) (BKLYN – Brooklynbpp@dot.nyc.gov) (QNS – Queensbpp@dot.nyc.gov) (BX – Bronxbpp@dot.nyc.gov) (SI – Statenislandbpp@dot.nyc.gov). AT THE REQUEST OF THE BORO ROADWAY REPAIR AND MAINTENANCE OFFICE, THE PERMITTEE MAY BE REQUIRED TO RESTORE A LARGER AREA OF THE ROADWAY IF STIPULATED SEPARATELY HEREIN

POSTED 5/10/19 *** IMPORTANT NOTICE***
New Bicycle Lane Stipulation Changes are starting Monday, May 13, 2019.  For detailed information on these changes visit: https://www1.nyc.gov/html/dot/downloads/pdf/bike-mpt-guidelines.pdf

**AFTER SIGNING IN, PERMITTEES LAND ON THIS PAGE**



Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 54 of 65

ONCE LOGGED IN TO NYCSTREETS; TO APPLY FOR A PERMIT, APPLICANTS CLICK ON THE PERMITS MENU AND SELECT THE APPLICABLE PERMIT ACTIVITY.  PERMIT APPLICATION IS USED TO APPLY FOR MOST PERMIT TYPES.

**NYCStreets Permit Management System** Version 4.3.1

NEW YORK CITY DOT

Permits | Permittee | Confirmations | Welcome ███████ | Profile | Sign Out | Help | Contact Us

Permit Search
Permit Application
Permit Application - CRC
Permit Application - Manhole
Permit Application - Emergency
Place Equipment - Automated Permits
Permit Modifications
Convert Emergency

**Permittee Activity** 🔔

| | Application Tracking # | | Additional Information: | ***Select*** ⌄ |

...ions where Permits are: | ☐ Ready for Payment | ☐ Issued | ☐ Held For External Review

rs >

Reset | Search

Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 55 of 65

NYCSTREETS – PERMIT APPLICATION FORM, PAGE 1 SHOWS PERMITTEE ACCOUNT INFORMATION

Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 56 of 65

**NYCStreets Permit Management System** Version 4.3.1

🎖 Permits  💼 Permittee  🧹 Confirmations          Welcome ███████  👤 Profile  ➡ Sign Out  ❓ Help  ✉ Contact Us

## Permit Application Form

### 1) Permittee Information

**Permittee Number:**
███

**Permittee Name:**
██████████

**Permittee Contact:**
██████████

**Permittee Type***
UTILITIES CORPORATION

**Project Type***
◉ Private  ○ Capital/Government

**Insurance Information:**

| Description | Effective Date | Expiration Date | Policy # | Carrier | Amount |
|---|---|---|---|---|---|
| LOCATION PERMIT BOND | 1/1/2016 | 12/31/2099 | 1234556 | NO CARRIER | $250000 |
| GENERAL LIABILITY | 1/1/2016 | 12/31/2099 | 1234566 | NO INSURANCE CARRIER | $14000000 |
| WORKMAN'S COMPENSATION | 1/1/2016 | 12/31/2099 | 123456 | NO CARRIER | $0 |

**Location Bond Information:**

**NYCSTREETS – PERMIT APPLICATION FORM, PAGE 2.  APPLICANT INPUTS PERMIT LOCATION INFORMATION.**



Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 57 of 65

# NYCStreets Permit Management System Version 4.3.1

NEW YORK CITY DOT

🎖 Permits  💼 Permittee  ⬛ Confirmations                              Welcome ▇▇▇▇▇▇  👤 Profile  ➡ Sign Out  ❓ Help  ✉ Contact Us

## Permit Application Form

**1) Permittee Information**

**2) Select Location(s)**

**3) Select Permit Types (Check All That Apply)**

| 01 - STREET OPENING | 02 - BUILDING OPERATION | 04 - SIDEWALK CONSTRUCTION |

| | | |
|---|---|---|
| ☐ 0100 - OPEN SIDEWALK TO INSTALL FOUNDATION | ☐ 0102 - MAJOR INSTALLATIONS - HIGH VOLTAGE | ☐ 0103 - MAJOR INSTALLATION - GAS |
| ☐ 0104 - MAJOR INSTALLATIONS - STEAM | ☐ 0105 - MAJOR INSTALLATIONS - TELEPHONE | ☐ 0106 - TRANSFORMER VAULT - IN ROADWAY |
| ☐ 0107 - TRANSFORMER VAULT - IN SIDEWALK AREA | ☐ 0110 - MAJOR INSTALLATIONS - CABLE | ☐ 0116 - FUEL OIL LINE |
| ☐ 0117 - VAULT CONSTRUCTION OR ALTERATION | ☐ 0118 - RESET, REPAIR OR REPLACE CURB | ☐ 0119 - PAVE STREET-W/ ENGINEERING & INSP FEE |
| ☐ 0121 - CONSTRUCT OR ALTER MANHOLE &/OR CASTING | ☑ 0122 - REPAIR GAS | ☐ 0123 - REPAIR STEAM |
| ☑ 0124 - REPAIR ELECTRIC/COMMUNICATIONS | ☐ 0126 - TEST PITS, CORES OR BORING | ☐ 0127 - CONDUIT CONSTRUCTION AND FRANCHISE |
| ☐ 0135 - C.A.R. RESTORATION | ☐ 0140 - REGRADE HARDWARE U/C ONLY | ☐ 0151 - INST./REMOVE PUBLIC PHONE/TECH-KIOSK |
| ☐ 0155 - REGRADE/REPLACE STREET HARDWARE/CASTING | ☐ 0156 - REPAIR TRAFFIC STREET LIGHT | ☐ 0157 - REPAIR TRAFFIC SIGNALS |
| ☐ 0166 - PAVEMENT CORES | ☐ 0167 - RESTORATION RE-DIG | ☐ 0168 - CORE RE-DIG |
| ☐ 0172 - MICRO TRENCHING | ☐ 0173 - REGRADE HARDWARE | ☐ 0174 - TRIBUTARY INSTALL - ELECTRIC |
| ☐ 0175 - TRIBUTARY INSTALL - STEAM | ☐ 0176 - TRIBUTARY INSTALL - GAS | ☐ 0177 - UTILITY WOOD POLE SUPPORT |
| ☐ 0181 - INSTALLATION OF POLES | ☐ 0182 - REMOVAL OF POLES | ☐ 0183 - RELOCATION OF POLES |
| ☐ 0184 - REPLACEMENT OF POLES | ☐ 0187 - OPEN ELECTRICAL MAIN | ☐ 0188 - INST. / REPAIR ELECTRICAL CHARGING STATION |

**4) Enter Permit Specific Work Information**

**5) Upload Documents**

Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 58 of 65

**NYCSTREETS – PERMIT APPLICATION FORM, PAGE 4. APPLICANT INPUTS PERTINENT INFORMATION REGARDING THE PERMIT TYPES SELECTED.**



Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 59 of 65

NYCSTREETS – PERMIT APPLICATION FORM, PAGE 5.  APPLICANT UPLOADS SUPPORTING DOCUMENTS.




**NYCSTREETS – PERMIT APPLICATION FORM, PAGE 5. AFTER DOCUMENTS ARE UPLOADED, THE APPLICATION IS SUBMITTED**

Case 1:20-cv-03812-ER    Document 414    Filed 06/03/26    Page 61 of 65



NYCSTREETS – PERMIT APPLICATION FORM, PAGE 5. AFTER DOCUMENTS ARE UPLOADED, THE APPLICATION IS SUBMITTED AND THE APPLICATION TRACKING # IS ASSIGNED. THE APPLICATION IS NOW READY FOR REVIEW BY NYCDOT STAFF.





# Exhibit 4

Case 1:20-cv-03812-ER Document 414 Filed 06/03/26 Page 64 of 65



Kristen Boysen <boysen@peltongraham.com>

## Fwd: Ballast, et al v. Workforce7 Inc., et al subpoena for records 20-CV-03812 (ER)

**Brent Pelton** <pelton@peltongraham.com>                                    Fri, Dec 19, 2025 at 1:31 PM
To: Kristen Boysen <boysen@peltongraham.com>

---------- Forwarded message ---------
From: **Smith, Margaret** <msmith1@dot.nyc.gov>
Date: Tue, Sep 9, 2025 at 3:39 PM
Subject: Ballast, et al v. Workforce7 Inc., et al subpoena for records 20-CV-03812 (ER)
To: pelton@peltongraham.com <pelton@peltongraham.com>
Cc: Smith, Margaret <msmith1@dot.nyc.gov>

Dear Mr. Pelton,

We have received your subpoena for records served on us on August 28, 2025, attached. This is a follow up to your subpoena, with additional demands which you stated are not addressed in the DOT FOIL response.

FOIL records were received by your firm on August 14, 2025, per your cover letter.

The additional records you are seeking would come from the Comptroller's Office, not NYC DOT.

We are referring you to that City Agency for prevailing wage issues. https://comptroller.nyc.gov/

Regards,

Margaret (Peggy) Smith

NYC Department of Transportation

Litigation Services

59 Maiden Lane, 37th Floor

New York, NY  10038

(212) 839-9853

(212) 839-9840 main number

(929) 397-7142 cellphone

msmith1@dot.nyc.gov

-

-

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message and any attachments are solely for the individual(s) named above and others who have been specifically authorized to receive such and may contain information which is confidential, privileged or exempt from disclosure under applicable law. If you are not the intended recipient, any disclosure, copying, use or distribution of the information included in this message and any attachments is strictly prohibited. If you have received this communication in error, please notify us by reply e-mail and immediately and permanently delete this message and any attachments.

Thank you.

NYC – Department of Transportation

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

--



**Brent E. Pelton** | Partner
P: 212-385-9700 | F: 212-385-0800
pelton@peltongraham.com

Pelton Graham LLC
111 Broadway, Suite 1503 | New York | NY |10006
www.peltongraham.com

  

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.

---

**3 attachments**



 **Filed Addendum to Subpoena_NYC DOT(1).pdf**
4042K

**Filed Subpoena to NYC DOT.pdf**
132K

**Ballast, et al v. Workforce7 Inc, et al subpoena 8-28-2025.pdf**
945K